**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| Natalie Barbich, Bruce Lindvall, and Timothy Peterson, individually and as the representatives of a class of similarly situated persons, and on behalf of the Northwestern University Employee Welfare Plan, | Case No. 1:25-cv-06849 |
|  | Hon. Jeremy C. Daniel |
| Plaintiffs, | |
| v. | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** |
| Northwestern University, | |
| Defendant. | |

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

FACTUAL ALLEGATIONS .........................................................................................................4

I.      The Plan and The Parties ....................................................................................................4

II.     The Plan's Dominated Premier PPO Option ......................................................................6

III.    Defendant's Failure to Identify and Inform Participants of the Dominated Option ...........8

IV.    Defendant's Belated Correction of the Dominated Option.................................................9

PLEADING STANDARD..............................................................................................................9

ARGUMENT ...............................................................................................................................10

I.      Plaintiffs Plausibly Allege that Defendant Breached its Fiduciary Duties .......................10

        A.     Plaintiffs Plausibly Allege that Defendant Employed an Imprudent Process for Managing the Plan .......................................................................................11

        B.     Defendant's Attempts to Distinguish the Premier PPO Fail.................................13

        C.     Monitoring Plan Expenses is a Quintessential Fiduciary Function ......................15

                1.     The Plan Document Does Not Require Defendant to Offer a Dominated Option ........................................................................................15

                2.     Defendant Cannot Use the Plan Document as a Shield ...........................18

                3.     Defendant's Caselaw is Inapposite ........................................................20

        D.     Plaintiffs Plausibly Allege That Northwestern Failed to Inform Plan Participants ............................................................................................................21

                1.     Northwestern Failed to Inform Participants That They Were Unlikely to Benefit from the Premier PPO Regardless of Circumstances....................22

                2      Intent is Not Required to State a Disclosure Claim .................................24

II.     Plaintiffs Have Suffered Concrete Harm By Paying Excessive Fees and Through Defendant's Violation of Fiduciary Duties......................................................................25

        A.     Defendant Relies on Strained Interpretations of Inapposite Caselaw...................27

i

B.      Plaintiffs May Seek Relied on Behalf of the Plan Under § 1132(a)(2) .................30

CONCLUSION.................................................................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Board of Trustees of Unite Here Health*,
2023 WL 2744556 (N.D. Ill. Mar. 31, 2023)................................................................3, 28

*Acosta v. Bd. of Trs. Of Unite Here Health*,
2024 WL 3888862 (N.D. Ill. Aug. 21, 2024) ...............................................................2, 11

*Air Evac EMS, Inc., v. Cheathem*,
910 F.3d 751 (4th Cir. 2018) ..................................................................................... 2-3, 26

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ..............................................................................................25

*Allen v. Greatbanc Tr. Co.*,
835 F.3d 670 (7th Cir. 2016) .............................................................................................10

*Amatangelo v. National Grid USA Service Co., Inc.*,
2011 WL 3687563 (W.D.N.Y. Aug. 23, 2011) .................................................................17

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015 (9th Cir. 2025) .........................................................................................10

*Anweiler v. Am. Elec. Power Serv. Corp.*,
3 F.3d 986 (7th Cir. 1993) ................................................................................................22

*Appvion, Inc. Retirement Savings and ESOP by and through Lyon v. Buth*,
99 F.4th 928 (7th Cir. 2024) .............................................................................................10

*Argay v. Nat'l Grid USA Serv. Co.*,
503 F. App'x 40 (2d Cir. 2012) .........................................................................................17

*Asner v. SAG-AFTRA Health Fund*,
557 F. Supp. 3d 1018 (C.D. Cal. Aug. 30, 2021) ............................................................17

*Aschroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................9

*Blue Cross & Blue Shield of N.C. v. Rite Aid Corp.*,
519 F.Supp.3d 522 (D. Minn. Feb. 9, 2021)....................................................................25

*Braden v. Wal-Mart Stores Inc.*,
588 F.3d 585 (8th Cir. 2009) ........................................................................10, 22, 23, 30

*Bueno v. Gen Elec. Co.*,
    2025 2719995 (N.D.N.Y. Sept. 24, 2025) ........................................................................29

*Buescher v. N. Am. Lighting, Inc.*,
    791 F. Supp. 3d 873 (C.D. Ill. June 30, 2025) .......................................................... *passim*

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011) ................................................................................................. *passim*

*City of Columbus v. Trump*,
    453 F. Supp. 3d 770 (D. Md. April 10, 2020) ...............................................................2, 26

*Connecticut Gen. Life Ins. Co., v. E Coast Advanced Plastic Surgery, LLC*,
    2025 WL 3154472 (S.D.N.Y. Nov. 12, 2025) ....................................................................3

*Cutrone v. Allstate Corp.*,
    2021 WL 4439415 (N.D. Ill. Sept. 28, 2021) ...................................................................30

*Davis v. Wash. Univ. in St. Louis*,
    960 F.3d 478 (8th Cir. 2020) ...........................................................................................12

*Doe 1 v. Express Scripts, Inc.*,
    837 Fed.Appx. 44 (2d Cir. 2020) .....................................................................................21

*Doe One v. CVS Pharmacy, Inc.*,
    348 F. Supp. 3d 967 (N.D. Cal. Dec. 12, 2018) ...............................................................21

*Doe v. CVS Pharmacy, Inc.*,
    982 F.3d 1204 (9th Cir. 2020) .........................................................................................21

*Doherty v. Bristol-Myers Squibb Co.*,
    2025 WL 2774406 (S.D.N.Y. Mar. 28, 2025) .................................................................29

*Donovan v. Bierwirth*,
    680 F.2d 263 (2d Cir. 1982) .............................................................................................10

*E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*,
    2025 WL 2371537 (S.D.N.Y. Aug. 14, 2025) ...................................................................3

*Fallick v. Nationwide Mut. Ins. Co.*,
    162 F.3d 410 (6th Cir. 1998) ...........................................................................................30

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) ...........................................................................................4, 15, 18, 19

iv

*Forman v. Tri-Health, Inc.*,
　　40 F.4th 443 (6th Cir. 2022) ...............................................................................12, 14

*Frahm v. Equitable Life Assur. Soc. Of U.S.*,
　　137 F.3d 955 (7th Cir. 1998) ........................................................................................25

*Franklin v. Duke Univ.*,
　　721 F. Supp. 3d 386 (M.D.N.C. Feb. 29, 2024) .............................................................3

*Gonzalez de Fuente v. Preferred Home Care of New York LLC*,
　　858 F.App'x 432 (4th Cir. 2021) .................................................................................29

*Halperin v. Richards*,
　　7 F.4th 534 (7th Cir. 2021) ........................................................................................10

*Hein v. Freedom from Religion Found., Inc.*,
　　551 U.S. 587 (2007)......................................................................................................26

*Howell v. Motorola, Inc.*,
　　633 F.3d 552 (7th Cir. 2011) .......................................................................................24

*Hughes Aircraft Co. v. Jacobson*,
　　525 U.S. 432 (1999)......................................................................................................11

*Hughes v. Nw Univ.*,
　　595 U.S. 170 (2022)......................................................................................................23

*Hughes v. Nw Univ.*,
　　63 F.4th 615 (7th Cir. 2023) ................................................................................ *passim*

*Johnson v. Parker-Hannifin Corp.*,
　　122 F.4th 205 (6th Cir. 2024) ......................................................................................11

*In re AME Church Emp. Ret. Fund. Litig.*,
　　2025 WL 2713767 (W.D. Tenn. Sept. 23, 2025)...........................................................20

*In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*,
　　242 F.3d 497 (3d Cir. 2001)..........................................................................................24

*Kalda v. Sioux Valley Physician Partners, Inc.*,
　　481 F.3d 639 (8th Cir. 2007) .......................................................................................22

*Kenseth v. Dean Health Plan, Inc.*,
　　610 F.3d 452 (7th Cir. 2010) ................................................................................22, 23, 24, 25

v

*Kenseth v. Dean Health Plan, Inc.*,
  722 F.3d 869 (7th Cir. 2013) ...............................................................15, 16, 17, 18

*Knudsen v. MetLife Grp., Inc.*,
  117 F.4th 570 (3d Cir. 2024) ................................................................... *passim*

*Kong v. Trader Joe's Co.*,
  2022 WL 1125667 (9th Cir. 2022) ..................................................................12

*Krohn v. Huron Mem'l Hosp.*,
  173 F.3d 542 (6th Cir. 1999) ..........................................................................22

*Larson v. United Healthcare Ins. Co.*,
  723 F.3d 905 (7th Cir. 2013) ...............................................................17, 19, 20

*Lear Siegler Servs., Inc. v. Rumsfeld*,
  457 F.3d 1262 (Fed. Cir. 2006)........................................................................29

*Leimkuehler v. Am. United Life Ins. Co.*,
  713 F.3d 905 (7th Cir. 2013) ...........................................................................20

*Leuthner v. Blue Cross & Blue Shield of Ne. Pennsylvania*,
  454 F.3d 120 (3d Cir. 2006)......................................................................22, 24

*Lewandowski v. Johnson & Johnson*,
  2025 WL 288230 (D.N.J. Jan. 24, 2025).............................................................3

