**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| NATALIE BARBICH, BRUCE LINDVALL, and TIMOTHY PETERSON, individually and as the representatives of a class of similarly situated persons, and on behalf of the NORTHWESTERN UNIVERSITY EMPLOYEE WELFARE PLAN, | Case No. 25-cv-6849 <br><br> Hon. Jeremy C. Daniel |
| Plaintiffs, | |
| v. | |
| NORTHWESTERN UNIVERSITY, | |
| Defendant. | |

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    I.   Plaintiffs Lack Article III Standing.................................................................... 2

        A.  Plaintiffs Do Not Allege an Injury-in-Fact. ............................................. 2

        B.  Plaintiffs' Alleged Injury is Not Redressable. .......................................... 5

    II.  Northwestern Acted as a Settlor with Regard to the Conduct at Issue. ........................ 6

        A.  Setting Employee Contribution Rates is a Settlor Function. ................................ 6

        B.  Fees and Expenses Are Distinct from Premiums and Cost-Share Obligations. ..... 8

        C.  Northwestern Did Not Act as a Fiduciary When Implementing the Plan's Design. .......................................................................................... 9

        D.  The Plan's Terms are Not Contrary to ERISA. .................................... 11

    III. Plaintiffs Fail to Allege Any Plausible Fiduciary Breaches. .................................... 12

        A.  Plaintiffs' Comparison of the Premier and Value PPO Is Flawed........................ 12

        B.  Plaintiffs Fail to Allege an ERISA Section 502(a)(2) Claim............................. 13

        C.  Plaintiffs Fail to Allege a Plausible Disclosure Claim (Count II). ...................... 14

CONCLUSION................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. Bd. of Trustees of Unite Here Health*,
No. 22-cv-1458, 2023 WL 2744556 (N.D. Ill. Mar. 31, 2023) .......................................... 4

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ......................................................................................... 13

*Boyd v. ConAgra Foods, Inc.*,
879 F.3d 314 (8th Cir. 2018) ........................................................................................ 14

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) .................................................................................... 13, 14

*Buescher v. N. Am. Lighting, Inc.*,
791 F. Supp. 3d 873 (C.D. Ill. 2025) ............................................................................ 10

*Coulter v. Morgan Stanley & Co. Inc.*,
753 F.3d 361 (2d Cir. 2014)......................................................................................... 11

*Cutrone v. Allstate Corp.*,
No. 20-cv-6463, 2021 WL 4439415 (N.D. Ill. Sept. 28, 2021).................................... 4, 14

*Daugherty v. Univ. of Chicago*,
No. 17-cv-3736, 2017 WL 4227942 (N.D. Ill. Sept. 22, 2017)......................................... 5

*E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*,
No. 25-cv-255, 2025 WL 2371537 (S.D.N.Y. Aug. 14, 2025)........................................... 4

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)...................................................................................................... 12

*Franklin v. Duke Univ.*,
721 F. Supp. 3d 386 (M.D.N.C. 2024) ............................................................................ 4

*Glanton ex rel. ALCO Prescription Drug Plan v. AdvancePCS Inc.*,
465 F.3d 1123 (9th Cir. 2006) ......................................................................................... 6

*Howell v. Motorola, Inc.*,
633 F.3d 552 (7th Cir. 2011) ......................................................................................... 15

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022)....................................................................................................... 13

*Hughes v. Nw. Univ.*,
63 F.4th 615 (7th Cir. 2023) ........................................................................................... 6

ii

*Kenseth v. Dean Health Plan, Inc.*,
　610 F.3d 452 (7th Cir. 2010) ..................................................................................... 15

*Knudsen v. MetLife Group, Inc.*,
　117 F.4th 570 (3d Cir. 2024) ....................................................................................... 3

*Lacy v. Progressive Direct Ins. Co*,
　No. 15-cv-50110, 2016 WL 25717 (N.D. Ill. Jan. 4, 2016)................................................ 1

*Lewandowski v. Johnson & Johnson*,
　No. 24-cv-671, 2025 WL 288230 (D.N.J. Jan. 24, 2025)................................................ 3, 4

*Lewandowski v. Johnson & Johnson*,
　No. 24-cv-671, 2025 WL 3296009 (D.N.J. Nov. 26, 2025) ........................................... 3, 5

*Loomis v. Exelon Corp.*,
　658 F.3d 667 (7th Cir. 2011) ....................................................................................... 6

*Loren v. Blue Cross & Blue Shield of Mich.*,
　505 F.3d 598 (6th Cir. 2017) ....................................................................................... 5

*Navarro v. Wells Fargo & Co.*,
　No. 24-cv-3043, 2025 WL 897717 (D. Minn. Mar. 24, 2025) .................................. 3, 4, 5

*Peters v. Aetna Inc.*,
　2 F.4th 199 (4th Cir. 2021) .......................................................................................... 5

