# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| NATALIE BARBICH, *et al.*, <br>        Plaintiffs <br><br>     v. <br><br> NORTHWESTERN UNIVERSITY, *et al.*, <br>        Defendants | No. 25 CV 6849 <br><br> Judge Jeremy C. Daniel |

## ORDER

The defendants' motion to dismiss [48] is denied. The plaintiffs' motion for leave to file a sur-reply [55] is denied. The defendants shall answer the complaint on or before April 23, 2026.

## STATEMENT

This case is before the Court on the defendants' motion to dismiss the plaintiffs' amended complaint and the plaintiffs' motion for leave to file a sur-reply. (*See generally* R. 48; R. 55.)

### Background and Legal Standard

The following description of events underlying these claims is drawn from the complaint and presumed true for the purpose of resolving these motions. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Plaintiffs Natalie Barbich, Bruce Lindvall, and Timothy Peterson on behalf of themselves and others similarly situated, are current and former employees of Defendant Northwestern University ("Northwestern"). (R. 41 ¶ 1; R. 48 at 7.) The plaintiffs bring a putative class action suit on behalf of the Northwestern University Employee Welfare Plan (the "Plan"), alleging that Northwestern breached its fiduciary duties under the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. §§ 1001 *et seq.*; (R. 41 ¶ 1.) Specifically, they allege that Northwestern failed to (1) prudently select and monitor the Plan's preferred provider organization (PPO) insurance options, and (2) disclose this material information to participants, causing injury in the form of loss from overpayment under the Plan. (*Id.*) The overpayment arose from the Premier PPO option (high premium, low deductible) having a higher premium while not providing the commensurate benefits as compared to the Value PPO option (low premium, high deductible)—this is referred to as "domination" of the Premier PPO option. (*Id.* at ¶¶

31–32.) Northwestern moves to dismiss for lack of standing and for failure to state a claim. (*See generally* R. 48.) After the parties completed briefing, the plaintiffs moved for leave to file a sur-reply, (R. 55), to Northwestern's reply brief, (R. 54).

A motion to dismiss under Rule 12(b)(1) tests the Court's subject-matter jurisdiction. When faced with a 12(b)(1) motion, the plaintiff "bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014); *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). In the case of a facial challenge to standing, the Court must accept well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

A Rule 12(b)(6) motion tests whether the plaintiff has provided "enough factual information to state a claim to relief that is plausible on its face and has raised a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Dismissal is proper where "the allegations . . . , however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

## The Plaintiffs' Motion for Leave to File a Sur-Reply

The plaintiffs seek leave to file a sur-reply to Northwestern's reply brief. (R. 55.) They make two principal arguments. First, they argue that Northwestern initially raised the redressability element of its standing argument in the reply brief, (*id.*), while the opening brief, (R. 48), discussed injury-in-fact only. (R. 54 at 7–8.) And they argue that the redressability argument applied to a different statutory provision than that discussed in the opening brief. (*Id.*) Second, they argue that Northwestern filed and discussed new versions of the exhibits in its reply, which were different from those filed with the opening brief. (*Id.* at 3.)

Northwestern counters that it did, in fact, raise the redressability argument in its opening brief. (R. 58 at 2–5; R. 48 at 32 n.14.) It is correct that Northwestern did so; it is in a footnote that states:

> Moreover, Plaintiffs' ERISA 502(a)(2) claims are not redressable. To the extent the Court enters a judgment in Plaintiffs' favor, any amounts awarded would go back to the Plan. Northwestern would not be obligated to reduce participants' contribution amounts or otherwise distribute the funds to participants. *See Winsor*, 62 F.4th at 525-27;

2

> *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125-27 (9th Cir. 2006).

(R. 48 at 32 n.14.) The plaintiffs characterize this as an "undeveloped argument" that either entitles the plaintiffs to a sur-reply or is waived because it was only included in a footnote. (R. 55 at 2–3.) The Court agrees.

