**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| NATALIE BARBICH, BRUCE LINDVALL, and TIMOTHY PETERSON, individually and as the representatives of a class of similarly situated persons, and on behalf of the NORTHWESTERN UNIVERSITY EMPLOYEE WELFARE PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWESTERN UNIVERSITY, <br><br> Defendant. | Case No. 25-cv-6849 <br><br> Hon. Jeremy C. Daniel |

## <u>DEFENDANT'S ANSWER TO PLAINTIFFS' AMENDED COMPLAINT</u>

Defendant Northwestern University ("Northwestern"), by and through its undersigned counsel, respectfully submits its answer and affirmative defenses to the Amended Class Action Complaint (Dkt. No. 41, the "Amended Complaint" or "Am. Compl.") filed by Plaintiffs Natalie Barbich, Bruce Lindvall, and Timothy Peterson. Northwestern denies each and every allegation contained in the Amended Complaint, except as specifically admitted herein, and any factual averment admitted herein is admitted only as to the specific facts and not as to any conclusions, arguments, or characterizations which are contained in any averment or in the Amended Complaint as a whole. To the extent the Amended Complaint contains headings, footnotes, or other material that is inappropriate under Rule 8 and Rule 12(f) of the Federal Rules of Civil Procedure, no response to such material is required. If, however, a response is required, Northwestern denies all headings and footnotes in the Amended Complaint, unless specifically admitted herein.

Northwestern answers the specific allegations in the Amended Complaint as follows, and the foregoing statements are incorporated into each numbered paragraph of this Answer:

1

## NATURE OF THE ACTION

1. Plaintiffs Natalie Barbich, Bruce Lindvall, and Timothy Peterson ("Plaintiffs"), as representatives of the class defined herein, and on behalf of the Northwestern University Employee Welfare Plan (the "Plan"), bring this action under the Employee Retirement Income Security Act ("ERISA") against Northwestern University ("Defendant").[1] As described herein, Defendant has breached its fiduciary duties under ERISA by (1) failing to prudently select and monitor the Plan's preferred provider organization ("PPO") medical insurance options, offering a menu of PPO options each providing the same medical care but in which the low-deductible option is financially dominated by the high-deductible option; and (2) failing to disclose this material information to the Plan's participants. Defendant's actions and omissions have caused millions of dollars in losses to the proposed class. Plaintiffs bring this action to recover these losses, prevent further similar conduct, and obtain equitable and other relief as provided by ERISA.

**ANSWER:** Northwestern admits that Plaintiffs purport to bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. Northwestern denies that any of Plaintiffs' claims are valid or that Plaintiffs are entitled to any of the relief sought for their claims. Northwestern admits that the Northwestern University Employee Welfare Benefit Plan (the "Plan") offers multiple preferred provider organization ("PPO") medical insurance coverage options. Northwestern denies the remaining allegations in Paragraph 1.

With regard to the allegations in footnote 1, Northwestern admits that the Parties stipulated to the dismissal of Northwestern University Director, Benefits & Work/Life Resources and Does 1-20. Northwestern denies the remaining allegations in footnote 1.

---

[1] Plaintiffs have stipulated to the dismissal, without prejudice, of the claims against the Northwestern University Executive Director, Benefits & Work/Life Resources, and Does 1-20, and Defendant has stipulated that it will assume responsibility for the acts or omissions of any current or former employees who served as an administrator or fiduciary of the Plan. See ECF No. 36.

## PRELIMINARY STATEMENT

2. As of 2023, 53.7% of civilian Americans relied upon their employer or union for health insurance coverage.[2] This employment-based coverage is by far the most common type of health insurance coverage in the United States,[3] and along with retirement benefits, make up 13% of total national compensation.[4] Americans also devote a substantial percentage of their annual expenditures to healthcare. In 2023, healthcare accounted for 8% of all consumer expenditures.[5] As such, it is crucial that the health insurance options offered by employers do not needlessly waste participants' money.

**ANSWER:** Northwestern denies any allegation or inference that any of the Plan's health coverage options "waste[d] participants' money." Northwestern is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2, and therefore denies them.

3. To this end, employers must confirm that each health insurance option provides value and is not financially dominated by another. In economic terms, an option is dominated when it provides the same financial value to a consumer yet costs more than an alternative. A health insurance option is financially dominated when there is another option that results in lower total out-of-pocket expenses to participants, inclusive of premiums and regardless of the amount of medical care received.[6] In essence, the dominated option costs more for the same healthcare services but provides no additional benefit that could justify the increased cost.

**ANSWER:** Northwestern denies the allegations in Paragraph 3.

4. In managing the Plan, Defendant has assembled a menu of PPO options in which the low-deductible option is financially dominated by the higher-deductible options while providing the same health benefits from the same provider network, in breach of its fiduciary duty of prudence. In addition, Defendant is aware of the dominated nature of the low-deductible option

---

[2] https://www2.census.gov/library/publications/2024/demo/p60-284.pdf.

[3] *Id.*

[4] Monahan, Amy and Richman, Barak D., Hiding in Plain Sight: ERISA's Cure for the $1.4 Trillion Health Benefits Market (2025). Yale Journal on Regulation, Volume 42, No.1, Pp. 234-290, at 237 n.1; see also at 263-264 (the full cost of employer sponsored health insurance is a compensation expense that reduces wages accordingly).

[5] https://www.bls.gov/news.release/pdf/cesan.pdf.

[6] *See* Bhargava, Saurabh, Loewenstein, George, and Sydnor, Justin, Choose to Lose: Health Plan Choices from Menu with Dominated Options (2017). The Quarterly Journal of Economics, 13171392, at 1321.

but has failed to communicate this material information to the Plan's participants, in breach of its fiduciary duty.

**ANSWER:** Northwestern admits that the Plan offers multiple PPO coverage options. Northwestern denies the remaining allegations in Paragraph 4.

5. To purportedly accommodate the varying needs of its employees, Defendant offers high-deductible ("Value PPO"), mid-deductible ("Select PPO"), and low-deductible ("Premier PPO") options of the same PPO health services. These options vary in cost features such as monthly premiums, deductibles, coinsurance, and out-of-pocket maximums, but each provide the same healthcare services from the same PPO network to employees.[7] The Premier PPO option is accompanied by higher premiums and a lower annual deductible, while the Select and Value PPO options offer lower premiums but higher annual deductibles. There is nothing inherently wrong with offering three PPO tiers with various cost-sharing features. Many employers do so while ensuring that neither option is financially dominated by another.

**ANSWER:** Northwestern admits that from at least January 1, 2019 through December 31, 2025, it offered the Premier, Select, and Value PPO coverage options (the "Pre-2026 PPO Coverage Options"), but denies the remaining allegations in the first sentence of Paragraph 5, including because the terms "high-deductible," "mid-deductible," "low-deductible" are vague and undefined. Northwestern admits that monthly premiums, deductibles, coinsurance, and out-of-pocket maximums for the Pre-2026 PPO Coverage Options varied by coverage option, but denies the remaining allegations in the second sentence of Paragraph 5. Northwestern admits the allegations in the third and fourth sentences of Paragraph 5. Northwestern denies the allegations in the last sentence of Paragraph 5, including because the terms "financially dominated" and "high deductible" are vague and undefined.

With regard to footnote 7, Northwestern admits the Plan offers a Health Maintenance Organization ("HMO") coverage option, which provides different coverages than the Plan's PPO coverage options. Northwestern denies the remaining allegations in footnote 7.

---

[7] In contrast, the Plan also includes a Health Maintenance Organization ("HMO") plan as an option, which provides different healthcare services than the Plan's PPO options.

6.      However, Defendant informs Plan participants that if they choose an option with lower monthly premiums (and higher deductibles), they will likely pay more in out-of-pocket costs—through copayments, coinsurance, deductibles, and the like—than they would if they choose an option with higher monthly premiums (and lower deductibles). This is false. The high deductible Value PPO option provides lower out-of-pocket expenses than the Premier PPO option *for all levels of medical spending*, meaning the high-deductible Value PPO option financially dominates the low-deductible Premier PPO option.