*Lewandowski v. Johnson & Johnson*,
  2025 WL 3296009 (D.N.J. Nov. 26, 2025) ................................................28, 29

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996)........................................................................................11

*Loren v. Blue Cross and Blue Shield of Mich.*,
  505 F.3d 598 (6th Cir. 2007) ......................................................................26, 29

*Mathews v. Chevron Corp.*,
  362 F.3d 1172 (9th Cir. 2004) .........................................................................25

*Meinhard v. Salmon*,
  249 N.Y. 458 (1928)........................................................................................25

*Moeckel v. Caremark, Inc.*,
  622 F. Supp. 2d 663 (M.D. Tenn. Nov. 13, 2007)...........................................21

*Moyer v. GEICO*,
114 F.4th 563 (6th Cir. 2024) ...................................................................................16, 18

*Navarro v. Wells Fargo & Co.*,
2025 WL 897717 (D. Minn. Mar. 24, 2025) ...................................................3, 27, 28, 29

*Patten v. N. Tr. Co.*,
703 F. Supp. 2d 799 (N.D. Ill. March 9, 2010)....................................................................20

*PBGC v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013).......................................................................................10

*Pegram v. Herdich*,
530 U.S. 211 (2000)....................................................................................... 15-16, 24

*Peters v. Aetna Inc.*,
2 F.4th 199 (4th Cir. 2021) ................................................................................18, 26, 30

*Peters v. Aetna, Inc.*,
2023 WL 3829407 (W.D.N.C. June 5, 2023) .................................................................26

*Pfeil v. State St. Bank & Tr. Co.*,
806 F.3d 377 (6th Cir. 2015) .......................................................................................11

*Pizarro v. Home Depot, Inc.*,
111 F.4th 1165 (11th Cir. 2024) ...................................................................................11

*Sacerdote v. New York Univ.*,
9 F.4th 95 (2d Cir. 2021) .......................................................................................11, 12

*Schissler v. Janus Henderson US (Holdings) Inc.*,
2023 WL 6902050 (D. Colo. Sept. 7, 2023)....................................................................19

*Schissler v. Janus Henderson US (Holdings) Inc.*,
2024 WL 233141 (D. Colo. Jan. 22, 2024).......................................................................19

*Scott v. United Health Grp., Inc.*,
540 F. Supp. 3d 857 (D. Minn. May 20, 2021)..................................................................29

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).......................................................................................................25

*Su v. BCBSM, Inc.*,
2024 WL 3904715 (D. Minn. Aug. 22, 2024) .............................................................3, 28

*Su v. BCBSM, Inc.*,
   2025 WL 2043663 (D. Minn. July 21, 2025) ....................................................28

*Sweda v. Univ. of Penn.*,
   923 F.3d 320 (3d Cir. 2019)..........................................................................12

*Thole v. U.S. Bank N.A.*,
   590 U.S. 538 (2020)..............................................................3, 26, 27, 28

*Tibble v. Edison Int'l*,
   843 F.3d 1187 (9th Cir. 2016) .................................................................2, 11

*Tibble v. Edison Int'l*,
   2017 WL 3523737 (C.D. Cal. Aug. 16, 2017)............................................. 12-13

*Tomcik v. Highmark Health*,
   2025 WL 3036464 (W.D. Pa. Oct. 7, 2025) ....................................................30

*Tomcik v. Highmark Health*,
   2025 WL 3035003 (W.D. Pa. Oct. 30, 2025) ..................................................30

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)......................................................................................26

*United Paperworkers Int'l Union, AFL-CIO, CLC v. Jefferson Smurfit Corp.*,
   771 F. Supp. 992 (E.D. Mo. Sept. 6, 1991) ................................................. 20-21

*United Paperworkers Int'l Union, AFL-CIO, CLC v. Jefferson Smurfit Corp.*,
   961 F.2d 1384 (8th Cir. 1992) ................................................................. 20-21

*Vallone v. CAN Fin. Corp.*,
   375 F.3d 623 (7th Cir. 2004) .......................................................................24

*Wallace v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014) .....................................................................27

*Waller v. Blue Cross of California*,
   32 F.3d 1337 (9th Cir. 1994) ...................................................................12, 17

*Warmenhoven v. NetApp., Inc.*,
   13 F.4th 717 (9th Cir. 2021) ........................................................................25

*Winsor v. Sequoia Benefits & Insurance Services, LLC*,
   62 F.4th 517 (9th Cir. 2023) .............................................................16, 28, 29

viii

**Rules, Statutes, Regulations**

Fed. R. Civ. P. 8(a)(2)..................................................................................................................9

20 U.S.C. § 1022(a) .................................................................................................................23

29 C.F.R. § 2550.404c-1 ..........................................................................................................24

29 U.S.C. § 1001......................................................................................................................1

29 U.S.C. § 1002(16)(B)...........................................................................................................5

29 U.S.C. § 1002(21)(A)......................................................................................................15, 17

29 U.S.C. § 1104(a)(1)(B) .......................................................................................................10

29 U.S.C. §1104(a)(1)(C) ........................................................................................................18

29 U.S.C. § 1132(a)(2)............................................................................................................30

29 U.S.C. § 1132(a)(3)............................................................................................................26

**Other Authorities**

Dept. of Labor, *Understanding Your Fiduciary Responsibilities Under a Group Health Plan* (Sept. 2023) ...........................................................................................................4, 17, 19

**INTRODUCTION**

Plaintiffs bring this action on behalf of themselves and the Northwestern University Employee Welfare Plan (the "Plan"), alleging that Defendant Northwestern University ("Defendant" or "Northwestern") breached its fiduciary duties in violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Specifically, Plaintiffs allege that Northwestern failed to prudently evaluate and monitor the Plan's Preferred Provider Organization ("PPO") health insurance options and the fees associated with those options. This resulted in the Plan offering a so-called "Premier PPO" option in which participants are virtually guaranteed to spend significantly more of their hard-earned money for the same medical care[1] that participants in the Plan's other PPO options receive at far less cost. In economic terms, the Premier PPO option is financially dominated by the Plan's other options.[2] Compounding this injury, Northwestern failed to inform participants of this material fact, preventing participants from protecting themselves against Northwestern's mismanagement of the Plan.

Northwestern messed up, plain and simple. Many fiduciaries choose to offer low-, mid-, and high-deductible PPO options, as Northwestern did here, to provide employees a financial trade-off based on personal circumstances and anticipated medical spending. When managed properly, each of these options *could* be advantageous depending on a participant's circumstances and whether they incur a low, medium, or high amount of medical bills. But here, Northwestern

---

[1] Plaintiffs use the term "medical care" as a catch-all to describe all healthcare services provided under the Plan, including doctor visits, mental health treatment, prescription drugs, etc. The PPO options do not include dental or vision services, which require enrollment in additional dental- and vision-specific plans.

[2] A health insurance option is "financially dominated" when there is another option that results in lower total spending regardless of the amount of medical care received. *See Amended Complaint* ¶ 3. The Premier PPO is thus a dominated healthcare option.

has conceded that it "is unlikely that there is a scenario where one would be financially better off with the Premier PPO[.]" This defeats the entire purpose of offering low- and high-deductible options. Even worse, Northwestern had to be informed of its error by a faculty member, then consult with actuaries to confirm the error. Taken together, these allegations plausibly suggest that Northwestern lacked a prudent process for managing the Plan. *See Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 893 (C.D. Ill. 2025) (allegations of flawed process state a claim for breach of fiduciary duty).

The Seventh Circuit confirmed as much in *Hughes*, which involved alleged imprudence by Northwestern in managing its retirement plan. *See Hughes v. Nw Univ.*, 63 F4th 615 (7th Cir. 2023). *Hughes* confirmed the obvious: ERISA fiduciaries tasked with acting prudently and in the best interests of participants "have a continuing duty to monitor [Plan] expenses to make sure that they are not excessive with respect to the services received." *Id.* at 625 (citing *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016)); *see also Acosta v. Bd. Of Trs. Of Unite Here Health* ("*Acosta II*"), 2024 WL 3888862, at *4 (N.D. Ill. Aug. 21, 2024) (applying *Hughes* to a health-plan). *Hughes* also explicitly confirmed that charging participants more when a materially identical, cheaper option is available states a claim for breach of the duty of prudence. *Id.* at 634. Here, Northwestern has failed to ensure that Plan expenses are reasonable and not excessive with respect to the services received by requiring participants in the Premier PPO option to pay more for the same medical care as participants in the other PPO options.

To counter this blatant breach, Northwestern leads with a standing argument that is dead on arrival. Of course, paying more than necessary for the same medical care "constitutes economic harm and is therefore 'a classic and paradigmatic form of injury in fact.'" *City of Columbus v. Trump*, 453 F. Supp. 3d 770, 787 (D. Md. 2020) (quoting *Air Evac EMS, Inc., v. Cheathem*, 910

2

F.3d 751, 760 (4th Cir. 2018)). Northwestern relies on *Thole* to argue that Plaintiffs lack standing because they received the medical care they were promised. *See Defendant's Memorandum of Law in Support of Motion to Dismiss Amended Complaint* ("*Def's Memo*") at 1 (citing *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020)). Courts have repeatedly rejected similar attempts to overread *Thole,* as doing so would eradicate a fiduciary's responsibility to monitor Plan fees.[3] In fact, the cases that Northwestern cites confirm that Plaintiffs have standing here. *See, e.g.*, *Lewandowski v. Johnson & Johnson* ("*Lewandowski I*"), 2025 WL 288230, at *5 (D.N.J. Jan. 24, 2025) ("In plain terms, when Plaintiff spent more money on drugs at the pharmacy, which was allegedly the result of Defendants' breach of fiduciary duties, Plaintiff suffered a cognizable injury").