*Pharm. Care Mgmt. Ass'n v. Mulready*,
　78 F.4th 1183 (10th Cir. 2023) ..................................................................................... 7

*Spokeo, Inc. v. Robins*,
　578 U.S. 330 (2016)..................................................................................................... 5

*Su v. BCBSM, Inc.*,
　No. 24-cv-99, 2024 WL 3904715 (D. Minn. Aug. 22, 2024)............................................ 4

*Thole v. U.S. Bank, N.A.*,
　590 U.S. 538 (2020)............................................................................................. passim

*TransUnion LLC v. Ramirez*,
　594 U.S. 413 (2021)..................................................................................................... 4

*United Paperworkers Int'l Union, AFL-CIO, CLC v. Jefferson Smurfit Corp.*,
　771 F. Supp. 992 (E.D. Mo. 1991)................................................................................. 7

*Urlaub v. CITGO Petroleum Corp.*,
　750 F. Supp. 3d 863 (N.D. Ill. 2024) ........................................................................... 11

*Waller v. Blue Cross of Calif.*,
    32 F.3d 1337 (9th Cir. 1994) ....................................................................................... 9

*Winsor v. Sequoia Benefits & Ins. Servs. LLC*,
    62 F.4th 517 (9th Cir. 2023) ............................................................................... 5, 6, 11

*Wright v. Oregon Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) ................................................................................... 12

iv

**INTRODUCTION**

Plaintiffs' Opposition (Dkt. 53) ("Opp.")[1] does not dispute the issues of fact and law[2] which establish they lack Article III standing:

- The Plan is a defined benefit plan, *i.e.*, it is a contract for the purchase of a defined set of benefits;

- Plaintiffs were charged the premium and cost-share amounts identified in the Plan documents[3] for the coverage option they selected, the Premier PPO;

- Plaintiffs received all of the benefits they were owed under the Plan's terms;

- Northwestern did not breach any Plan terms and did not mismanage any Plan assets;

- The Plan does not guarantee that coverage will be made available at a specific price— Northwestern is free to increase (or decrease) employee contribution rates.

Plaintiffs' alleged economic "injury" is foreclosed by the Supreme Court's decision in *Thole v. U.S. Bank, N.A.*, 590 U.S. 538 (2020) and recent authorities applying that decision to self-funded health plans. Put simply, these cases hold that plaintiffs are not injured when they receive what they paid for at the prices quoted to them. And, these cases hold that a plaintiff's alleged injury due to paying higher costs for coverage is not redressable where, as here, an employer has complete authority to determine the amount it contributes to a plan and the amount it charges to employees for coverage.

---

[1] Capitalized and abbreviated terms used herein are defined in Defendants' Memorandum of Law in Support of Motion to Dismiss Amended Complaint (Dkt. 48-1) ("Mot.").

[2] A litigant concedes an "argument[] by failing to respond to" it. *Lacy v. Progressive Direct Ins. Co*, No. 15-cv-50110, 2016 WL 25717, at *2 (N.D. Ill. Jan. 4, 2016).

[3] Plaintiffs complain that Defendants filed excerpts of the Plan documents. *See* Opp. at 16 n.13. Plaintiffs do not dispute the authenticity of any these documents, nor do Plaintiffs dispute that these documents are referred to in Plaintiffs' Amended Complaint and central to their claims. *See* Mot. at 3 n.2. Plaintiffs also do not claim that the portions of these documents that were not included in the exhibits are relevant to the parties' arguments. However, to address Plaintiffs' complaint, Northwestern is attaching complete copies of these exhibits. *See* Exs. 1-6. These documents should be considered part of the Amended Complaint. *See* Mot. at 3 n.2.

Northwestern acts as a settlor when it makes plan funding decisions and thus its pricing of the coverage options is not governed by ERISA. Plaintiffs cite no authority holding that an employer acts as a fiduciary when setting the cost charged to employees for health coverage. Plaintiffs claim that Northwestern had fiduciary duties to monitor Plan costs and implement Plan terms consistent with ERISA. But Plaintiffs conflate the cost to purchase benefits with fees and expenses paid by the Plan to service providers. And, while fiduciaries are required to implement Plan terms consistent with ERISA, Plaintiffs identify no Plan term that is contrary to the statute.

Further, Plaintiffs do not allege a fiduciary breach. Plaintiffs' cost comparison between the Premier and Value PPO options is overly simplistic and assigns no weight to differences in participant financial preferences and claims experience. And, Plaintiffs admit that they do not seek relief on behalf of the Plan and thus do not allege an ERISA section 502(a)(2) claim. Plaintiffs' disclosure claim also fails. Plaintiffs admit that Northwestern complied with ERISA's requirements to disclose the Plan's cost-sharing terms and that they did not rely on any misstatement (or omission) by Northwestern regarding the cost of the Premier PPO.