The Seventh Circuit has held that an argument raised in "a passing reference in a footnote" is waived. *United States v. White*, 879 F.2d 1509 (7th Cir. 1989); *see also Greer v. Advanced Equities, Inc.*, 683 F. Supp. 2d 761 (N.D. Ill. 2010). Northwestern discussed injury-in-fact at length in its opening brief and did, it appears, relegate their redressability argument to a footnote. This amounts to a waiver of the argument, so the argument cannot be developed further in Northwestern's reply.

The plaintiffs also object to Northwestern's later including the complete versions of the excerpted exhibits it submitted with its motion to dismiss. (R. 55 at 3; *see* R. 48-2–48-9; R. 55-2–55-8.) They further argue that they require a sur-reply to respond to Northwestern's citation to provisions of the complete documents that were not included with the motion to dismiss. (*Id.*) However, the plaintiffs themselves critiqued Northwestern for not using the complete versions in their response to the motion to dismiss. (R. 53 at 26 n.13.) And, aware that Northwestern had excerpted the documents, the plaintiff was free to include the complete versions to provide context or cite to them in their response.

The plaintiffs primarily take issue with Exhibit 8. But the newly cited portion of the complete version of Exhibit 8 appears identical in meaning to that cited in the excerpted version. In the motion to dismiss, Northwestern cites the document for the proposition that an employer acts as a "settlor" when setting contribution rates and copayment amounts on a health plan. (R. 48-1 at 19.) In its reply, it cites the document for the proposition that the sponsor's contribution and benefits provided are settlor functions. (R. 54 at 10–11.) The prejudice to the plaintiff from the new citation, therefore, is minimal.

The Court accordingly denies the plaintiffs' motion for leave to file a sur-reply.

## Northwestern's Motion to Dismiss

### Standing

The Court first addresses standing, which is a test of the Court's jurisdiction. *Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir. 1987). Northwestern argues that the plaintiffs lack Article III standing because they fail to sufficiently allege that they have suffered an injury-in-fact. (R. 48 at 15–20.) Specifically, they argue that the plaintiffs received their health insurance benefits, did not plead that they were

improperly denied any coverage, and did not allege that Northwestern breached any terms or mismanaged any assets. (*Id.* at 15.)

"There is standing if a plaintiff has a fairly traceable injury that the court could redress with a favorable decision." *Lukaszczyk v. Cook County*, 47 F.4th 587, 597 (7th Cir. 2022) (citing *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020)). An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized," and "(b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "Economic harms are among the 'most obvious' of concrete injuries." *LJM Partners, Ltd. v. Barclays Cap., Inc.*, 165 F.4th 552, 565 (7th Cir. 2026) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)).

Northwestern cites *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020), for the proposition that "participants in a pension plan lacked Article III standing to assert ERISA claims arising from the trustee's alleged mismanagement of the plan." (*Id.* at 16 (citing *Thole*, 590 U.S. at 541–42).) But Northwestern ignores that in *Thole*, the plaintiffs did not allege that they had sustained a financial injury. 590 U.S. at 540–541. Instead, those plaintiffs alleged simply that they were injured because their employers mismanaged the pension plan, violating their duties of loyalty and prudence. *Id.* at 541. The Supreme Court held that where the plaintiffs had not pled that they hadn't received their vested pension benefits or any other injury, they did not have standing. *Id.* at 541–42.

Here, the plaintiffs plead that they were injured "in the form of excessive healthcare expenses, including through payroll deductions and lost wages." (R. 41 ¶ 77.) The question is not whether the plaintiffs received the healthcare benefits they were promised. The question is instead whether, in receiving those benefits, they paid too much for them. Alleging that they paid more for the benefits than they should have is an injury sufficient to confer standing. "Injury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013).