**ANSWER:** Northwestern denies the allegations in the first sentence of Paragraph 6 as incomplete and misleading. Northwestern admits that in a section of the Health & Welfare Benefits Summary Plan Description Handbook discussing the differences among all of the Plan's coverage options, it stated the following: "[i]f you choose a plan with lower monthly Premiums, you will likely pay more in out-of-pocket costs – through Copayments, Coinsurance, Deductibles, and the like – than you would if you chose a plan with higher monthly Premium." The text immediately preceding this statement further explains that the Plan's coverage options differ based on various factors, including, "[h]ow much you pay in monthly Premiums towards the cost of coverage" and "[h]ow much you pay out of pocket at the time you receive a health care service or the amount you will owe once a claim is processed." Northwestern denies the remaining allegations in Paragraph 6, including because the term "financially dominates" is vague and undefined.

7.      Defendant's management of the Plan's PPO options is subject to ERISA's strict fiduciary duties. 29 U.S.C. § 1104(a)(1). These duties are "the highest known to the law." *George v. Kraft Foods Glob., Inc.*, 814 F. Supp. 2d 832, 852 (N.D. Ill. 2011) (citation omitted). Fiduciaries must act with the "care, skill, prudence, and diligence" that a "prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," 29 U.S.C. § 1104(a)(1)(B), and "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A). Defendant has breached its fiduciary duty of prudence by assembling a menu of PPO options where there is *no* financial or medical benefit to selecting the Premier PPO option.

**ANSWER:** Northwestern admits that its management and administration of the Plan is subject to ERISA's fiduciary duties, but Northwestern denies that it acted as a fiduciary with regard to the matters at issue in the Amended Complaint and therefore denies the remaining allegations

5

in the first and second sentences of Paragraph 7. Northwestern admits the allegations in the third sentence of Paragraph 7. Northwestern denies the remaining allegations in Paragraph 7.

8. Defendant became aware of the Premier PPO's dominated status years ago, after being notified by a faculty member. After receiving this information and consulting with the Plan's actuaries, Northwestern University's benefits department admitted that it is unlikely that there is a scenario where a participant would be financially better off with the Premier PPO option.

**ANSWER:** Northwestern denies the allegations in the first sentence of Paragraph 8, including because the term "dominated status" is vague and undefined. Northwestern denies the allegations in the second sentence of Paragraph 8 because they are incomplete and misleading. In the cited email correspondence, the faculty member admitted that (1) there are "a few scenarios in which an employee would benefit from the [P]remier [PPO] plan," (2) "[t]here actually are some situation[s] where an employee could rationally choose the [P]remier [PPO] plan," and (3) after evaluating the Plan's coverage options, the faculty member came to appreciate Northwestern's "emphasis on [employee] choice" when making coverage options available to its employees.

9. Despite this admission, Defendant never informed participants of the material fact that they will almost certainly pay more for the same services if they select the Premier PPO option. Defendant is duty bound to disclose this to the Plan's participants at large, as they possess "an affirmative obligation to communicate material facts affecting the interests of beneficiaries." *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993) (citation omitted). But they have failed to do so, in breach of their fiduciary obligations to participants.

**ANSWER:** Northwestern denies the allegations in Paragraph 9.

10. Defendant corrected its error only after this lawsuit was filed. Defendant has recently informed participants that it intends to change vendors administering the Plan's PPO options for 2026. In doing so, Defendant acknowledged that it "has a responsibility to monitor the vendors that administer our health plans to ensure they are charging reasonable fees for their services and administering our plan in accordance with NU plan documents and in the best interest of the plan and plan participants." This decision was "made by the Northwestern University Welfare Plan Administrators (NUWPA) Committee," which Defendant acknowledges is bound to "act[] solely in the best interest of plan participants and beneficiaries."[8]

---

[8] The NUWPA includes the University's Vice President and Chief Financial Officer, Vice President and Chief Human Resources Officer, and the Director of Benefits.

**ANSWER:** Northwestern denies the allegations in the first sentence of Paragraph 10. Northwestern admits that there was a change in the Plan's third-party administrator effective January 1, 2026. Northwestern admits that the Plan Administrator acts as an ERISA fiduciary when managing and administering the Plan, but Northwestern denies that it acted as an ERISA fiduciary with regard to the matters at issue in the Amended Complaint. Northwestern denies the remaining allegations in Paragraph 10. Northwestern admits the allegations in footnote 8.

11.     Despite acknowledging a fiduciary responsibility to monitor the Plan's vendors and fees, Defendant also admitted that it retained the same third-party administrator for the PPO plan, Blue Cross Blue Shield of Illinois, "[f]or many years." Indeed, Blue Cross Blue Shield of Illinois has been the Plan's third-party administrator at least since this version of the Plan was created in 2018.[9] Still, Defendant sat idly by without changing the Plan's PPO options or service provider despite knowing of the dominated nature of the Plan's PPO options for years.

**ANSWER:** Northwestern admits that Blue Cross and Blue Shield of Illinois was the Plan's third-party administrator for Plan years 2018-2025, but denies the remaining allegations in the first and second sentences of Paragraph 11. Northwestern denies the allegations in the third sentence of Paragraph 11, including because the term "dominated nature" is vague and undefined.

With regard to the allegations in footnote 9, Northwestern admits that Blue Cross and Blue Shield of Illinois was the Plan's third-party administrator for Plan years 2018-2025. Northwestern is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in footnote 9, including the allegations regarding the non-identified "publicly available documents" referenced therein, and therefore denies them.

12.     Beginning in 2026, United Healthcare will replace Blue Cross Blue Shield of Illinois as the Plan's third-party administrator. Defendant has informed participants that it will continue to offer a high-deductible, mid-deductible, and low-deductible option to Plan participants through United Healthcare. However, none of the three options available beginning in 2026 is

---

[9] Plaintiffs do not have access to historical records detailing how long Blue Cross Blue Shield of Illinois has served as the third-party administrator for Northwestern's health plans. However, publicly available documents show that Blue Cross Blue Shield of Illinois has provided services to Northwestern health plans since at least 2009.

financially dominated by another. This confirms that Defendant could have offered non-dominated options to participants had it prudently managed the Plan.

**ANSWER:** Northwestern admits that as of January 1, 2026, UnitedHealthcare will serve as the Plan's third-party administrator. Northwestern denies the remaining allegations in Paragraph 12, including because the terms "high-deductible," "mid-deductible," "low-deductible," "financially dominated" and "non-dominated" are vague and undefined.

13. By offering a financially dominated option like the Premier PPO, Defendant imprudently shifted the burden to monitor the Plan's fees and determine the financial benefits of each option, including the potentially dominated nature of the options, from the employer to participants. However, discovering the dominated nature of these options requires a complicated mathematical computation. *See Chesemore v. All. Holdings, Inc.*, 886 F. Supp. 2d 1007, 1041-42 (W.D. Wis. 2012) (ERISA's duty of prudence is not a layperson standard) (citation omitted), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016). Indeed, Defendant had to consult with its actuaries to confirm the dominated nature of the Premier PPO option.

**ANSWER:** Northwestern denies the allegations in Paragraph 13.

14. The consequences of shifting this burden and expecting employees to act as the prudent expert are material. In a 2017 study, researchers found that 61% of employees selected a financially dominated option when one existed.[10] The reason that more than half of employees select a financially dominated option when available is simple: a lack of understanding of health insurance among the general public.

**ANSWER:** Northwestern denies the allegations in the first sentence of Paragraph 14. Northwestern is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 14, and therefore denies them.

15. Indeed, the idea that individuals willingly enroll in a financially dominated option to achieve lower deductibles has been debunked. When the consequences of selecting a financially dominated option were shared with participants, researchers found this reduced the share of subjects choosing a dominated option to 18%.[11] When the focus was placed upon the enrollment decisions of individuals that demonstrated a high understanding of insurance, it was found that less than 2% chose a dominated option.[12] Simply put, "the choice of dominated plans cannot be rationalized by standard risk preference or any expectations about health risk."[13] The complicated

---

[10] Choose to Lose: Health Plan Choices from Menu with Dominated Options, at 1321.

[11] *Id*. at 1325.

[12] *Id.*

[13] *Id*. at 1319.

nature of health insurance and the likelihood that participants will not be able to identify when a dominated option is offered to them underscores the importance of offering prudent, nondominated health insurance options to participants, and of disclosing the dominated nature of an option where one is offered. Defendant has failed to do either.

**ANSWER:** Northwestern denies any inference or allegation that it "failed" to (1) offer prudent health coverage options to Plan participants or (2) disclose material information to Plan participants concerning those options. Northwestern is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15, and therefore denies them.

16.     Defendant's decision to offer the financially dominated Premier PPO option without appropriately evaluating and monitoring the fees associated with that option, failure to remove the option until this lawsuit was filed, and the failure to disclose its dominated nature to participants has resulted in the Plan and its participants paying wholly excessive and unnecessary healthcare expenses in the form of lost wages due to excessive premiums unaccompanied by any reduced out-of-pocket expenses.