Northwestern next claims that it was acting as a settlor, not a fiduciary, in managing the Plan's PPO options. That is just plain wrong. A settlor "creates the plan's basic terms and conditions, executes a written instrument containing those terms and conditions, and provides in that instrument a procedure for making amendments" to the plan. *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011) (quotation omitted). Northwestern has identified nothing in the written plan document that requires it to offer a financially dominated option like the Premier PPO. To the contrary, in public statements Northwestern has admitted that decisions regarding the Plan's PPO

---

[3] *See, e.g., Knudsen v. MetLife Grp., Inc.*, 117 F.4th 570, 579 (3d Cir. 2024) ("[W]e decline to hold that *Thole* and *Perelman* require dismissal, under Article III, **whenever** a participant in a self-funded healthcare plan brings an ERISA suit alleging that mismanagement of plan assets increased his/her out-of-pocket expenses" because participants received the medical benefits they were promised) (emphasis in original); *Navarro v. Wells Fargo & Co.*, 2025 WL 897717, at *8 (D. Minn. Mar. 24, 2025) (rejecting same argument); *Acosta v. Board of Trustees of Unite Here Health* ("*Acosta I*"), 2023 WL 2744556, at *3 (N.D. Ill. Mar. 31, 2023) (same); *Su v. BCBSM, Inc.*, 2024 WL 3904715, at *3 (D. Minn. Aug. 22, 2024) (same); *Franklin v. Duke Univ.*, 721 F. Supp. 3d 386, 392 (M.D.N.C. 2024) (same); *E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, 2025 WL 2371537, at *8 (S.D.N.Y. Aug. 14, 2025), *cert denied sub nom., Connecticut Gen. Life Ins. Co., v. E Coast Advanced Plastic Surgery, LLC*, 2025 WL 3154472 (S.D.N.Y. Nov. 12, 2025) (same).

options are made by a committee identified as the plan administrator as part of the administrator's fiduciary role "administering our plan." *Am. Comp.* ¶ 10; *see also Amara*, 563 U.S. at 437 (ERISA plan's "administrator" is a "trustee-like fiduciary" who "manages the plan"). But even assuming Northwestern is right, it still had a duty to monitor the Plan to ensure its terms were consistent with ERISA because "the duty of prudence trumps the instructions of a plan document.'" *Buescher*, 791 F. Supp. at 892 (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014)). As such, the DOL recently warned fiduciaries that, "[t]he plan document should specify how fees are paid, [but] the fiduciary must ensure that those fees and expenses are reasonable, necessary for the plan's operation, and not excessive for the services provided."[4] Northwestern failed to do so here.

Because Northwestern's arguments lack merit, its motion should be denied.

**FACTUAL ALLEGATIONS**

**I.      The Plan and The Parties**

The Plan provides health insurance and other benefits to Northwestern employees. *See Amended Complaint* (*"Am. Compl."*) ¶ 27. For their health insurance, the Plan offered a PPO network through Blue Cross Blue Shield of Illinois that allows participants to receive certain care in-network but pay more for out-of-network care. *Id*. ¶ 11. Northwestern chose to offer three tiers within the same PPO network: the Premier PPO (low-deductible option); Select PPO (mid-deductible option); and Value PPO (high-deductible option).[5] *Id*. ¶ 31. These tiers all provide the same medical services. *Id*. ¶ 32. The only differences are financial. *Id*.

---

[4] *See Amended Complaint* ¶ 42 (quoting Dept. of Labor, *Understanding Your Fiduciary Responsibilities Under a Group Health Plan* at 5 (Sept. 2023)).

[5] The Plan also includes an HMO, which involves a separate healthcare network and different costs for obtaining medical care than the Plan's PPO options. *See id*. ¶ 30. An additional "ACA PPO" is available to adjunct faculty and temporary staff only. *See* ECF No. 48-3 at 11. These options are not at-issue here.

Participants' total healthcare expenses are primarily determined by each option's financial structure, including the deductibles, premiums, coinsurance rates, copayments, and out-of-pocket maximums. *Id*. ¶ 28. A deductible is the amount a participant must pay before insurance kicks-in. *Id*. A copayment is a fixed amount that a participant pays for a particular service. *Id*. Coinsurance is the percentage a participant pays for a particular service. *Id*. An out-of-pocket maximum is the maximum that a participant is allowed to pay each year before insurance covers all additional expenses (including copays). *Id*. Premiums are deducted from a participant's paycheck on a pre-tax basis regardless of whether a participant incurs any covered expenses. *Id*. ¶ 29.

Regardless of which PPO tier is selected, participants may choose between You, You + Spouse/Partner, You + Child(ren), or You + Spouse/Partner + Child(ren) coverage.[6] *Id*. ¶ 33. The premiums for each PPO option depend on the number of individuals covered, employment status, salary, Annual Benefits Base Rate ("ABBR"), and income. *Id*. Neither the Plan Document nor Summary Plan Description ("SPD") describe any formula for determining the amount of premiums, describe how each of these factors influence the calculation of premiums, or otherwise provide any procedure for determining the specific amount of premiums for each PPO tier. *Id*; *see also* ECF Nos 48-7, 48-8.

Northwestern is the Plan sponsor within the meaning of 29 U.S.C. § 1002(16)(B) and, for purposes of this case, has assumed responsibility for the acts of the Plan Administrator. *See Am. Compl.* ¶ 25; ECF No. 42 (Defendant stipulating to assume responsibility for employees administering the Plan). Accordingly, Northwestern is a functional fiduciary under 29 U.S.C. § 1002(21)(A) and is liable for all actions of the Plan Administrators. *Am. Compl.* ¶ 25.

---

[6] Plaintiffs refer to You + Spouse/Partner + Child(ren) coverage as "family" coverage.

Plaintiffs are current and former Plan participants who enrolled in the Premier PPO option during the relevant period. *Id*. ¶¶ 21-23. Plaintiffs have been financially injured by Defendant's fiduciary breaches by paying more for the same medical services than participants enrolled in other options. *Id*. Plaintiffs seek to represent the Plan and a class consisting of all Plan participants that enrolled in the Premier PPO option on or after June 20, 2019. *Id*. ¶ 60.

## II. The Plan's Dominated Premier PPO Option

Northwestern failed to undertake the requisite prudent process in assessing the fees charged to participants through the Premier PPO option in light of the services provided. *Id*. ¶ 46. The Premier PPO option provides access to the same medical services as other PPO tiers but causes participants to pay more for those services regardless of the amount of medical care received, making it a financially dominated healthcare option.[7] *Id*. As one example, a participant enrolled in family coverage receiving in-network services will spend between $10,000-$15,000 more per year *for the exact same medical care* if they are enrolled in the Premier PPO option instead of the Value PPO option, regardless of whether they and their family have no medical bills, some medical bills, or reach their out-of-pocket maximum:

---

[7] The one extreme and highly improbable scenario is the exception that proves the rule. For a participant to benefit from selecting the Premier PPO option, they would need to fall in the low- or mid-salary tier, enroll in the You + Child(ren) coverage, and incur *out-of-network* medical expenses exceeding $40,000. *Id*. at n. 21. As Defendant concedes, this situation is unlikely to occur. And if it ever did occur, it would be impossible to anticipate such that there is no rational reason to offer the Premier PPO based on this scenario.



*Id.* ¶ 51.[8] This gap exists because the premiums paid for the Premier PPO greatly exceed the reduction in out-of-pocket maximum compared to the cost of other options. *Id.* ¶¶ 48-49. This gap is worsened by the fact that Northwestern contributes up to $1,000-$2,000 annually to an HSA for participants in the Value PPO option but does not make such contributions to participants in the Premier PPO option. *Id.* ¶ 52.

As a fiduciary, Northwestern was responsible for selecting and negotiating health plans with its PPO provider, determining which tiers to offer, and ensuring the fees charged in each tier were reasonable and not excessive for the services provided. *Id.* ¶ 53. Offering the Premier PPO tier that provided the same medical care as the Plan's other PPO tiers, but at a significantly increased cost to participants and no financial trade-off, suggests that Northwestern employed an imprudent process for managing the Plan's PPO options and the fees charged to participants. *Id.*

---

[8] Defendant implies that this graph is inaccurate because it does not include copays. *See Def's Memo* at 24. This is misdirection. Tellingly, Defendant does not claim that including copays would change the dominated nature of the Premier PPO. That is because it wouldn't. And as the Amended Complaint acknowledges, it is impossible to include copays because they depend on the number of office visits. *See Am. Compl.* ¶ 51 n.23.