For these reasons, and the reasons set forth below, the Court should grant Northwestern's Motion and dismiss the Amended Complaint in its entirety and with prejudice.

## ARGUMENT

I. **Plaintiffs Lack Article III Standing.**

A. **Plaintiffs Do Not Allege an Injury-in-Fact.**

Plaintiffs claim that they have alleged an "economic harm through paying more than was reasonable or necessary for the medical services provided." Opp. at 25. But Plaintiffs do not dispute that the Plan is a defined benefit plan, *i.e.*, it is a "contract" for the purchase of a specified suite of coverages. *Thole*, 690 U.S. at 544. Plaintiffs also do not dispute that they received all of

2

the benefits to which they were entitled under the Plan's terms at the prices quoted in the Plan documents. *See* Mot. at 10-12. And, Plaintiffs do not claim that there is a risk they will not receive their future benefits. *See id. Thole* thus forecloses Plaintiffs' theory of injury.

None of the cases cited by Plaintiffs are to the contrary. As explained in the Motion, *Knudsen v. MetLife Group, Inc.*, 117 F.4th 570, 579 (3d Cir. 2024) and *Navarro v. Wells Fargo & Co.*, No. 24-cv-3043, 2025 WL 897717 (D. Minn. Mar. 24, 2025) held that a participant in a self-funded health plan theoretically could establish standing, even where she received all of the benefits owed under a plan's terms, ***if*** she alleged an injury arising out of a breach of plan terms or mismanagement of plan assets. *See* Mot. at 13-14. Plaintiffs do not even attempt to fit their standing theory into this narrow exception to *Thole*—Plaintiffs admit that Northwestern did ***not*** breach any Plan terms or mismanage Plan assets.[4] *See generally* Opp.

Further, *Lewandowski v. Johnson & Johnson ("Lewandowski I")*, No. 24-cv-671, 2025 WL 288230, at *4 (D.N.J. Jan. 24, 2025) ***rejected*** the plaintiff's allegations that paying higher premiums, deductibles, coinsurance, and copays due to mismanagement of the plan's prescription drug benefit resulted in an injury-in-fact. The court held that the plaintiff's second theory of injury—that she overpaid at the pharmacy for prescription drugs—alleged an injury-in-fact, but it abandoned that line of reasoning when considering a motion to dismiss the amended complaint. *See Lewandowski v. Johnson & Johnson ("Lewandowski II")*, No. 24-cv-671, 2025 WL 3296009, at *4 (D.N.J. Nov. 26, 2025) (finding "*Navarro* persuasive" and holding that ***all*** of the plaintiffs' financial injury claims were speculative, lacking in causation and not redressable). In any event,

---

[4] Plaintiffs do not dispute that, pursuant to the Plan's terms, they have no vested interest in their contributions. *See* Mot. at 14. Plaintiffs also do not dispute that Northwestern used their contributions to pay Plan benefits in accordance with the Plan's terms. *See id.*

3

*Lewandowski I*'s holding regarding higher prices for prescription drugs at the pharmacy is irrelevant because Plaintiffs do *not* allege that they paid more for coverage due to Northwestern's failure to prudently manage any Plan service provider. *See infra* at 9.[5]

Plaintiffs' argument that they have standing to pursue claims under ERISA section 502(a)(3) even absent a financial injury, Opp. at 26, fails. Plaintiffs must establish *each* element of Article III standing for their ERISA section 502(a)(2) and (a)(3) claims. *See Cutrone v. Allstate Corp.*, No. 20-cv-6463, 2021 WL 4439415, at \*6 (N.D. Ill. Sept. 28, 2021) ("ERISA's 'cause of action does not affect the Article III standing analysis[.]'" (quoting *Thole*, 590 U.S. at 544)); *see also Navarro*, 2025 WL 897717, at \*6 ("Whether claims are brought under Section 1132(a)(2) or (a)(3), 'there is no ERISA exception to Article III.'" (quoting *Thole*, 590 U.S. at 547)).

As a result, Plaintiffs must allege *some* "concrete harm" to have standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) ("[P]laintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing."). That is true even if Plaintiffs allege an ERISA violation. *See Thole*, 590 U.S. at 545 ("The Court has emphasized that 'Article III standing requires a concrete injury even in the context of a statutory violation.'" (quoting

---

[5] None of the other cases cited by Plaintiff (Opp. at 3 n.3, 28) are relevant because they do not involve allegations by participants in self-funded health plans that they paid too much for coverage. *See E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, No. 25-cv-255, 2025 WL 2371537, at \*7-8 (S.D.N.Y. Aug. 14, 2025) (insurer and administrator of self-funded plans alleged an injury-in-fact resulting from fraudulent provider billing practices); *Su v. BCBSM, Inc.*, No. 24-cv-99, 2024 WL 3904715 (D. Minn. Aug. 22, 2024) (self-funded health plans had an injury-in-fact where service provider charged them for tax liabilities that they did not owe and did not agree to pay); *Franklin v. Duke Univ.*, 721 F. Supp. 3d 386 (M.D.N.C. 2024) (pension plan participant alleged an injury-in-fact where she claimed to have received reduced benefits due to actuarial equivalency formulas); *Acosta v. Bd. of Trustees of Unite Here Health*, No. 22-cv-1458, 2023 WL 2744556, at \*1-2 (N.D. Ill. Mar. 31, 2023) (multiemployer employee welfare benefit plan participants with fully insured benefits alleged an injury-in-fact where they claimed their contribution rates—which were set by collective bargaining agreements—were too high).