**Northwestern as a Settlor**

Northwestern next argues that it acted as a settlor, not an ERISA fiduciary, with regard to the conduct at issue in the amended complaint, so it is not subject to ERISA liability. (R. 48-1 at 20–29.)

ERISA defines functions in terms of those performed by a "fiduciary" and those performed by a "settlor." A person is a fiduciary "with respect to a plan to the extent he (i) exercises any discretionary authority . . . respecting management of such plan . . . , (ii) he renders investment advice . . . , or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. §

1002(21)(A). A settlor is a person who, in laying out the basic terms and conditions of the plan, "select[s] levels of funding" and "decide[s] who receives pension benefits and in what amounts." *Bator v. Dist. Council 4*, 972 F.3d 924, 931 (7th Cir. 2020). When someone acts in a settlor function, it is not acting as a fiduciary. *Id.* (citing *Beck v. PACE Int'l Union*, 551 U.S. 96 (2007)).

Northwestern argues that it acted as a settlor because it (1) set the monthly contribution and cost-sharing amounts, and (2) selected the specific health insurance options to offer to participants. (R. 48-1 at 23–29.) The plaintiffs argue that the Plan Document does not identify the challenged plan as one that implicates settlor functions and instead "assigns the Plan administrator, not the Plan sponsor, discretion in determining" contribution amounts. (R. 53 at 25–27.) They also argue that a plan administrator who implements plan decisions acts as a fiduciary and not a settlor. (*Id.* at 27–28.)

The plaintiffs allege that Northwestern acted as a fiduciary because it not only chose to offer a group health plan but also implemented it by (1) selecting the specific options for employees to enroll in, and (2) exercising a duty to monitor the settlor decisions. (R. 41 ¶¶ 40–43.) This is sufficient to allege that Northwestern acted as a fiduciary and was subject to ERISA's duties of loyalty and prudence in selecting and monitoring of the health coverage plans.

Further, the Court agrees with the plaintiff that, given the fact-intensive inquiry required to make a definitive finding of settlor or fiduciary status, the actual finding of whether Northwestern is acting as a settlor or a fiduciary is a question better suited for resolution at summary judgment (or trial). These factual determinations are generally inappropriate at the motion to dismiss stage. *See Patten v. N. Tr. Co.*, 703 F. Supp. 2d 799, 808–09 (N.D. Ill. 2010) (citing *George v. Kraft Foods Global, Inc.,* 674 F. Supp. 2d 1031, 1049–50 (N.D. Ill. 2009); *Porterfield v. Orecchio,* No. 07 C 3654, 2008 WL 130921, at *3 (N.D. Ill. Jan. 9, 2008)). For now, it is sufficient that the plaintiffs have pled that Northwestern was acting as a fiduciary and was monitoring and selecting plan options.

**Northwestern's Alleged Fiduciary Breaches**

Finally, Northwestern argues that, even if the plaintiffs adequately plead that Northwestern is acting as a fiduciary, they do not plausibly allege fiduciary breaches. (R. 48 at 29–36.)

Count I

In Count I, the plaintiffs allege that Northwestern breached its duties of loyalty and prudence by offering the Premier PPO option, which is dominated and provides no financial or medical benefit when compared to the Select and Value PPO programs.

(*Id.* ¶¶ 68–73.) Northwestern argues that the plaintiffs (1) "incorrectly assume that there is no financial benefit to participants to pay a higher monthly premium in exchange for paying lower deductibles, copays, or coinsurance if and when a claim is insured," (R. 48 at 29), (2) misstate the comparison of financial terms between the coverage options, (*id.* at 30), and (3) fail to make an "apple to apple" comparison of each option's value, (*id.* at 30).

ERISA imposes a duty of prudence on fiduciaries to discharge duties "with [] care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1)(B). "To state a breach of the duty of prudence under ERISA, a plaintiff must plead '(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022) (citing *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016)). The Court has already found that the plaintiffs have adequately pled that Northwestern was a plan fiduciary and that they were harmed by the alleged breach in the form of excessive payroll deductions and lost wages.