**ANSWER:** Northwestern denies the allegations in Paragraph 16.

17.     Based on this conduct, Plaintiffs assert claims against Defendant for breaches of the fiduciary duties of prudence and loyalty. Plaintiffs also assert a claim against Defendant Northwestern University for its failure to monitor the fiduciaries it appointed to manage the Plan.

**ANSWER:** Northwestern admits that Plaintiffs purport to assert claims for breaches of fiduciary duties of prudence and loyalty against Northwestern. Northwestern denies that any of these claims are valid or that Plaintiffs are entitled to any of the relief sought for their claims. Northwestern denies that Plaintiffs assert a claim for failure to monitor the fiduciaries it appointed to manage the Plan against Northwestern; a failure to monitor claim does not appear in the Amended Complaint. Northwestern denies the remaining allegations in Paragraph 17.

## JURISDICTION AND VENUE

18.     Plaintiffs bring this action pursuant to 29 U.S.C. § 1132(a)(2) and (3), which provide that participants in an employer-sponsored health insurance plan may pursue a civil action on behalf of the plan to remedy breaches of fiduciary duties and other prohibited conduct, and to obtain monetary and appropriate equitable relief as set forth in 29 U.S.C. §§ 1109 and 1132.

9

**ANSWER:** Northwestern admits that Plaintiffs purport to bring this action under ERISA. Northwestern denies that any of Plaintiffs' claims are valid or that Plaintiffs are entitled to any of the relief sought for their claims. Northwestern denies the remaining allegations in Paragraph 18.

19. This case presents a federal question under ERISA, and therefore the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

**ANSWER:** Northwestern denies that this Court has subject matter jurisdiction over this case because Plaintiffs lack Article III standing to assert any of the claims in the Amended Complaint. Northwestern therefore denies the allegations in Paragraph 19.

20. Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because this is the district where the Plan is administered, where the beaches of fiduciary duties giving rise to this action occurred, and where Defendant may be found.

**ANSWER:** Northwestern admits that this is the district where the Plan is administered and where Northwestern may be found, but it denies that any breaches occurred in this district. Northwestern denies the remaining allegations in Paragraph 20.

### THE PARTIES

**I.     Plaintiffs**

21. Plaintiff Natalie Barbich resides in Chicago, Illinois. Plaintiff Barbich participated in the Northwestern University Employee Welfare Plan from approximately 2019 through 2022 and is a former participant in the Plan. During Plaintiff's time in the Plan, she was enrolled in "You" coverage through the Premier PPO option. Plaintiff has been financially injured by Defendant's unlawful conduct, and her compensation would have been higher if Defendant had not violated ERISA as described herein.

**ANSWER:** Northwestern is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 21, and therefore denies them. Northwestern admits the allegations in the second and third sentences of Paragraph 21. Northwestern denies the remaining allegations in Paragraph 21.

22. Plaintiff Bruce Lindvall resides in Evanston, Illinois. Plaintiff Lindvall participated in the Northwestern University Employee Welfare Plan since it was established January 1, 2018, through approximately 2023 and is a former participant. Before the Plan was established, Plaintiff

participated in one of Northwestern University's predecessor health plans, starting approximately in 2006. During Plaintiff's time in the Plan, he was enrolled in "You" coverage through the Premier PPO option. Plaintiff has been financially injured by Defendant's unlawful conduct, and his compensation would have been higher if Defendant had not violated ERISA as described herein.

**ANSWER:** Northwestern is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 22, and therefore denies them. Northwestern admits that Plaintiff Lindvall is a former participant in the Plan and was enrolled in "You" coverage through the Plan's Premier PPO option during plan years 2007-2023. Northwestern further admits that Plaintiff Lindvall participated in the Plan during plan year 2006. Northwestern denies the remaining allegations in Paragraph 22.

23. Plaintiff Timothy Peterson resides in Niles, Illinois. Plaintiff Peterson has participated in the Northwestern University Employee Welfare Plan since it was established in 2018. Before the Plan was established, Plaintiff participated in one of Northwestern University's predecessor health plans, starting approximately in 2012. Plaintiff has been enrolled in the "You + Spouse + Child(ren)" coverage through the Premier PPO option since approximately 2018. Plaintiff has been financially injured by Defendant's unlawful conduct, and his compensation would have been higher if Defendant had not violated ERISA as described herein.

**ANSWER:** Northwestern is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 23, and therefore denies them. Northwestern admits that Plaintiff Peterson has participated in the Plan since 2012 and that he was enrolled in "Family" coverage through the Plan's Premier PPO option during plan years 2018-2025. Northwestern denies the remaining allegations in Paragraph 23.

## II. Defendant

24. Defendant Northwestern University ("Northwestern") is a private research university primarily located in Evanston, Illinois.

**ANSWER:** Northwestern admits that it is a private research university that has a campus in Evanston, Illinois. Northwestern denies the remaining allegations in Paragraph 24.

25. Northwestern is the "plan sponsor" within the meaning of 29 U.S.C. § 1002(16)(B). Northwestern has named the Executive Director, Benefits & Work/Life Resources (the "Executive

11

Director") as the "administrator" of the Plan within the meaning of 29 U.S.C. § 1002(16)(A). As the administrator of the Plan, the Executive Director exercises discretionary authority or control with respect to the administration of the Plan and management and disposition of Plan assets. The Executive Director is therefore a functional fiduciary under 29 U.S.C. § 1002(21)(A).

**ANSWER:** Northwestern admits that it is the Plan Sponsor of the Plan. Northwestern denies that the Executive Director, Benefits & Work/Life Resources is the Plan Administrator of the Plan; the Northwestern University Welfare Plan Administrators ("NUWPA") is the Plan Administrator of the Plan. Northwestern denies the remaining allegations in Paragraph 25.

26. Northwestern may delegate its fiduciary responsibilities to any other person, persons, or entity. Any individuals or entities not named in this Complaint to whom Northwestern delegated fiduciary functions or responsibilities are also fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and 1105(c)(2). Each such individual or entity acts on behalf of Defendant.

**ANSWER:** Northwestern admits that it has stipulated that it will assume responsibility for the acts or omissions of any current or former employees who served as an administrator or fiduciary of the Plan, and therefore denies the allegations in Paragraph 26.

### III.    Northwestern University Employee Welfare Benefit Plan

27. The Northwestern University Employee Welfare Benefit Plan was established January 1, 2018, and provides certain welfare and other benefits for eligible personnel and retirees of Northwestern University as part of their overall compensation. Included within these benefits are health insurance, dental insurance, life insurance, long-term disability insurance, vision insurance, business travel insurance, and an employee assistance program.

**ANSWER:** Northwestern admits the allegations in Paragraph 27, but states that the Plan's PPO coverage options are self-funded and are not funded by any insurance contracts.

28. For their health insurance, participants' expenses are primarily determined by each plan's deductible, coinsurance rates, copayments, out-of-pocket maximum ("OOPM"), and premiums. A deductible is the amount a participant must pay for covered services before insurance begins to contribute. Once a participant reaches the deductible, the coinsurance rate is the percentage of expenses for covered services that the participant pays compared to the percentage that insurance pays. A copayment is a fixed amount that a participant pays for a particular service. The OOPM is the annual cap that a participant is allowed to pay for covered services. If a participant reaches the OOPM for a given year, insurance pays 100% of any additional covered cost for the remainder of the year. The deductible and OOPM both reset annually.

**ANSWER:** Northwestern admits the allegations in Paragraph 28, but states that the Plan's PPO coverage options are self-funded and are not funded by any insurance contracts.

29.     Additionally, participants pay premiums regardless of whether they incur any covered expenses. Premiums for coverage under any of the available health insurance options are deducted from participants' paychecks on a pre-tax basis. Premiums are deducted on either a biweekly or monthly basis, in accordance with the frequency of a participant's paycheck.

**ANSWER:** Northwestern admits the allegations in Paragraph 29, but states that the Plan's PPO coverage options are self-funded and are not funded by any insurance contracts.

30.     Plan participants have a choice of a PPO health plan with three different tiers or a health maintenance organization ("HMO") plan. An HMO requires a participant to choose a primary care physician, requires referrals to see specialists, and typically does not cover out-of-network care except in emergencies. In contrast, a PPO typically provides a broader network of providers and allows more choice in which physician a patient is allowed to see. The HMO plan offers different healthcare services than the PPO plan.