### III.     Defendant's Failure to Identify and Inform Participants of the Dominated Option

Discovering the dominated nature of a healthcare option requires a complicated mathematical computation that is beyond the skills of a layperson. *Id*. ¶ 13. The reason employees select a dominated option is a lack of understanding of health insurance and the benefits of each option, not a desire to waste money paying more for the same level of healthcare. *Id*. ¶¶ 13-15. Northwestern apparently became aware of the Premier PPO's dominated status only after being notified by a faculty member. *Id*. ¶ 8. Northwestern then consulted with the Plan's actuaries and confirmed in an email to that faculty member that "it is unlikely that there is a scenario where one would be financially better off with the Premier PPO, given the employee contributions relative to the out-of-pocket maximum."[9] *Id*. ¶ 50.

None of the documents provided to participants communicate the dominated nature of the Premier PPO option. *See* ECF Nos. 48-3 – 48-8. Even after learning of the dominated nature of the Premier PPO option, Northwestern misled participants by stating that "[i]f you choose a plan with lower monthly Premiums [the Value PPO option], you will likely pay more in out-of-pocket costs – through Copayments, Coinsurance, Deductibles, and the like – than you would if you choose a plan with higher monthly Premiums [the Premier PPO option]."[10] *Id*. ¶ 47. By failing to inform participants that it is extremely unlikely they would benefit from enrolling in the Premier

---

[9] Defendant claims that this email somehow undermines Plaintiffs disclosure claim. *See Def's Memo* at 30 n.16. However, this email was not sent to Plaintiffs or Plan participants generally.

[10] Defendant's claim that this quote is taken out of context does nothing to help them. *See Def's Memo* at 28. Nothing in this section informs participants that they will almost certainly pay more for the same services by enrolling in the Premier PPO option, and suggesting to participants that there is a financial trade-off associated with the Premier PPO actively misleads them about the dominated nature of the option. In other words, this paragraph tells participants how these PPO tiers **should** work if managed correctly, but misleads participants about how the dominated Premier PPO actually works given Northwestern's mismanagement.

PPO option, Northwestern failed to disclose material information that hinders participants' ability to make an informed choice about their benefit options. *Id*. ¶ 58.

## IV.    Defendant's Belated Correction of the Dominated Option

Northwestern has offered the same PPO network through Blue Cross Blue Shield of Illinois since at least 2018. *Id*. ¶ 11. After this lawsuit was filed, Northwestern announced that it was replacing Blue Cross Blue Shield with United Healthcare, thereby changing the Plan's PPO network and updating the cost-structures for each PPO tier. *Id*. ¶ 10. In doing so, it acknowledged a "responsibility to monitor the vendors that administer our health plans to ensure they are charging reasonable fees for their services and administering our plan in accordance with NU plan documents and in the best interest of the plan and plan participants." *Id*. Northwestern continues to offer low-, mid-, and high-deductible PPO tiers through a new United Healthcare PPO network, but none of the current options is dominated by any other. *Id*. ¶ 12.

## PLEADING STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Plausibility is the basic test for pleadings on a motion to dismiss." *Hughes*, 63 F4th at 628. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A court's role in evaluating pleadings is to decide whether the plaintiff's allegations are plausible – not which side's version is more probable…Where alternative inferences are in equipoise – that is, where they are all reasonable based on the facts – the plaintiff is to prevail on a motion to dismiss." *Id*. at 629-30 (citations and internal quotations omitted).

Accordingly, "'an ERISA plaintiff alleging a breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story.'"

9

*Buescher*, 791 F. Supp. at 892 (quoting *Allen v. Greatbanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016)). "This is particularly true in ERISA cases because 'ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.'" *Allen*, 835 F.3d at 678 (quoting *Braden v. Wal-Mart Stores Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)).

Here, Plaintiffs need not plead specific facts about Northwestern's decision-making process because that information is in Northwestern's possession. *Buescher*, 791 F. Supp. at 892. A complaint plausibly alleges a fiduciary breach where a plaintiff makes "'circumstantial factual allegations' from which the court 'may reasonably infer from what is alleged that the process was flawed.'" *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1022 (9th Cir. 2025) (quoting *PBGC v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013); *Braden*, 588 F.3d at 596).

## **ARGUMENT**

### I.      **Plaintiffs Plausibly Allege that Defendant Breached its Fiduciary Duties**

The duties charged to an ERISA fiduciary are "'the highest known to the law.'" *Appvion, Inc. Retirement Savings and ESOP by and through Lyon v. Buth*, 99 F.4th 928, 943 (7th Cir. 2024) (quoting *Halperin v. Richards*, 7 F.4th 534, 546 (7th Cir. 2021) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982))). These duties of prudence and loyalty require a healthcare plan fiduciary to act "solely in the interests of participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]" 29 U.S.C. § 1104(a)(1)(B).

10

A. **Plaintiffs Plausibly Allege that Defendant Employed an Imprudent Process for Managing the Plan**

Taken as a whole, the evidence plausibly suggests that Northwestern breached its fiduciary duties by lacking a prudent process for managing the Plan's PPO options and the fees associated with those options.

"The duty of prudence is a process-driven obligation." *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 213 (6th Cir. 2024) (collecting cases). Accordingly, the prudence analysis "centers not on the results" of a decision, "but on a fiduciary's process for" making the decision. *Pizarro v. Home Depot, Inc.,* 111 F.4th 1165, 1173 (11th Cir. 2024) (citing *Sacerdote v. New York Univ.*, 9 F.4th 95, 107 (2d Cir. 2021)). In analyzing breach, courts determine "whether the fiduciary… 'employed the appropriate methods to investigate the merits of'" its decision. *Johnson*, 122 F.4th at 213 (quoting *Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377, 384 (6th Cir. 2015)).

Consistent with this procedural duty, it is indisputable that healthcare plan fiduciaries like Northwestern "have a continuing duty to monitor [Plan] expenses to make sure that they are not excessive ***with respect to the services received***." *Hughes*, 63 F.4th at 625 (emphasis added) (citing *Tibble,* 843 F.3d at 1197); *see also Acosta II*, 2024 WL 3888862, at *4 (applying *Hughes* to the healthcare context); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999) (fiduciary standards apply to both retirement and healthcare plans because '[t]he definition of fiduciary makes no distinction between persons exercising authority over' these different types of plans.") (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 890-91 (1996)). Northwestern has conceded as much, publicly admitting that it has a responsibility to "monitor the vendors" including the Plan's PPO provider, ensure that participants are charged "reasonable fees for [plan] services[,]" and ensure that the Plan is administered "in the best interest of … plan participants." *Am. Compl.* ¶ 10.

11

Plaintiffs do not allege that the Plan's expenses are too high in the abstract. And "Plaintiffs attack not the ***decision***" to offer low-, mid-, and high-deductible PPO tiers, "but rather the ***implementation*** of the decision." *Waller v. Blue Cross of California,* 32 F.3d 1337, 1342 (9th Cir. 1994) (holding that "this distinction is dispositive" and defendant "acted in a fiduciary capacity") (emphasis in original) (citing cases). The lack of a prudent process to implement that decision resulted in participants in the Premier PPO paying significantly more, often thousands more per year, for ***the exact same*** medical care regardless of the amount or type of care they receive. In this way, Plaintiffs allege that the expenses associated with the Premier PPO option are excessive, unreasonable, and not necessary for the Plan's operation. *Hughes*, 63 F.4th at 625. "This failure suggests that Defendant employed an imprudent process for managing the Plan's PPO options and the fees charged to participants." *Am Compl*. ¶ 53.

*Hughes* again informs. The plaintiffs in *Hughes* alleged that Northwestern retained higher-cost share classes of certain investments when materially identical lower-cost share classes of the same investment were available, essentially causing its retirement plan participants to pay more than necessary for a materially identical investment. *Hughes*, 63 F.4th at 634. Like here, the service was the same, but the cost was different. The Seventh Circuit reversed the district court's dismissal of the share-class claim and noted that "[f]ive other circuits…have joined in this conclusion[.]" *Id*. at 636 (citing *Forman v. Tri-Health, Inc.*, 40 F.4th 443, 450 (6th Cir. 2022); *Kong v. Trader Joe's Co.*, 2022 WL 1125667, at \*1 (9th Cir. 2022); *Sacerdote*, 9 F.4th at 108; *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 483 (8th Cir. 2020); *Sweda v. Univ. of Penn.*, 923 F.3d 320, 331-332 (3d Cir. 2019)). That is because "no prudent fiduciary would purposefully invest in higher cost retail shares" when cheaper options of the same investment were available. *Tibble v. Edison Int'l*, 2017

12

WL 3523737, at \*12 (C.D. Cal. Aug. 16, 2017) (granting judgment for plaintiffs). Thus, the allegation created a plausible inference of an imprudent process for managing the Plan.[11]

The same is true here. No prudent fiduciary would purposely offer a dominated PPO option that in any realistic scenario would result in participants paying significantly more for the same medical care, then fail to inform participants about it. Accordingly, there is no reason to reach a different result here than in *Hughes* or the many other cases affirming the same principle.

## B. Defendant's Attempts to Distinguish the Premier PPO Fail

Northwestern's attempts to distinguish the Premier PPO from the Plan's other PPO options fail for at least two reasons.