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016))).[6] Because Plaintiffs fail to allege an injury-in-fact (financial or otherwise), they lack standing.

### B. Plaintiffs' Alleged Injury is Not Redressable.

Plaintiffs do not respond to Northwestern's redressability argument. *See* Mot. at 26 n.14. The Plan does not guarantee that participants will be charged any specific amount for health insurance coverage and makes clear that Northwestern, in its capacity as settlor, is free to increase (or decrease) employee contributions at any time. *See* Mot. at 13. As a result, "there is no guarantee" that Plaintiffs' theory of relief would "result in lower contribution or out-of-pocket costs." *Navarro*, 2025 WL 897717, at *10; *see also Lewandowski*, 2025 WL 3296009, at *6.

Plaintiffs also do not dispute that if they are awarded the relief requested—the return of allegedly excess premiums and cost-sharing amounts—the money awarded would go back to the Plan, and not Plaintiffs. *See* Mot. at 26 n.14. This exact issue was addressed by the Ninth Circuit in *Winsor*, where the plaintiffs alleged they had an out-of-pocket injury due to excessive premiums for health insurance coverage. 62 F.4th at 526-27. As the court held, even if the allegedly excess premiums were deposited into the plan, there was "nothing in the plan documents or in law" that would require (or "make it probable" that) the employer to return the funds to participants. *Id.* at

---

[6] Courts analyzing *Peters v. Aetna Inc.*, 2 F.4th 199 (4th Cir. 2021) and *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598 (6th Cir. 2017) have recognized that a plaintiff must allege some injury to assert an ERISA section 502(a)(3) claim in light of *Thole* and *Spokeo*. *See, e.g., Winsor v. Sequoia Benefits & Ins. Servs. LLC*, 62 F.4th 517, 528-29 (9th Cir. 2023) (rejecting *Peters'* holding and observing that "*Peters* did not address *Thole*"); *Camire v. Alcoa USA Corp.*, No. 24-cv-1062, 2025 WL 947526, at *5 (D.D.C. Mar. 28, 2025) ("While it may be true that financial injury is not specifically required to create standing for disgorgement, injunctive, and declaratory relief in ERISA cases, *see Peters*, 2 F.4th at 219-21, that does not mean that Plaintiffs automatically have standing where they have alleged no actual injury at all."); *Daugherty v. Univ. of Chicago*, No. 17-cv-3736, 2017 WL 4227942, at *6 (N.D. Ill. Sept. 22, 2017) (observing that *Loren* is "not binding authority, predate[s] *Spokeo*, [and has] since been clarified to require a showing of individualized harm").

527. To the contrary, the employer, in its capacity as settlor, would be free to reduce its contributions to the plan until such funds were exhausted. *Id.* at 526-27 (citing *Glanton ex rel. ALCO Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006)). The same rationale dictates that Plaintiffs' claim of economic injury is not redressable.

## II.     Northwestern Acted as a Settlor with Regard to the Conduct at Issue.

Plaintiffs admit that "ERISA distinguishes between fiduciary functions and settlor functions," Opp. at 15, and that employers, like Northwestern, typically wear both "hats"—*i.e.*, they serve as both plan settlors and plan fiduciaries, *see id.* at 15-16. Plaintiffs do not identify any fiduciary act by Northwestern that violated ERISA. To the contrary, Northwestern determined the amount it contributed towards funding the Plan and the amount it charged to employees to purchase coverage in its capacity as the Plan's settlor.[7]

### A. Setting Employee Contribution Rates is a Settlor Function.

Plan funding decisions are settlor decisions. *See Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011) ("When deciding how much to contribute to a plan, employers act in their own interests."), *abrogated on other grounds by Hughes v. Nw. Univ.*, 63 F.4th 615 (7th Cir. 2023); *see also* Brief for the U.S. Secretary of Labor as Amicus Curiae Supporting Defendant-Appellee at 13, *Hutchins v. HP Inc.,* No. 25-826 (9th Cir. July 9, 2025), Dkt. 24-1 ("Caselaw is clear that plan funding decisions are settlor decisions, not fiduciary ones.") (Ex. 8 hereto).[8] Plaintiffs cite ***no***

---

[7] Plaintiffs claim that the Court should wait until summary judgment to determine fiduciary status, Opp. at 20, but they do not identify any question of fact as whether Northwestern was acting as a settlor or fiduciary when setting the amount charged to employees for the Premier PPO, *see generally* Opp.