Northwestern's first two arguments boil down to determinations regarding what plan participants may have preferred when choosing a plan and flaws in the plaintiffs' comparison of terms in the amended complaint. However, whether a certain plan participant would choose a given PPO option, or whether the plaintiffs' terms are, in fact, correct cannot be determined at this stage. These arguments implicate factual questions that are inappropriate for resolution at the motion to dismiss stage.

Northwestern's argument regarding comparison of the plans relies on the Seventh Circuit's decision in *Albert v. Oshkosh Corp. See* 47 F.4th at 581–82. The Seventh Circuit there affirmed the dismissal of a complaint that made "threadbare" allegations that the defendant "failed to consider materially similar and less expensive alternatives to the Plan's investment options." *Id.* at 582.

However, *Albert* concerned actively managed funds, which are not directly analogous to health benefits plans. *See generally id.* Maintaining an actively managed fund requires ongoing discretionary investment decisions to maximize performance; in a self-funded health benefit plan, an employer manages and assumes financial risk for medical claims. And a person in a self-funded health plan will choose which premium to pay, whereas, in an actively managed fund, they will input a given amount of money and seek the highest return.

Further, *Albert* held that the plaintiffs did not plausibly allege a claim where they were offered actively managed fund options that were different from one another. *Id.* at 581–82. Here, the plaintiffs allege that they are receiving a choice too, but that it is a Hobson's choice because no matter what the plaintiffs pick, they will receive the same value (albeit at different price points). Thus, the bases for comparison required

6

by the Seventh Circuit in *Albert* do not correspond to those that may be required for health benefits plans.

Northwestern also argues that the plaintiffs cannot sustain a claim under ERISA § 502(a)(2) because they do not bring their claims on behalf of the plan, but only bring it on behalf of plan participants. (R. 48 at 31–32.) But the plaintiffs allege that "Defendant's fiduciary breach resulted in significant losses to the Plan and its participants in the form of excessive healthcare expenses, including through payroll deductions and lost wages." (R. 48 ¶¶ 73, 77.) And the plaintiffs also seek to bring suit under § 502(a)(3), which allows a civil action "by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a)(3). Because the plaintiffs have pled a cause of action under either (or both) sections, this is, therefore, not an independent basis for dismissal.

Accordingly, Northwestern's motion to dismiss is denied as to Count I.

<u>Count II</u>

Northwestern next argues that the plaintiffs fail to state a claim as to Count II, which alleges a failure to provide material facts. (R. 48 at 32–36.) The plaintiffs allege that Northwestern failed to communicate material facts regarding the Premier PPO's domination by the Value PPO, where silence on those facts has harmed participants. (R. 41 ¶ 75.)

To plead a violation of the duty of disclosure, a plaintiff must allege "either an intentionally misleading statement, or a material omission where the fiduciary's silence can be construed as misleading . . . negligence would not be enough to show a violation of ERISA's disclosure duty." *Howell v. Motorola, Inc.*, 633 F.3d 552, 571 (7th Cir. 2011) (citing *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 642 (7th Cir. 2004)). And "the failure to take reasonable steps to head off such misrepresentations can be actionable." *Kenseth v. Dean Health Plan, Inc.,* 610 F.3d 452, 470–71 (7th Cir. 2010).

The plaintiffs allege not only that Northwestern omitted material information about the Premier PPO's dominated status, but also that a representative from Northwestern's benefits department, after speaking with their actuaries, determined that "it is unlikely that there is a scenario where one would be financially better off with the Premier PPO, given the employee contributions relative to the out of pocket maximum." (R. 41 ¶ 50.) This is sufficient to show more than mere negligence in omitting material information.

Northwestern's motion to dismiss is therefore denied as to Count II.

Date: 4/2/2026

JEREMY C. DANIEL
United States District Judge

8