**ANSWER:** Northwestern admits that the Plan offers multiple PPO coverage options, but denies the remaining allegations in the first sentence of Paragraph 30. Northwestern admits the remaining allegations in Paragraph 30.

31.     The Plan offers three Tiers within the PPO: Premier, the low-deductible option; Select, the mid-deductible option; and Value, the high-deductible option. If participants elect coverage through the Value PPO option, they may choose to open and contribute to a Health Savings Account ("HSA"), to which Northwestern makes a dollar-for-dollar matching contribution each year and which may be used to pay the cost of qualified health care expenses as defined by the Internal Revenue Service.[14] Any balance remaining in a participant's HSA at the end of the year may be rolled over for future use.

**ANSWER:** Northwestern admits that the Pre-2026 PPO Coverage Options included the Premier, Select and Value PPO coverage options. Northwestern denies the remaining allegations in the first sentence of Paragraph 31, including because the terms "high-deductible," "mid-

---

[14] Participants enrolled in the Premier and Select PPO options are ineligible for an HSA but may participate in a Flexible Spending Account ("FSA"). Northwestern offers no matching contributions to an FSA, and any unused participant contributions are forfeited at the end of each year. While Value PPO participants are ineligible to participate in a FSA, they may enroll in a Limited Use FSA. Until the Value PPO plan's annual deductible is met, the Limited Use FSA may only be applied toward eligible dental and vision care expenses.

13

deductible," and "low-deductible" are vague and undefined. Northwestern denies the allegations in the second sentence of Paragraph 31, and further states that Northwestern's decision to contribute to participants' HSA accounts is an employer decision that is not subject to ERISA and thus is not relevant to the matters at issue in the Amended Complaint. Northwestern admits the allegations in the third sentence of Paragraph 31 and the allegations footnote 14.

32. Critically, there is no difference in health-care coverage for participants in the Premier, Select, and Value PPO options. The only differences between the PPO options are the financial terms: premium amounts, coinsurance rates, copayments, maximum out-of-pocket expenses, and eligibility for HSA or FSA accounts. Participants in all three PPO options may choose to receive care from any licensed doctor, hospital, or facility, but will incur lower out-of-pocket expenses for "In-Network" services (that is, services performed by members of the Plan's BlueCross BlueShield of Illinois PPO provider network). Prior to January 1, 2025, participants received additional discounts beyond In-Network rates when receiving care from Northwestern Medicine physicians who are members of the Northwestern Medicine Network. However, Northwestern collapsed the Plan's Northwestern Medicine Network coverage into the In-Network coverage, effective January 1, 2025.[15]

**ANSWER:** Northwestern denies the allegations in the first and second sentences of Paragraph 32. Northwestern admits the remaining allegations in Paragraph 32.

33. Regardless of which PPO option is selected, participants may choose between coverage tiers depending on the desired number of insured individuals. Participants may choose between You, You + Spouse/Partner, You + Child(ren), or You + Spouse/Partner + Child(ren) coverage tiers. The premiums paid by a participant are based on the Plan they choose (e.g., PPO or HMO), the coverage tier selected (e.g., You, You + Spouse/Partner, You + Child(ren), You + Spouse/Partner + Child(ren), employment status (whether the individual is full-time or part-time), the participant's ABBR (the "salary you are receiving on an annual basis as of September 1 of the preceding year"), and the participant's income. The SPD does not state how the actual premiums are calculated, how each of these factors affect the premium, or how Northwestern determines the premium for each tier of coverage within the PPO.

**ANSWER:** Northwestern admits the allegations in the first, second, and third sentences of Paragraph 33 with the exception of the reference to "the participant's ABBR" which the Summary

---

[15]

https://web.archive.org/web/20241114221611/https://hr.northwestern.edu/benefits/eligibilitychanges/open-enrollment1/open-enrollment-faqs.html#medical

14

Plan Description defines as the "Annual Base Benefits Rate" and "the University salary you are receiving on an annual basis on September 1 of the preceding year (or, if newly hired, your new hire salary)." With regard to the allegations in the fourth sentence of Paragraph 33, Northwestern states the Summary Plan Description complied with the requirements set forth in 29 U.S.C. § 1022(a) and 29 C.F.R. § 2520.102-3 and denies any allegation or inference to the contrary. Northwestern denies the remaining allegations in Paragraph 33.

34. The Plan is self-insured. This means it is funded by both employee and employer contributions that are deposited within a trust, pays claims and other expenses from the trust, and is exempt from state insurance regulations.

**ANSWER:** Northwestern admits that the PPO coverage options are self-insured and are funded by employee and employer contributions. Northwestern denies the remaining allegations in Paragraph 34.

### ERISA'S FIDUCIARY DUTIES

35. "ERISA protects employee pensions and other benefits . . . by setting forth certain general fiduciary duties applicable to the management of both pension and non-pension benefit plans." *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996) (citation omitted). In the ERISA context, the term "plan" means "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both[.]" 29 U.S.C. § 1002(3). An employee welfare benefit plan includes "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits[.]" 29 U.S.C. § 1002(1). To protect participants of employee benefit welfare plans like the Plan, 29 U.S.C. § 1104(a)(1) states, in relevant part: [A] fiduciary shall discharge his duties with respect to a plan …

    (A)    for the exclusive purpose of

        (i) providing benefits to participants and their beneficiaries; and

        . . . .

    (B)    with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims . . . .

These fiduciary duties are "the highest known to the law." *Kraft Foods Glob., Inc.*, 814 F. Supp. 2d at 852.

**ANSWER:** Northwestern admits that ERISA covers certain employee welfare benefit plans and sets forth fiduciary duties of prudence and loyalty. Northwestern denies that it acted as an ERISA fiduciary, that ERISA's fiduciary duties are relevant to Northwestern's actions at issue in the Amended Complaint, and that it breached any ERISA fiduciary duty. Northwestern therefore denies that the cited cases are relevant to the matters at issue in the Amended Complaint. Northwestern denies the remaining allegations in Paragraph 35.

### DUTY OF LOYALTY

36. "The duty of loyalty is one of the common law trust principles that apply to ERISA fiduciaries, and it encompasses a duty to disclose." *King v. Blue Cross & Blue Shield of Illinois*, 861 F.3d 730, 744 (9th Cir. 2017). Indeed, "[t]he duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 466 (7th Cir. 2010) (citation omitted). Fiduciaries' duty to communicate material facts to participants "exists when a beneficiary asks fiduciaries for information, and even when he or she does not." *Anweiler*, 3 F.3d at 991 (citation omitted). A fiduciary must inform participants "when it knows that silence may be harmful and cannot remain silent if it knows or should know that the beneficiary is laboring under a material misunderstanding of plan benefits." *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007); *see also* Restatement (Third) of Trusts § 82 cmt. d (outlining "an affirmative requirement that . . . the trustee inform fairly representative beneficiaries of important developments and information that appear reasonably necessary for the beneficiaries to be aware of in order to protect their interests.").

**ANSWER:** Northwestern admits that ERISA sets forth a duty of loyalty, which includes a duty to disclose material information. Northwestern denies that it acted as an ERISA fiduciary, that the duty of loyalty is relevant to the Northwestern's actions at issue in the Amended Complaint, and that it breached any ERISA fiduciary duty. Northwestern therefore denies that the cited cases are relevant to the matters at issue in the Amended Complaint. Northwestern denies the remaining allegations in Paragraph 36.

37. This general fiduciary duty to disclose material information is supplemented by a specific statutory obligation to provide information in a form "sufficiently accurate and comprehensive to reasonably apprise [] participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).

16

**ANSWER:** Northwestern admits that ERISA requires a summary plan description be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). Northwestern denies any allegation or inference that it failed to comply with the requirements set forth in 29 U.S.C. § 1022(a) and 29 C.F.R. § 2520.102-3. Northwestern denies the remaining allegations in Paragraph 37.