First, Northwestern's claim that the Premier PPO offers "more generous coverage" is simply false. *Def's Memo* at 3. The fact that the copay and coinsurance structures differ among PPO options relates only to cost and is baked into Plaintiffs' claims; it does not affect the dominated nature of the Premier PPO or the services provided. Nor does the availability of an FSA constitute a plausible reason to offer a dominated option; participants in the Value PPO can select an HSA (and earn $1,000-$2,000 of contributions from Northwestern) *or* limited use FSA, whereas participants in the dominated Premier PPO can select *only* an FSA (and receive $0 of contributions from Defendant). *Am. Compl.* ¶ 32 n.14. Similarly, the fact that the Premier PPO option offers a so-called "savings program" for some specialty prescription drugs affects the *cost* of those

---

[11] Defendant misrepresents Plaintiffs' claims by exaggerating the analogy of offering healthcare options and a menu of 401(k) investments. Plaintiffs do not challenge the quality or scope of healthcare services the way a 401(k) plaintiff would allege that an underperforming investment, say a large-cap value fund, should be replaced with a different large-cap value fund from a higher-performing investment manager. Instead, Plaintiffs allege that Defendant failed to evaluate and monitor the Plan's PPO tiers and allowed participants in the Premier PPO to pay more for the same medical care as participants in the Plan's other PPO options. *Hughes* represents the better analogy, as described *supra*.

medications, not the type of medication available, and does not affect the dominated nature of the options.[12]

More importantly, Northwestern could have offered the Premier PPO option with all of these supposed advantages *while also ensuring that the option was not financially dominated*. Northwestern did just that after this lawsuit was filed. These characteristics do nothing to counter the inference of an imprudent process leading to a dominated option.

Second, even if these excuses had merit, "based on the facts pleaded, these alternative inferences are not strong enough to overcome the equally, if not more, reasonable inference that Northwestern failed" to appropriately monitor the Plan. *Hughes*, 63 F.4th at 615; *see also Forman*, 40 F.4th at 450 ("[e]qually reasonable inferences" explaining a fiduciary's conduct do not warrant dismissal because "at the pleading stage, it is too early to make these judgment calls"). For example, the Amended Complaint acknowledges that one extreme and unlikely scenario *could* result in a participant paying slightly less in the Premier PPO. *See Am. Compl.* ¶ 50 n. 21. Northwestern essentially urges the Court to infer that it intentionally offered a dominated option because of this extreme scenario, yet still chose not to inform participants of that material fact. Of course, this is not more plausible than the obvious inference; that Northwestern failed to

---

[12] Moreover, this "savings program" applies to specialty drugs only and is designed to save **Defendant,** not Plan participants, money. In fact, the "savings program" causes participants in the Premier PPO option to pay *more* out-of-pocket for their medical care because the program does not apply costs for specialty drugs to a patient's deductible or out-of-pocket maximum. So, patients with serious health conditions who qualify for manufacturer co-pay assistance payments are unable to apply those assistance payments to their deductible or out-of-pocket maximum if enrolled in the Premier PPO. Because they will not receive credit for these assistance payments if enrolled in the program, they will incur *additional* out-of-pocket expenses that would otherwise be paid by insurance. And even if it were true that participants in need of specialty drugs would benefit from enrolling in the Premier PPO option, Defendant had a duty to disclose to participants that the Premier PPO option is meant only for patients with serious health conditions like cancer and HIV. *See infra* at 21-25. Regardless, the Court need not wade-into this dispute because it is outside the scope of the pleadings.

14

appropriately monitor the Plan's PPO options and expenses. Even if it were plausible, it "is just one possible explanation for why Northwestern chose to retain" a dominated option, but "this explanation is not so much more obvious than plaintiffs' account that this issue can be resolved on the pleadings." *Id*. at 635-636 (rejecting attempt by Northwestern to justify offering higher-cost share classes).

### C. Monitoring Plan Expenses is a Quintessential Fiduciary Function

Northwestern's primary argument regarding breach is that determining plan costs is a settlor function. That is simply false. Their argument attempts to erase the procedural aspect of the duty of prudence. Moreover, even if Northwestern were correct that setting costs could be a settlor function in some scenarios, they have identified nothing in the Plan Document that would make it so here. And even if they had, Northwestern still had a duty to monitor the Plan to ensure its terms were consistent with ERISA because "the duty of prudence trumps the instructions of a plan document.'" *Buescher*, 791 F. Supp. at 892 (quoting *Dudenhoeffer*, 573 U.S. at 421).

#### 1. The Plan Document Does Not Require Defendant to Offer a Dominated Option

Northwestern has identified ***nothing*** in the Plan Document that requires offering a dominated option or limits its discretion in offering various PPO tiers of varying characteristics.

ERISA distinguishes between fiduciary functions and settlor functions. "'The plan's sponsor (e.g., the employer), like a trust's settlor, creates the basic terms and conditions of the plan, executes a written instrument containing those terms and conditions," and acts as a settlor, not a fiduciary, in doing so. *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 877 (7th Cir. 2013) (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011)). Settlor functions include crafting the rules "governing collection of premiums, definition of benefits, submission of claims, and resolution of disagreements over entitlement to services." *Pegram v. Herdich*, 530 U.S. 211, 223

15

(2000) (citation omitted). These terms are memorialized in the Plan Document. *See Kenseth,* 722 F.3d at 877.

Northwestern filed only excerpts of the Plan Document,[13] none of which mention the Plan's PPO options, the financial terms for each option, or anything else suggesting that the presence of a dominated option was dictated by the terms of the Plan as set forth by the Plan's settlor. *See Def's Memo* at 19-20 (citing ECF Nos. 48-7, 48-8). The only description of cost-sharing in the Plan Document describes the ***method for collecting premiums*** through payroll deductions, without stating what those premiums will be or how they should be calculated. *See* ECF No. 48-7 at § 6.2; *compare with Pegram*, 530 U.S. at 223 ("Rules governing ***collection of premiums***" are settlor functions identified in the Plan Document) (emphasis added).[14] The Plan Document does not provide any formula or specific set of factors to determine the amount of premiums, deductibles, out-of-pocket maximums, or any other cost-sharing responsibilities. *See Winsor v. Sequoia Benefits & Insurance Services, LLC*, 62 F.4th 517, 525 (9th Cir. 2023) (determining costs is discretionary where it is "based not on a specific formula or set of factors.") (internal quotation marks omitted).

In fact, the Plan Document states the opposite of what Northwestern urges the Court to infer. It assigns the Plan administrator, not the Plan sponsor, discretion in determining unspecified "contribution amounts." *See* ECF No. 48-7 at § 6. As the Seventh Circuit explained, a "'plan's

---

[13] The Court should not rely on incomplete versions of the Plan Document or Plan summaries. "If [Northwestern] wanted the [court] to rely on the contents of its employee-benefits plans, it should have provided a full set of authentic plan documents for the relevant period." *Moyer v. GEICO*, 114 F.4th 563, 568-69 (6th Cir. 2024).

[14] Defendant misapplies *Pegram*. *See Def's Memo* at 17 (quoting *Pegram*, 530 U.S. at 226). That portion of *Pegram* discusses a term in the plan document that pays physicians spread profits on certain services, not the healthcare options offered to plan participants. *See* 530 U.S. at 226 (plaintiff challenged "a year-end distribution to the physicians of profit derived from the spread between subscription income and expenses of care and administration").

administrator, a trustee-like fiduciary, manages the plan'" as a fiduciary. *Kenseth*, 722 F.3d at 877

(quoting *Amara*, 563 U.S. at 437). Thus, the Plan administrator acts as a fiduciary in implementing

the terms of the Plan, which here allow for fiduciary discretion to determine reasonable plan

expenses.[15] *Id.* at 869; *see also Larson v. United Healthcare Ins. Co.,* 723 F.3d 905, 916 (7th Cir.

2013) (a person is a fiduciary to the extent "'he exercises any discretionary authority or

discretionary control respecting management of such plan'") (quoting 29 U.S.C. § 1002(21)(A)).

Plaintiffs plausibly allege that Northwestern employed an imprudent process in doing so.

This is consistent with the DOL's explanation of settlor vs. fiduciary functions in managing

a healthcare plan. While "[t]he Plan document should specify ***how*** fees are paid" it is a fiduciary's

duty to "ensure that those fees and expenses are reasonable, necessary for the plan's operation, and

not excessive for the services provided."[16] Put differently, "[a]lthough decisions concerning plan

design are normally 'settlor' in nature, and therefore not subject to ERISA fiduciary duties, the

implementation of decisions concerning plan design can be subject to ERISA fiduciary duty."

*Asner v. SAG-AFTRA Health Fund*, 557 F. Supp. 3d 1018, 1033 (C.D. Cal. 2021) (citing *Waller*,

32 F.3d at 1342).[17]

---

[15] Plaintiffs originally sued both Defendant as the Plan sponsor and the Executive Director of Benefits & Work/Life Resources, plus Does 1-20 acting as Plan administrators. *See* ECF No. 36. Defendant agreed to assume responsibility for all acts of the Plan administrators. *Id*. Accordingly, the fact that Defendant acted through its employees to administer the Plan does not absolve it of fiduciary responsibility.

[16] *See* Dep't of Labor, *Understanding Your Fiduciary Responsibilities Under a Group Health Plan* (Sept. 2023) at 5 (emphasis added).