[8] Plaintiffs' claim that pension plan funding decisions are not analogous to health plan funding decisions because "[p]ension plan contributions are not exchanged for services," Opp. at 19 n.18, is flawed. Plaintiffs ignore that pension plans, like health plans, hire service providers to assist

authority holding that an employer acts as a fiduciary when determining the amount it charges to employees for coverage, *i.e.*, to fund Plan costs.

Plaintiffs' attempt to distinguish the authority holding that an employer acts as a settlor when setting employee contribution rates for health coverage, Opp. at 17 n.17, 19-21, falls flat. Plaintiffs do not dispute that in *Larson v. United Healthcare Insurance Co.*, 723 F.3d 905, 917 (7th Cir. 2013), the Seventh Circuit held that a plan's copayment requirements are part of the content of the plan and thus are settlor decisions. Plaintiffs fail to acknowledge that in *Argay v. National Grid Service Co.*, 503 F. App'x 40, 43 (2d Cir. 2012), the Second Circuit rejected fiduciary breach claims predicated on "inflated and excessive premiums,"[9] holding that the employer "did not act in a fiduciary capacity in setting premiums." Further, Plaintiffs ignore the portion of *United Paperworkers International Union, AFL-CIO, CLC v. Jefferson Smurfit Corp.*, 771 F. Supp. 992 (E.D. Mo. 1991), *aff'd*, 961 F.2d 1384 (8th Cir. 1992), which held that an employer acted as a settlor when increasing premiums for health coverage where no plan term afforded participants guaranteed premium rates and the plan reserved the employer's right to amend, modify, or terminate the plan. Plaintiffs also do not dispute that the Tenth Circuit has held that a health plan's design includes its "cost-sharing terms." *Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1201 (10th Cir. 2023). And, most tellingly, Plaintiffs do not even

---

with plan administration and that the reasonable fees for such services may be paid by the plan. *See, e.g.*, Employee Benefits Security Administration, *Guidance on Settlor v. Plan Expenses*, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/advisory-opinions/settlor-expense-guidance/. Employee contributions to a pension plan are thus "exchanged for services," in addition to a fixed monetary benefit.

[9] Reply Brief for Plaintiffs-Appellants, *Argay v. Nat'l Grid USA Serv. Co., Inc.*, 503 F. App'x 40 (2d Cir. 2012), No. 11-3698-cv, 2012 WL 1799141, at *5, *16.

acknowledge that the United States Department of Labor has expressly opined setting contributions rates and copayments for a health plan is a settlor function. *See* Mot. at 19.[10]

## B. Fees and Expenses Are Distinct from Premiums and Cost-Share Obligations.

Plaintiffs' claim that Northwestern breached its fiduciary duty to prudently monitor the Plan's fees and expenses is a red herring. An employer acts as a fiduciary when selecting and monitoring plan service providers because the employer is exercising discretionary authority and control over the plan's administration. *See* Dep't of Labor, *Understanding Your Fiduciary Responsibilities Under a Group Health Plan* 5 (Sept. 2023).[11] Service provider fees and expenses, however, are separate and distinct from the costs at issue here—employee contributions and cost-share obligations for purchasing Premier PPO coverage.

Plaintiffs cite no authority holding that a fiduciary's duty to monitor the fees and expenses charged by service providers has any applicability to a settlor's plan funding decisions. Plaintiffs rely on a DOL publication which states that a plan "fiduciary must ensure fees and expenses are reasonable, necessary for the plan's operation, and not excessive for the services provided." *Id.* But that portion of the publication specifically addresses the fees charged by service providers for their services. *See id.* ("Fees are just one of several factors fiduciaries need to consider when deciding on service providers . . . . While the law does not specify a permissible level of fees, it does require that fees charged to a plan be 'reasonable.'"). The DOL publication does ***not*** address

---

[10] Plaintiffs claim that Northwestern "exaggerate[es]" the differences between defined contribution plans and defined benefit health plans. Opp. at 13 n. 11. But Plaintiffs do not dispute that the purchase price for health insurance coverage is part of the plan's design—it is part of the content of the defined benefit itself. *See* Mot. at 21. By contrast, a participant's benefit in a defined contribution plan is the value of money in their individual account, which is directly impacted by the fees, expenses and performance of each investment option. *See id.* at 20-21.

[11] https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/group-health-plan-fiduciary-responsibilities.pdf.

the price for plan coverage that is charged to participants.  Indeed, the publication confirms that an employer "act[s] on behalf of its business, and not the plan" when "[d]etermining the [plan's] benefits package"—the benefits made available under the plan and their purchase price.  *Id.* at 2.