### DUTY OF PRUDENCE

38. "If there is . . . a 'hallmark' of a fiduciary activity identified in the statute, it is prudence." *Sweda v. Univ. of Penn.*, 923 F.3d 320, 333 (3d Cir. 2019). This is not a lay person standard, but instead "requires expertise in a variety of areas[.]" Dep't of Labor, *Meeting Your Fiduciary Responsibilities* (Sept. 2017).[16] This duty applies to all ERISA-covered plans. *See Varity Corp.*, 516 U.S. at 596. Indeed, "the fiduciary duty provisions of ERISA . . . apply with equal force to welfare and pension plans." *Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996). Thus, the duty of prudence includes "a continuing duty to monitor [benefit options] and remove imprudent ones" that exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting [benefit options]." *Tibble v. Edison Intern.*, 575 U.S. 523, 529 (2015). If a benefit option is imprudent, the plan fiduciary "must dispose of it within a reasonable time." *Id.* at 530 (quotation omitted). Fiduciaries therefore may be held liable for either "assembling an imprudent menu" of benefit options or for failing to monitor the plan's benefit options to ensure that each remains prudent. *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n.3, 423-24 (4th Cir. 2007).

**ANSWER:** Northwestern admits that ERISA sets forth a duty of prudence that applies to all ERISA-covered plans. Northwestern denies that it acted as an ERISA fiduciary, that the duty of prudence is relevant to the actions at issue in the Amended Complaint, and that it breached any ERISA fiduciary duty. Northwestern therefore denies that the cited sources are relevant to the matters at issue in the Amended Complaint. Northwestern denies the remaining allegations in Paragraph 38.

39. It is no defense to the imprudence of some benefit options that others may have been prudent; a meaningful mix and range of options does not insulate plan fiduciaries from

---

[16] *Available at* https://www.dol.gov/sites/default/files/ebsa/about-ebsa/ouractivities/resourcecenter/ publications/meeting-your-fiduciary-responsibilities.pdf.

17

liability of breach of fiduciary duty. *See Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022) (*"Hughes I"*). "[T]he Seventh Circuit clarified that a pleading need not show that a prudent alternative was actually available; showing that an alternative prudent option was plausibly available sufficed." *Acosta v. Bd. of Trustees of Unite Here Health*, 2023 WL 2744556, at *4 (N.D. Ill. Mar. 31, 2023) (citing *Hughes v. Nw. Univ.*, 63 F.4th 615, 629-30 (7th Cir. 2023) (*"Hughes II"*)).

**ANSWER:** Northwestern admits that ERISA sets forth a duty of prudence that applies to all ERISA-covered plans. Northwestern denies that it acted as an ERISA fiduciary, that the duty of prudence is relevant to the actions at issue in the Amended Complaint, and that it breached any ERISA fiduciary duty. Northwestern therefore denies that the cited sources are relevant to the matters at issue in the Amended Complaint. Northwestern denies the remaining allegations in Paragraph 39.

### FIDUCIARY VS. SETTLOR FUNCTIONS

40. Whether these duties apply to the actions of the Plan sponsor and the Plan's fiduciaries hinges upon the distinction between fiduciary and settlor functions. Generally, the decision to adopt, modify, or terminate a welfare plan is a settlor decision outside the bounds of ERISA. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 79 (1995). However, activities undertaken to implement settlor decisions are fiduciary functions subject to ERISA. 29 U.S.C. § 1002(21)(A)(i), (iii) (ERISA defines a fiduciary as any person "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."); *see also* DOL Adv. Opinion No. 2001-01A, 2001 WL 125092, at *2 (Jan. 18, 2001) (finding that the implementation of a settlor decision is a fiduciary activity).

**ANSWER:** Northwestern admits that whether ERISA's fiduciary standards are applicable depends on whether the actions at issue are fiduciary or settlor functions. Northwestern further admits that the decisions to adopt, modify, or terminate a welfare plan are settlor decisions outside the bounds of ERISA's fiduciary standards. Northwestern denies that it acted as an ERISA fiduciary with regard to the matters at issue in the Amended Complaint and that it breached any fiduciary duty. Northwestern denies the remaining allegations in Paragraph 40.

41.     Indeed, "[m]ost employers who sponsor fully or partially self-funded group health plans" like the Plan "exercise some discretionary authority and therefore are fiduciaries."[17] Thus, an employer's decision to offer health insurance to plan participants may be a settlor decision, but the decision as to *which* specific health insurance options to offer is subject to ERISA's fiduciary duties as an implementation of a settlor decision.

**ANSWER:** Northwestern admits that the allegations in Paragraph 41 quote the U.S. Department of Labor publication cited in footnote 17, but denies that the quoted language is relevant to the issues in the Amended Complaint. Northwestern denies that it acted as an ERISA fiduciary with regard to the matters at issue in the Amended Complaint and that it breached any fiduciary duty. Northwestern denies the remaining allegations in Paragraph 41.

42.     Likewise, fiduciaries have a duty to monitor any settlor decisions to ensure they remain in the best interests of Plan participants. For example, as Defendant acknowledges, "Northwestern has a responsibility to monitor the vendors that administer our health plans to ensure they are charging reasonable fees" and act "in the best interest of the plan and plan participants." A fiduciary also "must ensure that those fees and expenses are reasonable, necessary for the plan's operation, and not excessive for the services provided."[18] "After carefully evaluating [fees] when selecting a service provider, the plan's fees and expenses should be monitored to determine whether they are still reasonable."[19]

**ANSWER:** Northwestern denies the allegations in the first and second sentences of Paragraph 42. Northwestern admits that the allegations in the third and fourth sentences of Paragraph 42 quote the U.S. Department of Labor publication cited in footnotes 18 and 19, but denies that the quoted language is relevant to the matters at issue in the Amended Complaint and therefore denies the remaining allegations in Paragraph 42.

43.     As the Supreme Court has explicitly held, a fiduciary is not allowed to use the terms of a plan document to shield themselves from the consequences of an imprudent decision or the failure to monitor that decision: "'[T]he duty of prudence trumps the instructions of a plan

---

[17] Dep't of Labor, *Understanding Your Fiduciary Responsibilities Under a Group Health Plan* (Sept. 2023).

[18] Dep't of Labor, *Understanding Your Fiduciary Responsibilities Under a Group Health Plan* (Sept. 2023).

[19] *Id.*

19

document.'" *Buescher v. North American Lighting, Inc*, -- F. Supp. 3d -- , 2025 WL 1927503, at *14 (C.D. Ill. 2025) (quoting *Fifth Third Bancorp. v. Dudenhoeffer*, 573 U.S. 409, 421 (2014)).

**ANSWER:** Northwestern admits that the Supreme Court has held that the "duty of prudence trumps the instructions of a plan document," but denies that this statement is relevant to the matters at issue in the Amended Complaint. Northwestern denies that it acted as an ERISA fiduciary with regard to the matters at issue in the Amended Complaint and that it breached any fiduciary duty. Northwestern therefore denies that the cited cases are relevant to the matters at issue in the Amended Complaint. Northwestern denies the remaining allegations in Paragraph 43.

**DEFENDANT'S VIOLATIONS OF ERISA**

**I. DEFENDANT BREACHED ITS FIDUCIARY DUTIES IN MANAGING THE NORTHWESTERN UNIVERSITY EMPLOYEE WELFARE BENEFIT PLAN**

44. As a fiduciary, Defendant is required to ensure that costs incurred by participants are reasonable. *See Sweda*, 923 F.3d at 328 ("Fiduciaries must . . . understand and monitor plan expenses."); *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 483 (8th Cir. 2020) (discussing a fiduciary's duty to keep plan expenses under control); *see also* Restatement (Third) of Trusts § 90, cmt. A ("Implicit in a trustee's fiduciary duties is a duty to be cost-conscious."). "Wasting beneficiaries' money is imprudent." *Hughes II*, 63 F.4th at 627 (internal quotation marks omitted). When selecting health insurance options for participants, "the responsible plan fiduciary must engage in an objective process designed to elicit information necessary to assess . . . the reasonableness of the fees charged in light of the services provided." DOL Info. Letter from Bette J. Briggs to Diana O. Ceresi, 1998 WL 1638068, at *1 (Feb. 19, 1998).

**ANSWER:** Northwestern denies the allegations in Paragraph 44.

45. Defendant is additionally duty bound to disclose material information to Plan participants. "Information is material if there is a substantial likelihood that nondisclosure 'would mislead a reasonable employee in the process of making an adequately informed decision regarding benefits to which she might be entitled.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 599 (8th Cir. 2009) (quoting *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007)).

**ANSWER:** Northwestern admits that it was required to disclose material information to the Plan participants, but denies that it breached this duty and therefore denies the remaining allegations in Paragraph 45.

20

46.     Despite these duties, Defendant failed to undertake the requisite prudent process in assessing the fees charged to participants through the Premier PPO option in light of the services provided.  Instead, the more costly Premier PPO option offered to participants gives them access to the same suite of services with *no* financial or medical benefit to participants when compared to the Value PPO option.  This is true regardless of a full-time participant's coverage level (i.e., whether they are insuring themselves, themselves and their spouse or partner, or themselves, their spouse or partner, and their children), salary level, and amount of medical services received.