[17] *Argay* does not suggest otherwise. *See Def's Memo* at 18 (citing *Argay v. Nat'l Grid USA Serv. Co.*, 503 F. App'x 40, 42 (2d Cir. 2012)). The plaintiffs in *Argay* alleged that the defendant breached its fiduciary duty by replacing life insurance option A for less-generous option B, and the plaintiffs sought "enforcement of the original Plan A's benefits and an award for damages covering all losses plaintiffs' incurred as a result of Defendants' reduction of Plan A benefits." *Amatangelo v. National Grid USA Service Co., Inc.,* 2011 WL 3687563, at \*2 (W.D.N.Y. Aug. 23, 2011) (district court decision). Further, that case properly waited until summary judgment to determine fiduciary status.

Northwestern also relies on the Plan benefit summaries provided to participants, but ERISA does not "'giv[e] the administrator the power to set plan terms indirectly by including them in the summary plan descriptions.'" *Kenseth,* 722 F.3d at 877 (quoting *Amara*, 563 U.S. at 438); *see also Peters v. Aetna Inc.* ("*Peters I*"), 2 F.4th 199, 211 (4th Cir. 2021) ("[t]he Supreme Court has indicated that 'the summary documents, important as they are, provide communication with beneficiaries about the plan, but that their statements do not themselves constitute terms of the plan.'") (quoting *Amara*, 563 U.S. at 438); *Moyer*, 114 F.4th at 569 (holding that "the district court erred by relying on the plan summary" because "the plan summary is not the controlling legal document"). And in any event, these Plan summaries still do not provide any sort of set formula that mandates the inclusion of a dominated option. *See* ECF Nos. 48-3 – 48-6. They simply inform participants of the costs associated with each option.

In sum, despite Northwestern's contention that the inclusion of a dominated option was mandated by the terms of the Plan set forth by the Plan's settlor, none of the documents identified by Northwestern actually say this—in fact, they support a contrary inference that the selection of options to be offered was left to the fiduciary discretion of the Plan administrator.

### 2. Defendant Cannot Use the Plan Document as a Shield

Even if Northwestern were correct that offering a dominated option is dictated by the Plan Document, the statute is clear that a fiduciary may rely on the Plan Document only "insofar as such documents and instruments are consistent with the provisions of this subchapter[.]" 29 U.S.C. §1104(a)(1)(C). "As the [Supreme] Court observed: 'This provision makes clear that the duty of prudence trumps the instructions of a plan document.'" *Buescher*, 791 F. Supp. at 892 (quoting *Dudenhoeffer*, 573 U.S. at 421). Of course, a fiduciary may not blindly follow Plan terms without ensuring that those terms are consistent with ERISA. The duty of prudence "would make little

18

sense if, as [Defendant] argue[s], the duty of prudence is defined by the aims of the particular plan as set out in the plan documents, since in that case the duty of prudence could never conflict with a plan document." *Dudenhoeffer*, 573 U.S. at 421.

As such, "[t]he plan document should specify ***how*** fees are paid," which it does here, but "the fiduciary must ensure that those fees and expenses are reasonable, necessary for the plan's operation, and not excessive for the services provided," which Northwestern failed to do.[18] Put differently, "once the Plan was in place, ERISA's statutory duties…controlled over the Plan's instruction[.]" *Schissler v. Janus Henderson US (Holdings) Inc.*, 2023 WL 6902050, at *16 (D. Colo. Sept. 7, 2023), *report and recommendation adopted*, 2024 WL 233141 (D. Colo. Jan. 22, 2024) (rejecting argument that plan administrators were required to offer imprudent investments because they were identified in the plan document). So, regardless of whether the initial act of offering a dominated option is a fiduciary or settlor act, Northwestern indisputably had a duty to prudently monitor the Plan to ensure that the fees were reasonable, necessary, and not excessive for the services provided. Plaintiffs plausibly allege that Northwestern failed to do so.

*Larson* does not warrant a different result. *See Def's Memo* at 2, 16, 18. That case involved a suit against the insurer, United Healthcare, alleging a per-se violation of Wisconsin law by United, not a procedural failure to evaluate plan fees by the employer. *See Larson*, 723 F.3d 905 ("The legal premise of the suit is that [a Wisconsin statute] prohibits health insurers from including ***any*** chiropractic copays in their [insurance] policies.") (emphasis in original). The Court held that

---

[18] See *Understanding Your Fiduciary Responsibilities Under a Group Health Plan* at 5 (emphasis added). Defendant is wrong that setting contributions to fund a pension plan is analogous to offering a dominated healthcare option. *See Def's Memo* at n. 8 (citing pension plan cases). Pension plan contributions are not exchanged for services, as participants' healthcare payments are. Thus, there is no corresponding duty to ensure that pension plan contributions are reasonable with respect to the services provided and no allegation that participants overpaid for a service.

the insurer was not a fiduciary when creating the terms of its insurance policy, which is a general policy that was not created specifically for the plan at-issue. *Id*. at 917.[19] This says nothing of whether the Plan Document here required Northwestern to offer participants a dominated option, or whether Northwestern's process for monitoring the Plan was sound. Moreover, *Larson* was decided before *Dudenhoeffer* clarified that the duty of prudence trumps the instructions of a plan document.

### 3. Defendant's Caselaw is Inapposite

None of the caselaw that Northwestern cites holds that a health-plan fiduciary has no duty monitor plan fees and expenses. Much of the caselaw involves claims against third-party service providers setting their own compensation, not plan administrators monitoring plan fees. Moreover, many of those cases were decided on summary judgment because "the determination of a defendant's fiduciary status is a fact-intensive one" and "courts in this district have found it premature to decide the issue in ruling on a motion to dismiss[.]" *Patten v. N. Tr. Co.*, 703 F. Supp. 2d 799, 808-09 (N.D. Ill. 2010) (collecting cases); *see also, e.g., In re AME Church Emp. Ret. Fund. Litig.*, 2025 WL 2713767, at *15 (W.D. Tenn. Sept. 23, 2025) (fiduciary status inappropriate to decide on motion to dismiss) (collecting cases).

*Leimkuehler* is a summary judgment order involving suit against a 401(k) annuity provider, not the plan administrator, attempting to assign fiduciary status to the annuity provider. *See Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 908 (7th Cir. 2013). *United Paperworkers* is a summary judgment order in a suit brought by various unions against multiple employers for violating the terms of a collective bargaining agreement, seeking "a court order compelling defendants to reinstate the medical insurance as provided" in the agreements. *United Paperworkers*

---

[19] The Court also held that the co-pay did not actually violate Wisconsin law. *Id*. at 918.

*Int'l Union, AFL-CIO, CLC v. Jefferson Smurfit Corp.*, 771 F. Supp. 992, 994 (E.D. Mo. 1991), aff'd, 961 F.2d 1384 (8th Cir. 1992). That case concerned the "business decision" as to whether to offer benefits at all, not whether defendants appropriately monitored the plan's costs. *Id*. at 999.

*Express Scripts*, *CVS Pharmacy*[20] and *Moeckel* also involve claims against the third-party insurer, and *CVS Pharmacy* includes the allegation that benefits were "decreased or eliminated" and not that expenses were unreasonable in light of the services provided. *See Doe 1 v. Express Scripts, Inc.*, 837 Fed.Appx. 44, 49 (2d Cir. 2020) ("[W]hen a [pharmacy benefit manager] sets prices for prescription drugs pursuant to the terms of a contract" negotiated by the plan sponsor, the PBM is not an ERISA fiduciary); *Doe One v. CVS Pharmacy, Inc.*, 348 F. Supp. 3d 967, 1000-01 (N.D. Cal. 2018), *aff'd in part*, *vacated in part*, *remanded sub nom. Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204 (9th Cir. 2020) ("Plaintiffs allege that Employer Defendants 'decreased or eliminated Plaintiffs' and Class Members' plan benefits."); *Moeckel v. Caremark, Inc.*, 622 F. Supp. 2d 663, 666 (M.D. Tenn. 2007) (SJ order involving claims against a PBM alleging that PBM was a fiduciary in negotiating its own compensation). None of these are relevant here.

In sum, Northwestern has identified nothing to suggest that they have no duty to monitor the Plan's PPO options and the expenses associated with those options.

### D. Plaintiffs Plausibly Allege That Northwestern Failed to Inform Plan Participants

Plaintiffs plausibly allege that Northwestern breached its fiduciary duties by failing to inform Plan participants that they would almost certainly spend more by enrolling in the Premier PPO while receiving no additional benefit to justify the increased cost. Indeed, Northwestern actively misled participants by informing them that "'[i]f you choose a plan with lower monthly

---

[20] Defendant mislabeled this case as *Doe One v. Express Scripts*. *See Def's Memo* at 17.

21

Premiums [the Value PPO option], you will likely pay more in out-of-pocket costs – through Copayments, Coinsurance, Deductibles, and the like – than you would if you choose a plan with higher monthly Premiums [the Premier PPO option].'" *Am. Compl*. ¶¶ 47-52 (quoting SPD).

### 1. Northwestern Failed to Inform Participants That They Were Unlikely to Benefit from the Premier PPO Regardless of Circumstances

It is beyond dispute that "the provision of information about Plan benefits and coverage is a fiduciary act." *Leuthner v. Blue Cross & Blue Shield of Ne. Pennsylvania*, 454 F.3d 120, 127 (3d Cir. 2006) (citation omitted). As such, Northwestern possesses an affirmative obligation to "communicate material facts affecting the interests of beneficiaries." *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993) (citation omitted). "The duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA." *Kenseth,* 610 F.3d at 466. This duty "'exists when a beneficiary asks fiduciaries for information, and even when he or she does not.'" *Id*. (quoting *Anweiler*, 3 F.3d at 991 (citation omitted).