Plaintiffs imply that the Plan's recent change in third-party administrator (TPA) gives rise to an inference that Northwestern failed to prudently manage the Plan, *see* Opp. at 9, but Plaintiffs do not allege that the prior TPA (or any other service provider) charged an excessive fee for its services, *see* Mot. at 22.  Indeed, Plaintiffs make no attempt to tie the fees and expenses charged by any Plan service provider to the costs they paid for the Premier PPO.  *See id.* at 21-23.[12]

### C.  Northwestern Did Not Act as a Fiduciary When Implementing the Plan's Design.

Plaintiffs further claim that Northwestern acted as fiduciary in "implementing" the Plan's design because the Plan afforded it discretion to set employee contributions.  Opp. at 17.  Specifically, Plaintiffs claim that the Plan did not require Northwestern to offer a supposedly "dominated" coverage option and that Northwestern exercised fiduciary discretion when selecting the Plan coverage options.  *Id.* at 15, 18.  This theory is contrary to the Plan's terms, which make clear that Northwestern selected the Plan coverage options in its capacity as the Plan's settlor.

The implementation of a plan design decision is a fiduciary act ***only*** where the employer exercises discretion when carrying out the settlor's plan design decision.[13]  Plaintiffs identify no

---

[12] Contrary to Plaintiffs' representation, Opp. at 3-4, Northwestern did not admit it made plan design decisions in a fiduciary capacity, *i.e.*, in its role as Plan Administrator.  In the press release quoted in Paragraph 10 of the Amended Complaint, Northwestern stated only that it has an obligation to monitor plan service providers to ensure they are charging reasonable fees and correctly administering claims.  *See* Lorraine Goffe, Follow-up to Benefits Update, Nw. Univ., https://www.northwestern.edu/leadership-notes/2025/follow-up-to-benefits-update.html    (last visited Feb. 6, 2026).

[13] *See, e.g.*, *Waller v. Blue Cross of Calif.*, 32 F.3d 1337, 1342 (9th Cir. 1994) (holding that an employer's decision to terminate a retirement plan is a settlor decision that is not subject to ERISA,

9

Plan term that afforded Northwestern, in its role as Plan Administrator, discretion to select the plan coverage options or set employee contributions. The Plan provides that:

- The Employer[14] will make contributions "in such amounts and at such times as the Plan Administrator determines are appropriate to fund the Plan and Participating Programs." Ex. 5 § 6.1.

- Employees are required to make "contributions in such amounts and at such times specified by the Plan Administrator in accordance with the terms of the Participating Program." *Id*. § 6.2.

- The Participating Programs include the Premier, Select, and Value PPO options. *Id*., Ex. B.[15]

Section 6.1 recognizes that the Plan Administrator calculates the Plan's funding needs due to its fiduciary obligation to pay benefits. As a result, it vests the Plan Administrator with the authority to inform the Employer (1) when its payments to the Plan are due and (2) the amount of funds to be included in each payment. The Plan Administrator, however, does not determine the *total* amount that the Employer contributes to fund each Participating Program (*i.e.*, coverage option). Nor could it as a matter of law, as the Department of Labor recently recognized. *See* Ex. 8 at 18 ("[S]etting the amount the sponsor contributes to the Plan, as well as the level of benefits

---

but the employer's implementation of that decision through its selection of annuity provider is a fiduciary act); *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 889 (C.D. Ill. 2025) (holding that an employer acted as a settlor when adopting a plan term that allowed for the use forfeitures to pay administrative expenses *or* reduce employer contributions, but the determination of whether forfeitures would be allocated toward plan expenses or reducing employer contributions was made in a fiduciary capacity because it required the exercise of discretion).

[14] "Employer" is defined to mean the "University and any division, subsidiary, or affiliate of [Northwestern] that adopts the Plan . . . ." Ex. 5 § 2.7; *see also* Ex. 6 § 2.10.

[15] The 2023 Welfare Benefit Plan includes the same terms and clarifies that Northwestern has the authority to establish a funding policy. *See* Ex. 6 §§ 2.7, 6.1, 6.2.

provided, are settlor functions solely within the sponsor's control, ***and cannot be dictated by a fiduciary's decision***." (emphasis added)).[16]

Section 6.2 vests the Plan Administrator with the authority to "specify," *i.e.*, identify, the amount and timing of employee contributions "in accordance with the terms of the Participating Program," *i.e.*, in accordance with the terms of each coverage option identified in Exhibit B. Exhibit B makes clear that Northwestern, as settlor, selected the coverage options offered and set the terms of the same, including employee contribution rates.[17]

Courts have repeatedly held that decisions regarding the timing and amount of contributions, such as those described in Sections 6.1 and 6.2, are ministerial (*i.e.*, do not involve discretion) and thus are non-fiduciary. *See Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014) ("[N]on-fiduciary duties generally include 'decisions relating to the timing and amount of contributions.'" (quoting Lee T. Polk, ERISA Practices and Litigation § 3:32 (2013))).