**ANSWER:** Northwestern denies the allegations in Paragraph 46.

47.     Despite this fact, Defendant misleadingly informed participants that "[i]f you choose a plan with lower monthly Premiums [the Value PPO option], you will likely pay more in out-of-pocket costs – through Copayments, Coinsurance, Deductibles, and the like – than you would if you choose a plan with higher monthly Premiums [the Premier PPO option]."[20]

**ANSWER:** Northwestern denies the allegations in Paragraph 47.

48.     To illustrate, for individuals selecting "You" coverage through the Premier PPO option, annual premiums range from $3,528 to $7,812 depending upon their salary, while their in-Network deductible is $500 with an out-of-pocket maximum of $2,400.  In contract, individuals selecting "You" coverage instead through the Value PPO option would incur annual premiums between $264 and $3,048 with a $2,100 In-Network deductible and $3,000 out-of-pocket maximum.  In other words, an individual enrolled in Premier PPO option will pay between $3,264 and $4,764 more in premium payments than if they had enrolled in the Value PPO option, while reducing their total out-of-pocket maximum by only $600.  Thus, the Premier PPO premiums, which are paid regardless of whether a participant receives any medical services, exceed the reduction in out-of-pocket maximum for all salary and coverage levels, as summarized in the following table:

---

[20] Plan's Summary Plan Description.

21

| Coverage Level | Difference in Premier vs. Value Annual Premium – Low Salary | Difference in Premier vs. Value Annual Premium – Mid Salary | Difference in Premier vs. Value Annual Premium – High Salary | Premier Out-of-Pocket Maximum | Value Out-of-Pocket Maximum | Difference in Premier vs. Value Out-of-Pocket Maximum |
|---|---|---|---|---|---|---|
| **Differences in Premier PPO & Value PPO Premiums and Out of Pocket Maximums** | | | | | | |
| You | $3,264 | $3,780 | $4,764 | $2,400 | $3,000 | -$600 |
| You + Spouse | $7,308 | $8,580 | $10,824 | $6,600 | $8,000 | -$1,400 |
| You + Child(ren) | $6,000 | $7,128 | $8,964 | $6,600 | $8,000 | -$1,400 |
| You + Spouse + Child(ren) | $11,052 | $12,900 | $16,296 | $6,600 | $8,000 | -$1,400 |

**ANSWER:** Northwestern denies the allegations in Paragraph 48, including because Plaintiffs' comparison of the Premium PPO and Value PPO options (1) is based on hypothetical scenarios, (2) does not specify the Plan year(s) at issue, (3) is incomplete and misleading because it does not account for deductibles, copays, or coinsurance, (4) assigns no weight to participant claims experience or financial preferences, and (5) does not account for differences in the coverages afforded by the Premier PPO and Value PPO coverage options.

49. The financially dominated nature of the Premier PPO options stems from the varying premiums, deductibles, coinsurance rates, and out-of-pocket maximums between the PPO options. Premium amounts increase given a participant's salary level, with the Premier PPO option having the highest premiums and the Value PPO option having the lowest. Premiums additionally increase within each PPO option as a participant adds an additional covered spouse or child(ren).

**ANSWER:** Northwestern denies the allegations in the first sentence of Paragraph 49, including because the term "financially dominated" is vague and undefined. Northwestern admits the remaining allegations in Paragraph 49.

50. The Premier PPO's financially dominated status was confirmed by Defendant in an email to a Northwestern University faculty member. After consulting with Northwestern's actuaries, a representative from its benefits department explained that the actuaries "concurred that it is unlikely that there is a scenario where one would be financially better off with the Premier PPO, given the employee contributions relative to the out of pocket maximum." This holds true

22

at every level of medical spending, whether In-Network or Out-of-Network.[21]  It is also nearly certain that the Premier PPO option is financially dominated by the Select PPO, or mid-deductible, option.  This also holds true at every level of medical spending whether In-Network or Out-of-Network.[22]

**ANSWER:** Northwestern denies the allegations in the first sentence of Paragraph 50, including because the term "dominated status" is vague and undefined.  Northwestern denies the allegations in the second sentence of Paragraph 50 because they are incomplete and misleading. In the cited email correspondence, the faculty member admitted that (1) there are "a few scenarios in which an employee would benefit from the [P]remier [PPO] plan," (2) "[t]here actually are some situation[s] where an employee could rationally choose the [P]remier [PPO] plan," and (3) after evaluating the Plan's coverage options, the faculty member came to appreciate Northwestern's "emphasis on [employee] choice" when making coverage options available to its employees. Northwestern denies the remaining allegations in Paragraph 50, including because the terms "financially dominated" and "mid-deductible" are vague and undefined.

Northwestern denies the allegations in footnotes 21 and 22, including any allegation that the Premier PPO option is "financially dominated."

51.     For an example of how the Value PPO option dominates the Premier PPO option, a participant who falls in the highest salary bracket for premiums, enrolls in "You + Spouse +

---

[21] Under only extreme conditions is it possible for the out-of-pocket spend for the Value PPO option to exceed that of the Premier PPO option.  Specifically, individuals would have to fall within the low- or mid-salary premiums, enroll in the You + Children coverage level, and incur *out-of-network* medical expenses that exceed approximately $40,000.  This is likely why the Northwestern benefits department deemed it "unlikely" but not "impossible" that an individual would be financially better off in the Premier PPO option.  This extreme scenario does not justify the decision to offer the dominated Premier PPO option or the failure to inform participants about the dominated nature of the Premier PPO option.

[22] Unlike the Value PPO option, the Select PPO option does not have a uniform coinsurance rate among medical services received but instead additionally incorporates copays.  The presence of copays within the Select PPO option lead Plaintiffs to believe with near but not complete certainty that the Select PPO option financially dominates the Premier PPO option.

Children" coverage, and seeks medical care through in In-Network services would always spend more on their and their family's healthcare by choosing the Premier PPO than choosing the Value PPO option. This is true regardless of whether the participant and their family have no medical bills, a moderate amount of medical bills, or reach their out-of-pocket maximum, as shown here:[23]



**ANSWER:** Northwestern denies the allegations in Paragraph 51, including because the term "dominates" is vague and undefined and Plaintiffs' comparison of the Premium PPO and Value PPO options (1) is based on hypothetical scenarios, (2) does not specify the Plan year(s) at issue, (3) is incomplete and misleading because it does not account for the cost of copays, (4) assigns no weight to participant claims experience or financial preferences, and (5) does not account for differences in the coverages afforded by the Premier PPO and Value PPO coverage options.

With regard to the allegations in footnote 23, Northwestern admits that Plaintiffs' graph does not include copays. Northwestern denies the remaining allegations in footnote 23.

---

[23] The graph only includes premiums, deductibles, coinsurance, and out-of-pocket maximums. It is not possible for the graph to include copays, which depend on the number of office visits.

24

52.     These results are further emphasized when considering the presence of the health savings account for those within the Value PPO option. For participants selecting "You" Value PPO coverage, Northwestern makes a dollar-for-dollar matching contribution of up to $1,000 annually. For participants selecting all other levels of Value PPO coverage, Northwestern matches up to $2,000 annually. These matching contributions effectively lower the Value PPO's deductible and widen the out-of-pocket maximum gap in comparison to the Premier PPO option.

ANSWER: Northwestern denies the allegations in Paragraph 52. Northwestern further states that Northwestern's decision to contribute to participants' HSA accounts is an employer decision that is not subject to ERISA and therefore is not relevant to the matters at issue in the Amended Complaint.

53.     As a fiduciary, Defendant was responsible for selecting and negotiating health plan options with its PPO provider and ensuring that the fees charged to participants were reasonable and not excessive for the services provided. Because Defendant offered the Premier PPO option that provided the same medical care as the Plan's other PPO options but at an increased cost to participants, Defendant has failed to ensure that these fees were reasonable and not excessive. This failure suggests that Defendant employed an imprudent process for managing the Plan's PPO options and the fees charged to participants.

ANSWER: Northwestern denies the allegations in Paragraph 53.