"Information is material if there is a substantial likelihood that nondisclosure 'would mislead a reasonable employee in the process of making an adequately informed decision regarding benefits to which she might be entitled.'" *Braden,* 588 F.3d at 599 (quoting *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007); *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 551 (6th Cir. 1999)). Courts may also consider whether the scenario is "common enough to occur repeatedly and will affect not just the plaintiff but other plan participants and beneficiaries as well[.]" *Kenseth*, 610 F.3d at 471 (citations omitted).

Here, "more than half of employees select a financially dominated option when one is available." *Am. Compl*. ¶ 15. That number drops to "less than 2%" when participants are informed of and understand the implications of choosing a dominated option. *Id*. ¶ 15. Of course, the

22

knowledge that "'it is unlikely that there is a scenario where one would be financially better off with the Premier PPO'" is a material fact that would lead participants to choose a different option.[21] *Id.* ¶ 50 (quoting Defendant). *Braden* is instructive. The Eighth Circuit reversed dismissal of a disclosure claim where the defendant failed to inform participants that a lower-cost share class of the same investment was available, which could "mislead a reasonable participant in the process of making investment decisions under the Plan." *Braden*, 588 F.3d at 599. Likewise, failing to inform participants that they would pay more for the same medical care by enrolling in the Premier PPO option affects a participant's ability to make an informed choice.

The fact that Northwestern disclosed the various cost-sharing features is no excuse. As *Braden* highlights, the material fact is not the cost itself, but the fact that the same service is available for less. *See id.* (disclosing cost of the investment not sufficient). It is also ludicrous to suggest that the average participant should have realized Northwestern's mistake and avoided the Premier PPO option based only on the cost-sharing structure.[22] Indeed, Northwestern itself failed to realize its own mistake until consulting with an actuary.

Northwestern also must communicate material facts "in language that may be understood by the ordinary reader." *Kenseth*, 610 F.3d at 471 (citing 20 U.S.C. § 1022(a)). Instead, of clearly explaining the disadvantages of the Premier PPO option to participants, Northwestern told participants they "will likely pay more in out-of-pocket costs – through Copayments, Coinsurance,

---

[21] If there were any doubt, "[m]ateriality is a fact intensive issue which can be decided as a matter of law only if no reasonable trier of fact could disagree." *Braden*, 588 F.3d at 599 (citations omitted).

[22] Just like they do here, Northwestern blamed participants for Northwestern's own imprudence with respect to its retirement plan. However, that argument was explicitly rejected by the Supreme Court. *See Hughes v. Nw Univ.*, 595 U.S. 170, 176 (2022) ("The Seventh Circuit erred in relying on the participants' ultimate choice over their investments to excuse allegedly imprudent decisions by [Northwestern].").

23

Deductibles, and the like" in the other PPO options. *Am. Compl*. ¶¶ 47-52 (quoting SPD). Where the Premier PPO is always more expensive in the aggregate, this statement is certainly a "'misrepresentation that would confuse a reasonable beneficiary about his or her benefits[.]'" *Leuthner*, 454 F.3d at 127-28 (quoting *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242 F.3d 497, 505 (3d Cir. 2001)).

### 2. Intent is Not Required to State a Disclosure Claim

Northwestern is wrong to suggest that a failure to inform must be intentional to be actionable. As *Kenseth* clarified regarding the Seventh Circuit's previous rulings:

> [B]road statements to the effect that 'while there is a duty to provide accurate information under ERISA, negligence in fulfilling that duty is not actionable,' must not be read too broadly; although negligent misrepresentations are not themselves actionable, the failure to take reasonable steps to head off such misrepresentations can be actionable.

610 F.3d at 470-71 (cleaned up) (quoting and distinguishing *Vallone v. CAN Fin. Corp.*, 375 F.3d 623, 640-42 (7th Cir. 2004)). A fiduciary is "absolve[d]… of liability of negligent misrepresentations" only if the misrepresentations are "made by an agent of the plan to a plan participant or beneficiary" and "the plan documents themselves are clear and the fiduciary has taken reasonable steps to avoid such errors." *Id*. at 470. That is not the case here, and the cases Northwestern cites do not suggest a different result. *See Def's Memo* at 26-30.[23]

*Kenseth*'s holding is consistent with the Supreme Court's guidance that a "'[fiduciary] is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.'" *Pegram,* 530 U.S. at 225 (quoting

---

[23] *Howell* concerns a specific disclosure regulation relating to individual account retirement pension plans, not the disclosure duties of healthcare or welfare benefit plan fiduciaries. *See Howell v. Motorola, Inc.,* 633 F.3d 552, 570-71 (7th Cir. 2011) (discussing 29 C.F.R. § 2550.404c-1). The Court held that Motorola satisfied the regulation's requirement to inform participants of a "'general description of the investment objectives and risk' of the Motorola Stock Fund." *Id*. at 571. That is not applicable here.

*Meinhard v. Salmon*, 249 N.Y. 458, 464 (1928) (Cardozo, J.)). Moreover, requiring intent to state a claim based on imprudence would be inconsistent with ERISA. *Warmenhoven v. NetApp., Inc.*, 13 F.4th 717, 726 (9th Cir. 2021) ("'We fail to see the logic in transplanting the element of scienter from the tort of deceit into a statutory ERISA claim with roots in the law of fiduciaries and trusts.'") (quoting *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1183 (9th Cir. 2004)).

Even if Northwestern were correct that intent is required for a disclosure claim, Plaintiffs plausibly allege that the failure to inform was intentional. "Deliberate misrepresentations do, of course, constitute a breach of the fiduciary's duty of loyalty." *Kenseth*, 610 F.3d at 470 (citing *Frahm v. Equitable Life Assur. Soc. Of U.S.*, 137 F.3d 955, 959-60 (7th Cir. 1998)). Here, Northwestern failed to inform participants of the dominated option even ***after*** it belatedly discovered this material fact. While Northwestern may have been imprudent before that knowledge, it became disloyal as soon as Northwestern decided not to share that material information with participants. Accordingly, Northwestern's motion should be denied even applying their incorrect standard.

## II. Plaintiffs Have Suffered Concrete Harm By Paying Excessive Fees and Through Defendant's Violation of Fiduciary Duties

Standing contains three elements: (1) injury in fact; (2) traceability to a defendant's conduct; and (3) redressability. *See Albert v. Oshkosh Corp.*, 47 F.4th 570, 577 (7th Cir. 2022) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Northwestern challenges only the first element, injury in fact. *See Def's Memo* at 9.

That element is easily met. Plaintiffs allege clear-cut economic harm through paying more than was reasonable or necessary for the medical services provided. "[C]omplaints like Plaintiffs' that allege 'economic or physical harms' are almost always no-doubters." *Blue Cross & Blue Shield of N.C. v. Rite Aid Corp.*, 519 F.Supp.3d 522, 533 (D. Minn. 2021) (allegation that the

25

defendant caused the plaintiffs "to pay more than they should have" for prescription drugs establishes standing) (quoting *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 642 (2007) (Souter, J. dissenting)). This case is no exception. Had Northwestern not breached its fiduciary duties as described *supra*, Plaintiffs would have paid significantly less for the same medical care. The injury alleged here "constitutes economic harm and is therefore 'a classic and paradigmatic form of injury in fact.'" *City of Columbus,* 453 F. Supp. at 770 (quoting *Cheathem*, 910 F.3d at 760). Of course, "[i]f a defendant has caused…monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

Even if Plaintiffs had not alleged a financial injury, they would still establish Article III standing. Plaintiffs bring claims under 29 U.S.C. § 1132(a)(3) for surcharge and other equitable relief. *See Am. Compl.* ¶¶ 18, 73, 77, *Prayer For Relief*. As numerous courts have held, "Plaintiffs need not demonstrate individualized injury to proceed with their claims for injunctive relief under § 1132(a)(3); they may allege only violation of the fiduciary duty owed to them as a participant in and beneficiary of their respective ERISA plans*." Loren v. Blue Cross and Blue Shield of Mich.*, 505 F.3d 598, 610 (6th Cir. 2007) (alleged violation of failure to disclose establishes Article III standing). Here, Plaintiffs allege that Northwestern breached its fiduciary duties in managing the Plan and in failing to disclose material information regarding the Plan. "Accordingly, even without a personal financial injury, [Plaintiffs] ha[ve] standing to maintain [their] claims for surcharge…based on [their] allegations of breach of fiduciary duty." *Peters I*, 2 F.4th at 220-21; *see also Peters v. Aetna, Inc.* ("*Peters II*"),  2023 WL 3829407 at *7 (W.D.N.C. June 5, 2023) (rejecting the argument that *Thole* should have mooted the analysis in *Peters I* and holding that "Plaintiff continues to have Article III standing to assert claims for disgorgement [and]

surcharge…both as an individual participant and on behalf of her Plan, without proof of a financial loss").