### D. The Plan's Terms are Not Contrary to ERISA.

Plaintiffs also claim that Northwestern had a "duty to monitor the Plan to ensure its terms were consistent with ERISA." Opp. at 4. Plaintiffs, however, do not identify any Plan term that is contrary to ERISA. *See generally id.* And even if Plaintiffs had done so, that alone would not establish a fiduciary breach—Plaintiffs would still need to allege plausibly that Northwestern acted imprudently. *See Urlaub v. CITGO Petroleum Corp.*, 750 F. Supp. 3d 863, 876 (N.D. Ill. 2024).

---

[16] *Winsor*, 62 F.4th at 525, held that the employer (RingCentral) had discretion, ***in its role as settlor***, to determine the percentage of plan costs that it charged to employees. *Cf.* Opp. at 16.

[17] Plaintiffs' implication that the Plan document does not "mention the Plan's PPO options," Opp. at 16, is wrong. The coverage options are identified in Exhibit B. Plaintiffs' argument that the Plan's Benefits Guide and Summary Plan Descriptions are not part of the Plan, *id.* at 18, is also wrong. The Plan document states that the Plan includes the Benefits Booklets and Summary Plan Descriptions. *See* Ex. 5 at 3 ("The Plan hereby incorporates the . . . benefits booklets or summary plan descriptions of the Participating Program, as amended from time to time for reference."); *see also* Ex. 6 at 3 & § 2.17.

But Plaintiffs cite no authority holding that a fiduciary acts imprudently by collecting employee contribution amounts that are set by the plan's settlor consistent with a plan's terms. *Cf. Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014) (holding that the duty of prudence trumps the instructions of a plan document).

At bottom, Plaintiffs are arguing that they are entitled to health insurance coverage at a specific cost, but the Plan makes no such promise. *See* Mot. at 13. As a result, Plaintiffs cannot assert a fiduciary breach claim arising from Northwestern's settlor decision to set the price of the Premier PPO. *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) ("ERISA does no more than protect the benefits which are due to an employee under a plan.").

### III. Plaintiffs Fail to Allege Any Plausible Fiduciary Breaches.

#### A. Plaintiffs' Comparison of the Premier and Value PPO Is Flawed.

Contrary to Plaintiffs' assertion, the Value PPO is not a "materially identical, cheaper option" than the Premier PPO. Opp. at 2. Plaintiffs do not dispute that there are significant differences regarding how and when participants' cost-share obligations are structured under Premier and Value PPO options. Nor do Plaintiffs dispute that there are significant differences in the rules governing FSAs (which are available to Premier PPO participants) and HSAs (which are available to Value PPO participants).[18]

Further, Plaintiffs' cost comparison is overly simplistic because the value afforded by each coverage option differs. Plaintiffs admit that participants only pay a copay for certain services and

---

[18] Plaintiffs allege Northwestern's contributions to Value PPO participants' HSA accounts "worsen" the gap in the aggregate cost of the Premier and Value PPO options. Opp. at 7. However, Northwestern's decision to contribute to participants' HSA accounts is an employer decision that is not subject to ERISA. *See* Dep't of Labor, Emp. Benefits Sec. Admin., Field Assistance Bulletin No. 2006-02, https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/field-assistance-bulletins/2006-02. Therefore, these contributions cannot form the basis for a breach of ERISA fiduciary duty claim.

prescription drugs under the Premier PPO and that participants in the Value PPO must meet the deductible before the Plan begins to provide any coverage for these services. *See* Mot. at 6. And, Plaintiffs admit their cost-comparison chart does not reflect this difference in the pricing of the coverage options. *See* Opp. at 7 n.8. Nor do Plaintiffs dispute that Premier PPO participants have access to a prescription drug savings program (***where participants receive medications for $0***) and that a stop loss limit caps the amount of their out-of-pocket spend on prescription drugs. *See* Mot. at 6; Ex. 2 at 8-9. Neither of those benefits is available to Value PPO participants. These differences demonstrate that the Premier and Value PPO coverage options are not "apple-to-apple" comparators. *Albert v. Oshkosh Corp.*, 47 F.4th 570, 581-82 (7th Cir. 2022).

Because Plaintiffs have not alleged plausibly that Northwestern's decision to offer the Premier PPO was outside the "the range of reasonable judgments a fiduciary may make based on her experience and expertise," *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022), their fiduciary breach claim fails.

### B. Plaintiffs Fail to Allege an ERISA Section 502(a)(2) Claim.

Plaintiffs claim that they may seek relief on behalf of the Plan under ERISA section 502(a)(2) because they have sufficiently alleged Article III standing. *See* Opp. at 30. But even if Plaintiffs had established Article III standing, Plaintiffs' ERISA section 502(a)(2) claim would still fail because they have not stated a ***claim for relief***. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) ("It is crucial, however, not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive.").