54.     Additionally, Defendant's failure to identify that it offered participants a dominated option charging excessive fees for the same medical services suggests that Defendants lacked a prudent process for monitoring the Plan's PPO options. The fact that Defendant changed course only after this lawsuit was filed strongly suggests that Defendant lacked a meaningful "formal review process" for evaluating the Plan's fees and service providers.[24] In other words, it is reasonable to infer that Defendant failed to review the Plan's fees "at reasonable intervals to decide if it wants to continue using the current service provider or look for replacements."[25]

ANSWER: Northwestern denies the allegations in Paragraph 54.

55.     When pressed to justify the decision to offer a financially dominated option, the benefits department concluded that "choice has always been important to our faculty and staff, even with higher employee contributions." But the Supreme Court has held that "participants' ultimate choice" cannot "excuse allegedly imprudent decisions by [Defendant]." *Hughes*, 142 S. Ct. at 742. Moreover, nothing prevented Defendant from offering the same level of choice in three tiers of PPO options but ensuring that none of those options was financially dominated by

[24] Dep't of Labor, *Understanding Your Fiduciary Responsibilities Under a Group Health Plan* (Sept. 2023).
[25] *Id.*

25

another.[26]  Indeed, Defendant has changed the menu of options for 2026 to offer high, low, and medium-deductible PPO options, none of which are financially dominated by another.

**ANSWER:** Northwestern denies the allegations in the first sentence of Paragraph 55, including because the term "financially dominated" is vague and undefined and because the allegations are incomplete and misleading.  In the cited email correspondence, the faculty member admitted that (1) there are "a few scenarios in which an employee would benefit from the [P]remier [PPO] plan," (2) "[t]here actually are some situation[s] where an employee could rationally choose the [P]remier [PPO] plan," and (3) after evaluating the Plan's coverage options, the faculty member came to appreciate Northwestern's "emphasis on [employee] choice" when making coverage options available to its employees.  Northwestern admits that it changed the Plan coverage options for plan year 2026.  Northwestern denies the remaining allegations in Paragraph 55, including because the terms "high, low and medium-deductible PPO options" and "financially dominated" are vague and undefined.

56.     Additionally, nothing prevented Defendant from offering the same level of choice but informing participants of the dominated nature of the Premier PPO option.  The fact that Defendant failed to do so suggests that this excuse is hollow and designed to protect Defendant instead of exposing its error.

**ANSWER:** Northwestern denies the allegations in Paragraph 56.

57.     By continuing to offer the Premier PPO option in light of its dominated nature while additionally *acknowledging* that it causes participants to pay more for no additional benefits, Defendant has breached its fiduciary duty of prudence.

**ANSWER:** Northwestern denies the allegations in Paragraph 57.

58.     Further, by failing to communicate to Plan participants that enrolling in the Premier PPO option results in the highest payroll deduction for premiums while providing no additional financial benefit over the lower premium options, Defendant failed to disclose material information that hinders participants' ability to make an informed choice about their benefit options, in breach of Defendant's duties under ERISA.

---

[26] *See* How Common are Dominated Health Options? Evidence from Employer Health Benefits with High-Deductible Plans, at 30.

**ANSWER:** Northwestern denies the allegations in Paragraph 58.

## CLASS ACTION ALLEGATIONS

59.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action on behalf of the Plan to seek the remedies provided by 29 U.S.C. § 1109(a).  In addition, 29 U.S.C. § 1132(a)(3) authorizes any participant or beneficiary to bring suit for injunctive or other equitable relief.  Plaintiffs seek certification of this action as a class action pursuant to these statutory provisions and Fed. R. Civ. P. 23.

**ANSWER:** Northwestern admits that Plaintiffs seek certification as a class action pursuant to 29 U.S.C. § 1132(a)(2), 29 U.S.C. § 1132(a)(3), and Rule 23 of the Federal Rules of Civil Procedure, but denies that Plaintiffs can sustain an action under any of these provisions. Northwestern denies the remaining allegations in Paragraph 59.

60.     Plaintiffs assert their claims against Defendant on behalf of a class of participants and beneficiaries of the Plan defined as follows:[27]

All full-time employee participants and beneficiaries of the Northwestern University Employee Welfare Plan enrolled in the Premier preferred provider organization option at any time on or after June 20, 2019, excluding Defendant, any of their directors, and any officers or employees of Defendant with responsibility for the Plan's administrative functions.

**ANSWER:** Northwestern admits that Paragraph 60 consists of Plaintiffs' characterizations of their lawsuit, but Northwestern denies that Plaintiffs can sustain its claims, including as a class action, against Northwestern.  With regard to the allegations in footnote 27, Northwestern denies that Plaintiffs may propose additional class or subclasses in their motion for certification or subsequent pleadings in this action.  Northwestern denies the remaining allegations in Paragraph 60.

61.     <u>Numerosity</u>:  The Class is so numerous that joinder of all Class members is impracticable.  The Plan has thousands of participants.

---

[27] Plaintiffs reserve the right to propose other or additional classes or subclasses in their motion for class certification or subsequent pleadings in this action.

27

**ANSWER:** Northwestern admits that the Plan has thousands of participants, but Northwestern denies that Plaintiffs can sustain its claims, including as a class action, against Northwestern. Northwestern denies the remaining allegations in Paragraph 61.

62. Typicality: Plaintiffs' claims are typical of the Class members' claims. Plaintiffs participated in the Plan, were full-time employees of Northwestern University, enrolled in the Premier preferred provider organization option, and were subject to the same preferred provider organization options as other Class members. Defendant managed the Plan collectively and treated Plaintiffs consistently with other Class members. Defendant's imprudent actions and omissions affected all class members similarly.

**ANSWER:** Northwestern denies the allegations in Paragraph 62.

63. Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent, and they have retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impede their ability to represent such Class members.

**ANSWER:** Northwestern denies the allegations in Paragraph 63.

64. Commonality: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:
   a. Whether Defendant are fiduciaries of the Plan, and the scope of their fiduciary duties;
   b. Whether the Plan's fiduciaries breached their duties under ERISA by engaging in the conduct described herein;
   c. The proper form of equitable and injunctive relief; and
   d. The proper measure of monetary relief.

**ANSWER:** Northwestern denies the allegations in Paragraph 64.

65. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendant would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

**ANSWER:** Northwestern denies the allegations in Paragraph 65.

66. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief

28

by the Court, such as replacement of the Plan's preferred provider organization options or removal of Plan fiduciaries, would be dispositive of non-party participants' interests.

**ANSWER:** Northwestern denies the allegations in Paragraph 66.

67. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendant by any Class members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

**ANSWER:** Northwestern denies the allegations in Paragraph 67.

## COUNT I

### Breach of Fiduciary Duty
### Offering a Dominated Option

68. Plaintiffs repeat and re-allege Paragraphs 1 through 58 of the Complaint as though fully set forth herein.

**ANSWER:** Northwestern incorporates its foregoing responses to Paragraphs 1-58 as though set forth herein.

69. Defendant is a fiduciary of the Plan under 29 U.S.C. § 1002(21).

**ANSWER:** Northwestern denies the allegations in Paragraph 69.

70. 29 U.S.C. § 1104 imposes fiduciary duties of loyalty and prudence upon Defendant in connection with the administration of the Plan and the selection and monitoring of the Plan's preferred provider organization options and the fees associated with those options.

**ANSWER:** Northwestern denies the allegations in Paragraph 70.

71. The scope of this fiduciary duty includes managing the Plan solely in the interest of its participants and beneficiaries and with appropriate care, skill, diligence, and prudence. Defendant is directly responsible for ensuring that each PPO option within the Plan is reasonable,

evaluating and monitoring the Plan's PPO options on an ongoing basis, and removing imprudent options that needlessly waste participants' money.

**ANSWER:** Northwestern denies the allegations in Paragraph 71.

72.     Defendant breached its fiduciary duties by offering a menu of preferred provider organization options to Plan participants in which the Premier PPO option offered no financial or medical benefit to its enrollees when compared to the Select and Value PPO options.  A prudent fiduciary would have evaluated and monitored on an ongoing basis the premiums, deductibles, coinsurance rates, and out-of-pocket maximums of the various PPO options to ensure that no option was financially dominated by any other option.  Defendant failed to take these prudent measures and therefore breached their duty of prudence to the Plan.

**ANSWER:** Northwestern denies the allegations in Paragraph 72.

73.     Defendant's fiduciary breach resulted in significant losses to the Plan and its participants in the form of excessive healthcare expenses, including through payroll deductions and lost wages.  Each Defendant is liable for the losses that resulted from these fiduciary breaches, as well as equitable relief and other relief as provided by ERISA.  *See* 29 U.S.C. §§ 1109(a), 1132(a)(2)-(3).