### A. Defendant Relies on Strained Interpretations of Inapposite Caselaw

Northwestern does not dispute that participants in the Premier PPO option, including Plaintiffs, paid more than other participants for the same medical services. Instead, Northwestern argues that the Supreme Court's decision in *Thole* forecloses any claim in which the plaintiffs "have received all of the benefits that they were promised under the plan's terms" regardless of how much they pay for those benefits. *Def's Memo* at 11. This same argument was recently rejected in *Knudsen v. MetLife Group, Inc.*, which recognized that "[w]hile [Defendant] is correct that sponsors of self-funded insurance plans, like pension plans, bear all the risk of distributing benefits to beneficiaries, we cannot ignore a more fundamental tenet of injury-in-fact: financial harm, 'even if only a few pennies,… is a concrete, non-speculative injury." 117 F.4th 570, 580 (3rd Cir. 2024) (quoting *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014)). Therefore, the Third Circuit "decline[d] to hold that *Thole* and *Perelman* require dismissal, under Article III, ***whenever*** a participant in a self-funded healthcare plan brings an ERISA suit alleging that mismanagement of plan assets increased his/her out-of-pocket expenses." *Id*. at 579; *see also Navarro v. Wells Fargo & Co.*, 2025 WL 897717, at *8 (D. Minn. Mar. 24, 2025) ("[T]he Court does not read *Thole II* to hold, as a matter of law, that a plaintiff suing a fiduciary of an ERISA-governed defined-benefit health plan cannot ever establish standing on a theory of harm premised on excessive out-of-pocket costs.").

A closer look at *Thole* reveals that it is inapposite. Critically, the *Thole* plaintiffs did not even allege that they suffered ***any*** financial injury. 590 U.S. at 542-544. Instead, they simply alleged that, due to the defendant's mismanagement, their pension plan was "underfunded for a

27

period of time." *Id.* at 546. But they were still receiving their monthly payments in the amount that they were entitled to, and winning or losing the suit would make no difference—"not a penny less" and "not a penny more"—to them. *Id.* at 541. That is clearly not true here. "Unlike the plaintiffs in *Thole*, the [Plaintiffs] allege[] losses here" in the form of higher payments for the same medical services, which is "a concrete injury, caused by [Defendant's conduct] and redressable by a damages award." *Su v. BCBSM, Inc.*, 2024 WL 3904715, at *3 (D. Minn. Aug. 22, 2024) (rejecting argument that there was no injury "because the plan documents required the plans to pay whatever amounts BCBSM negotiated with providers"), *motion to certify appeal denied*, 2025 WL 2043663 (D. Minn. July 21, 2025). Thus, while Northwestern "attempts to fit these facts to *Thole*[,]" this case is nothing like *Thole*. *Acosta I*, 2023 WL 2744556, at *3 (distinguishing *Thole* from healthcare cases and finding plaintiffs had standing for excessive fee claims).

Northwestern cites a slew of cases that are unhelpful, each alleging a different type of injury than what Plaintiffs allege here. *See Def's Memo* at 10-14. These cases involve alleged misconduct that depletes the value of plan assets or increases overall plan costs, which allegedly causes a shortfall, which then allegedly causes the defendants to charge participants higher premiums to account for that shortfall. *See, e.g., Winsor,* 62 F.4th at 523-24 (describing alleged causal chain of events regarding commissions and administrative fees); *Navarro*, 2025 WL 897717, at *3 (describing allegations that decreases in "compensation, including the administrative fees," paid to a service provider would result in decreases in premiums paid by participants); *Lewandowski v. Johnson & Johnson* ("*Lewandowski II*"), 2025 WL 3296009, at *2 (D. N.J. Nov. 26, 2025) (describing similar allegations); *Knudsen*, 117 F.4th at 574-75 (describing allegations that prescription drug rebates should have been used to decrease the plan's funding obligations, which would have caused MetLife to lower participant premiums). These cases do ***not*** hold that

28

excessive payments are not economic harm, as Northwestern implies. Instead, "[t]he problem with plaintiffs' theory" in these cases "is that plaintiffs [did] not plead[] sufficient facts tending to show that [the defendant's] alleged breach of fiduciary duty led to plaintiffs paying higher contributions." *Winsor*, 62 F.4th at 524; *see also Navarro*, 2025 WL 897717, at *9 (noting the "tenuous" connection between the challenged misconduct and the alleged injury); *Lewandowski II*, 2025 WL 3296009, at *4 ("This Court finds *Navarro* persuasive and applies that Court's reasoning"); *Knudsen*, 117 F.4th at 582 ("it is speculative that MetLife's alleged misappropriation of drug rebate money resulted in Plaintiffs paying more for their health insurance").[24]

Unlike these cases, there is nothing speculative about the harms alleged here. There is no question inclusion of the Plan's dominated option caused Plaintiffs to pay more for the same medical care than they would have in the Plan's non-dominated option. The additional premium amounts are tabulated at paragraph 48 of the Amended Complaint and the chart following paragraph 51, reproduced *supra* at p. 7, shows the difference in total out-of-pocket costs and premiums at every level of medical spending. Thus, far from a "tenuous" connection, there is a direct link and "'the defendant's challenged action is the 'but for' cause of the injury,'" such that

---

[24] *Loren* similarly rejected the argument that the plaintiff's contributions to the plan "probably would have been less" as "conjectural and hypothetical." *Loren,* 505 F.3d at 608; *see also Gonzalez de Fuente v. Preferred Home Care of New York LLC*, 858 F.App'x 432, 434 (4th Cir. 2021) (rejecting argument that plaintiffs "might have received better health benefits or a cash alternative" absent alleged misconduct). *Scott* is even less relevant. *See Def's Memo* at 10, 12 (citing *Scott v. United Health Grp., Inc.*, 540 F. Supp. 3d 857 (D. Minn. 2021). There, "the plaintiffs' theory of harm was premised on their allegations that the plan at issue mismanaged plan assets…Unlike the *Scott* plaintiffs, Plaintiffs here do not premise their theory of individual harm solely on [defendant's] purported misuse of participant contributions after Plaintiffs relinquished any legal interest in them." *Navarro*, 2025 WL 897717, at *9 (distinguishing *Scott*). And the pension risk transfer cases Defendant cites are even further afield. *See Def's Memo* at 12, 14 (citing *Doherty v. Bristol-Myers Squibb Co.*, 2025 WL 2774406, at *5-7 (S.D.N.Y. Mar. 28, 2025); *Bueno v. Gen Elec. Co.*, 2025 2719995, at *12 (N.D.N.Y. Sept. 24, 2025)). Still further off is *Lear*, which is not an ERISA case. *See Def's Memo* at 11 (quoting *Lear Siegler Servs., Inc. v. Rumsfeld*, 457 F.3d 1262, 1265 (Fed. Cir. 2006)).

"standing is sufficiently alleged." *Tomcik v. Highmark Health*, 2025 WL 3036464, at *5 (W.D. Pa. Oct. 7, 2025), *report and recommendation adopted*, 2025 WL 3035003 (W.D. Pa. Oct. 30, 2025) (quoting *Knudsen*, 117 F.4th at 577).

**B.      Plaintiffs May Seek Relief on Behalf of the Plan Under § 1132(a)(2)**

Northwestern is wrong to suggest that Plaintiffs may not represent the Plan under § 1132(a)(2). "Article III generally requires injury to the plaintiff's personal legal interests, but that does not mean that a plaintiff with article III standing may only assert his own rights or redress his own injuries." *Braden,* 588 F.3d at 591-92 (internal citations omitted). "Whether [Plaintiffs] may pursue claims on behalf of the Plan at all is a question of constitutional standing which turns on [their] personal injur[ies]." *Id*. at 592. While a participant that has suffered no injury in fact may not sue on behalf of the plan under § 1132(a)(2), "a plaintiff may seek relief under § 1132(a)(2) that sweeps beyond his own injury. Since [Plaintiffs] ha[ve] standing under Article III….§ 1132(a)(2) provides [them] a cause of action to seek relief for the entire Plan." *Id*. at 593.

Accordingly, "because each plaintiff here has alleged Article III standing, they may seek relief on behalf of the plan or other participants, even when relief sweeps beyond their own injury." *Cutrone v. Allstate Corp.,* 2021 WL 4439415, at *6 (N.D. Ill. Sept. 28, 2021) (citing *Peters*, 2 F.4th at 221; *Braden*, 588 F.3d at 593; *Fallick v. Nationwide Mut. Ins. Co*., 162 F.3d 410, 423 (6th Cir. 1998)).

## CONCLUSION

For the foregoing reasons, Northwestern's motion to dismiss Plaintiffs' Amended Complaint should be denied.

Dated: January 16, 2026

**NICHOLS KASTER, PLLP**

s/Brock J. Specht
Brock J. Specht (admitted *pro hac vice*)
Benjamin Bauer (admitted *pro hac vice*)
80 S. 8th Street, Suite 4700
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
bspecht@nka.com
bbauer@nka.com

**THE PRINZ LAW FIRM, P.C.**

Amit Bindra, (IL 6308593)
1 East Upper Wacker Drive, Suite 2500
Chicago, IL 60601
Telephone: (312) 212-4450
Facsimile: (312) 284-4822
abindra@prinz-lawfirm.com

**DON BIVENS, PLLC**

Don Bivens (*pro hac vice forthcoming*)
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661

**ATTORNEYS FOR PLAINTIFFS**

31

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2026, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: January 16, 2026

s/Brock J. Specht
Brock J. Specht

32