13

Courts have consistently held that allegations of losses to a putative class of plan participants, and not the plan itself, do not state a section 502(a)(2) claim.[19] *See* Mot. at 25-26 (collecting cases). Plaintiffs admit they are seeking relief ***only*** on behalf of the class of participants who enrolled in the PPO Premier. *See* Am. Compl. ¶¶ 1, 60, 72. Because Plaintiffs are not seeking relief on behalf of the Plan as a whole, their section 502(a)(2) claims should be dismissed.

## C. Plaintiffs Fail to Allege a Plausible Disclosure Claim (Count II).

Plaintiffs' Opposition confirms that they cannot state a disclosure claim. Plaintiffs admit that they do not plead detrimental reliance on any statement (or omission) by Northwestern regarding the Premier PPO's pricing. Plaintiffs' disclosure claim should be dismissed on this basis alone. *See Boyd v. ConAgra Foods, Inc.*, 879 F.3d 314, 322 (8th Cir. 2018).

Plaintiffs also admit that Northwestern disclosed the costs of each coverage option in compliance with ERISA's requirements. *See* Opp. at 18 (Northwestern "inform[ed] participants of the costs associated with each [coverage] option"). Indeed, Plaintiffs do not dispute that Northwestern complied with the federal regulation implementing ERISA's summary plan description requirement by disclosing the Plan's cost-sharing provisions. *See* Mot. at 29. Plaintiffs' claim that the "material fact is not the cost itself, but the fact that the same service is available for less," Opp. at 23, is refuted by the many courts that have rejected disclosure claims related to the pricing of healthcare coverage options where, as here, participant contribution and cost-share amounts are disclosed. *See* Mot. at 29-30 (collecting cases). It also is contrary to *Oshkosh*. *See* 47 F.4th at 586. Plaintiffs make no attempt to distinguish this authority.

---

[19] Plaintiffs' authority, Opp. at 30, supports this proposition. *See, e.g.*, *Braden*, 588 F.3d at 593 (holding that section 502(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries"); *Cutrone*, 2021 WL 4439415, at *4 ("ERISA [Section 502(a)(2)] authorizes suits to recover plan losses from fiduciary breaches.").

14

Plaintiffs dispute that intent is required to state a disclosure claim. *See* Opp. at 24-25. But the authority Plaintiffs cite, *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 470-71 (7th Cir. 2010), expressly held that "***negligent misrepresentations are not themselves actionable***." Moreover, after *Kenseth* was decided, the Seventh Circuit confirmed that unlike other courts, it "has required some deliberate misstatement before it finds a violation of the ERISA duty to disclose material information." *Howell v. Motorola, Inc.*, 633 F.3d 552, 571 (7th Cir. 2011).[20] The Amended Complaint does not meet this pleading threshold. *See* Mot. at 28-29.

Plaintiffs also claim that Northwestern either "actively misled" or at least confused participants by stating that if they "choose a plan with lower monthly Premiums," they "will likely pay more in out-of-pocket costs – through Copayments, Coinsurance, Deductibles, and the like." Opp. at 8, 23-24. But this statement by Northwestern is, in fact, accurate. Indeed, even Plaintiffs admit that Premier PPO participants pay the highest monthly premiums and pay the lowest amount *at the time a participant incurs a claim*. *See* Mot. at 28.

In sum, because Northwestern provided complete and accurate information regarding the pricing of the Plan coverage options, Plaintiffs' disclosure claim should be dismissed.

### CONCLUSION

For all of the reasons stated above, Northwestern respectfully requests that the Court dismiss Plaintiffs' Amended Complaint in its entirety and with prejudice.

---

[20] Where an agent of a fiduciary makes a negligent misrepresentation, the "'failure to take reasonable steps to head off [negligent] misrepresentations can be actionable.'" *Howell,* 633 F.3d at 571-572 (quoting *Kenseth*, 610 F.3d at 470-71). Plaintiffs do not allege that Northwestern's communications regarding the Plan's pricing fit into this scenario.

15

Dated: February 6, 2026

Respectfully submitted,

/s/ Mark C. Nielsen
Mark C. Nielsen (N.D. Ill. No. 90785769)
Lars C. Golumbic (admitted *pro hac vice*)
Kara P. Wheatley (admitted *pro hac vice*)
Kathryn E. Panish (admitted *pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue NW, Suite 1200
Washington, DC 20006
Tel: (202) 861-5429
Fax: (202) 659-4503
mnielsen@groom.com
lgolumbic@groom.com
kwheatley@groom.com
kpanish@groom.com

Eugene A. Schoon
CROKE FAIRCHILD DUARTE & BERES
180 N. La Salle Street, Suite 3400
Chicago, IL 60601
Tel: (773) 517-2740
Email: eschoon@crokefairchild.com

*Counsel for Northwestern University*