**ANSWER:** Northwestern denies the allegations in Paragraph 73.

## COUNT II

### Breach of Fiduciary Duty
### Failure to Provide Material Facts

74.     Plaintiffs repeat and re-allege Paragraphs 1 through 58 of the Complaint as though fully set forth herein.

**ANSWER:** Northwestern incorporates its foregoing responses to Paragraphs 1 through 58

as though set forth herein.

75.     Defendant is a Plan fiduciary under 29 U.S.C. §§ 1002(21).  Defendant's fiduciary obligations require the communication of material facts to participants when it is known that Defendant's silence may be harmful to participants, whether or not the participant asks for this material information.

**ANSWER:** Northwestern denies the allegations in Paragraph 75.

76.     Defendant breached its fiduciary duty by failing to communicate and disclose to participants that the Premier PPO option provides no financial benefit to participants in comparison to the Select and Value PPO options, and that participants pay increased fees for no benefit. Defendant had knowledge of this material fact but failed to communicate this information to participants.

**ANSWER:** Northwestern denies the allegations Paragraph 76.

77.     Defendant's fiduciary breach resulted in significant losses to the Plan and its participants in the form of excessive healthcare expenses, including through payroll deductions and lost wages.  Each Defendant is liable for the losses that resulted from these fiduciary breaches, as well as equitable relief and other relief as provided by ERISA.  *See* 29 U.S.C. §§ 1109(a), 1132(a)(2)-(3).

**ANSWER:** Northwestern denies the allegations Paragraph 77.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, as representatives of the Class defined herein, and on behalf of the Plan, pray for relief as follows:

A.     A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(3) of the Federal Rules of Civil Procedure;

B.     Designation of Plaintiffs as Class Representative and designation of Plaintiffs' counsel as Class Counsel;

C.     A declaration that Defendant has breached its fiduciary duties under ERISA;

D.     An order compelling Defendant to personally make good to the Plan and its participants all losses incurred as a result of the breaches of fiduciary duties described herein, and to restore the Plan to their position but for this unlawful conduct;

E.     Surcharge and other equitable relief to redress Defendant's illegal practices and to enforce the provisions of ERISA as may be appropriate;

F.     An order enjoining Defendant from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

G.     An award of pre-judgment interest;

H.     An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and/or the common fund doctrine; and

I.     An award of such other and further relief as the Court deems equitable and just.

**ANSWER:** In response to Plaintiffs' prayer for relief and each subpart thereof, Northwestern denies that Plaintiffs are entitled to any of the relief requested or to any relief whatsoever, denies the allegations therein, and requests that the Amended Complaint be dismissed

31

with prejudice, that Northwestern be awarded its attorneys' fees and costs, and such other appropriate relief as determined by the Court.

## AFFIRMATIVE AND OTHER DEFENSES

Northwestern hereby repeats, realleges, and incorporates herein by reference its responses to Paragraphs 1 through 77 and Prayer for Relief of the Answer to the Amended Complaint and plead its Affirmative and Other Defenses without assuming the burden of proof when the law places the burden on Plaintiffs, and reserving the right to amend or add additional affirmative defenses upon further investigation and discovery, as follows:

**FIRST DEFENSE:** Plaintiffs' claims are or may be barred, in whole or in part, because Plaintiffs lack Article III standing to assert any claim for relief. Plaintiffs have not alleged (1) a concrete injury in fact (2) that was caused by Northwestern and (3) that could be redressed by a favorable Court order. Plaintiffs received all benefits offered by the coverage option they voluntarily selected.

**SECOND DEFENSE:** Plaintiffs claims are or may be barred, in whole or in part, because Plaintiffs lack Article III standing to seek declaratory and prospective injunctive relief. The Pre-2026 PPO Coverage Options are no longer offered by the Plan.

**THIRD DEFENSE:** Plaintiffs' claims are or may be barred, in whole or in part, because the Amended Complaint fails to state a claim for relief upon which relief can be granted. Northwestern did not act as an ERISA fiduciary with regard to the matters at issue in the Amended Complaint and it did not breach any fiduciary duties.

**FOURTH DEFENSE:** Plaintiffs' claims are or may be barred, in whole or in part, to the extent they are based upon settlor or corporate actions that are not governed by ERISA, or actions not taken in a fiduciary capacity. Northwestern's selection of Plan coverage options, setting of

32

employee cost-sharing terms, and decisions regarding Plan funding are settlor functions. Plaintiffs do not identify any act involving the exercise of fiduciary discretion with regard to the matters at issue in the Amended Complaint.

**FIFTH DEFENSE:** Plaintiffs fail to allege an ERISA section 502(a)(2) claim because they do not allege a Plan-level loss. Plaintiffs only allege a loss to the putative class of Plan participants who enrolled in the Premier PPO coverage option.

**SIXTH DEFENSE:** Plaintiffs' ERISA section 502(a)(3) claims for monetary equitable relief are or may be barred, in whole or in part, because Plaintiffs do not seek the return of specifically identified funds that remain in Northwestern's possession or traceable items that Northwestern purchased with such specifically identified funds.

**SEVENTH DEFENSE:** Plaintiffs' claims are or may be barred, in whole or in part, by the doctrines of waiver, estoppel, and/or ratification. Plaintiffs voluntarily selected the Premier PPO coverage option in light of all information made available to them regarding its costs and covered benefits and received all benefits offered by the Premier PPO coverage option.

**EIGHTH DEFENSE:** Plaintiffs' claims are or may be barred, in whole or in part, because Plaintiffs cannot establish that the Plan suffered any legally cognizable losses or damages that were caused by Northwestern's alleged acts and omissions. Plaintiffs voluntarily selected the Premier PPO coverage option in light of all information made available to them regarding its costs and covered benefits and received all benefits offered by the Premier PPO coverage option.

**NINTH DEFENSE:** Plaintiffs' claims are or may be barred, in whole or in part, because Northwestern's actions, to the extent any of them are found to be fiduciary actions, complied with the requirements of ERISA, as well as industry norms and standards.

**TENTH DEFENSE:** Count II fails to state a claim for relief because Plaintiffs do not allege that they detrimentally relied on any material misstatements or omissions by Northwestern regarding the cost of and benefits offered by the Plan's Premier PPO coverage option. Plaintiffs received all benefits offered by the coverage option they voluntarily selected.

**ELEVENTH DEFENSE:** Count II fails to state a claim for relief because Plaintiffs do not allege that Northwestern acted with the requisite intent. Northwestern did not make any affirmative misrepresentations or intentionally misleading statements regarding the cost of and benefits offered by the Premier PPO coverage option.

**TWELFTH DEFENSE:** Plaintiffs' putative class action claims are barred because they cannot satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.

## RESERVATION OF DEFENSES

Northwestern expressly and specifically reserves the right to amend this Answer to add, delete, and/or modify defenses based upon legal theories, facts, and circumstances that may or will be divulged through discovery and/or further legal analysis of Plaintiffs' position in this litigation.

## JURY TRIAL DEMAND

Northwestern denies that Plaintiffs are entitled to a jury trial and will be filing a motion to strike Plaintiffs' demand for a jury trial. *See Divane v. Nw. Univ.*, 953 F.3d 989, 994 (7th Cir. 2020) ("The general rule is ERISA cases is that there is no right to a jury trial because ERISA's antecedents are equitable, not legal." (quoting *McDougall v. Pioneer Ranch Ltd. P'shp*, 494 F.3d 571, 576 (7th Cir. 2007)), *vacated and remanded on other grounds sub nom. Hughes v. Nw. Univ.*, 595 U.S. 170 (2022).

34

Dated: April 23, 2026

Respectfully submitted,

*/s/ Mark C. Nielsen*
Mark C. Nielsen (N.D. Ill. No. 90785769)
Lars C. Golumbic (admitted *pro hac vice*)
Kara P. Wheatley (admitted *pro hac vice*)
Kathryn E. Panish (admitted *pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue NW, Suite 1200
Washington, DC 20006
Tel: (202) 861-5429
Fax: (202) 659-4503
mnielsen@groom.com
lgolumbic@groom.com
kwheatley@groom.com
kpanish@groom.com

Eugene A. Schoon
CROKE FAIRCHILD DUARTE & BERES
180 N. La Salle Street, Suite 3400
Chicago, IL 60601
Tel: (773) 517-2740
Email: eschoon@crokefairchild.com

*Counsel for Northwestern University*