## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATALIE BARICH, BRUCE LINDVALL, and TIMOTHY PETERSON, individually and as the representatives of a class of similarly situated persons, and on behalf of the NORTHWESTERN UNIVERSITY EMPLOYEE WELFARE PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWESTERN UNIVERSITY,<br><br>Defendant. | Case No. 1:25-cv-06849<br><br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY THE COURT'S APRIL 2, 2026 ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)** |

**INTRODUCTION**

Northwestern's motion is a waste of time and should be quickly discarded. Instead of narrowing its motion to areas in which it legitimately thinks the Court erred (and not just where the Court disagreed with Northwestern's position), Northwestern takes a kitchen-sink approach to challenge everything the Court decided, rehashing the same broad, acontextual arguments the Court has already rejected. Northwestern again relies on out-of-circuit caselaw and again ***has not identified a single decision that actually conflicts with this Court's Order***. Northwestern has plainly "failed to meet its burden of establishing that there is a substantial likelihood that this Court's ruling would be reversed on appeal." *Kane v. Loyola Univ. Chicago*, 2024 WL 6979631, at *2 (N.D. Ill. May 13, 2024) (Daniel, J.) (citing *Flynn v. Exelon Corp.*, 2022 WL 267915, at *3 (N.D. Ill. Jan. 28, 2022) (internal citations omitted); *Feit Elec. Co., Inc. v. CFL Tech. LLC*, 2019 WL 7020496, at *2 (N.D. Ill. Dec. 20, 2019)).

Northwestern has also failed to establish that at least one of the three issues it seeks to certify meets ***all four*** of the elements required for certification under § 1292(b). Instead of analyzing the merits of each issue separately, which would make clear that none of the three issues meets the § 1292(b) standard, Northwestern groups them together to obscure that fact. And even if Northwestern met its burden to show that any single issue did meet all four requirements, Northwestern still has the burden to demonstrate "'exceptional circumstances'" to "'justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Id.* (quoting *Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1001 (N.D. Ill. 2014); *NeuroGrafix v. Brainlab, Inc.*, 2020 WL 1663105, at *1 (N.D. Ill. Apr. 4, 2020) (stating that "it has long been the policy" of courts to "discourage" interlocutory appeals)). Northwestern does not even attempt to show exceptional circumstances that would make this the rare case worthy

1

of interlocutory review. Put simply, Northwestern just disagrees with the Court, as does any party that loses a motion. This doesn't warrant special treatment.

For these and all of the reasons stated *infra*, the Court should deny Northwestern's motion and adopt the proposed scheduling order at the May 21, 2026 scheduling hearing.

## ARGUMENT

### I.      Standard for Interlocutory Review Under Section 1292(b)

The Seventh Circuit has identified four conjunctive criteria "'to guide the court'" in determining whether an issue may be certified for interlocutory review: (1) whether the issue is a pure, abstract question of law; (2) that is controlling or dispositive; (3) that is contestable; and (4) whose resolution will expedite or resolve the litigation. *Andrews v. Nw. Hosp.*, 2026 WL 183756, at *1 (N.D. Ill. Jan 23, 2026) (citing *Ahrenholz v. Bd of Trs. Of the Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000)). "'Unless *all* these criteria are satisfied, the district court may not and should not certify its order to us for an immediate appeal[.]'" *Chicago Reg'l Council of Carpenters v. Prate Installations, Inc.*, 2011 WL 13210099, at *1 (N.D. Ill. July 13, 2011) (emphasis in original) (quoting *Ahrenholz*, 219 F.3d at 676)).

The inquiry does not end there. Because "'[i]nterlocutory appeals are frowned upon in the federal judicial system,'" *Kane*, 2024 WL 6979631, at *2 (quoting *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012)), a movant must not only demonstrate that the four criteria are met, but also establish "'exceptional circumstances [to] justify the departure from the basic policy of postponing appellate review until after entry of a final judgment.'" *Skybitz Tank Monitoring Corp. v. Fleetwing Corp.*, 2026 WL 1113695, at *2 (N.D. Ill. Apr. 24, 2026) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (quoting *Fisons, Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir. 1972))).

**II.     The Court's Ruling on Injury-In-Fact is Not Contestable, and A Reversal Would Not Expedite or Resolve the Litigation**

The Court correctly held that the allegation that Plaintiffs "paid more for the benefits than they should have is an injury sufficient to confer standing." ECF No. 61 ("MTD Order") at 4. Northwestern has not met its burden to show otherwise.

**A.     The Court's Holding That Allegations of Monetary Harm Establish Standing is Not Contestable**

Northwestern has not met its "'heavy burden'" to establish contestability. *Kane*, 2024 WL 6979631, at * 2 (quoting *Flynn*, 2022 WL 267915, at *3). Northwestern argues both that Plaintiffs bring a "novel theory" and also that "multiple courts outside the Seventh Circuit have reached the contrary conclusion." ECF No. 66-1 (*Northwestern's Memorandum of Law in Support of its §1292(b) motion* ("*Def's Memo*")) at 7-8. Both cannot be true. The facts of this case are unique, but there is nothing novel about the idea that allegations of financial harm confer standing at the motion to dismiss stage.[1] It is Northwestern who relies on the fringe argument that *Thole*, a case about a ***pension*** plan that did not involve any alleged financial injury, *see* MTD Order at 4 (distinguishing *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020)), requires dismissal of any case involving a ***healthcare*** plan in which participants allege a financial injury.

In support of its argument, Northwestern relies on only three out-of-circuit cases that it claims support its interpretation of *Thole*. "[Northwestern] has not identified a genuine circuit

---

[1] Even if there were not a century of caselaw confirming the Court's reasoning, "the fact that a question is unsettled or…may involve a matter of first impression may make the issue more difficult and debatable, but does not…make section 1292(b) certification appropriate without more.'" *Andrews*, 2026 WL 183756, at *3 (quoting *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 2012 WL 13209677, at *1 (N.D. Ill. Dec. 10, 2012)); *see also Rivera v. Google Inc.*, 2017 WL 11895720, at *1 (N.D. Ill. June 27, 2017) (denying certification in part because "not every legal question of first impression produces a substantial ground for difference of opinion").

split…Nor has [Northwestern] identified a genuine intra-district split on this issue" that could establish contestability. *Kane*, 2024 WL 6979631, at *2-3. Even if Northwestern's interpretation were correct, Northwestern at best has shown that reasonable minds ***could*** disagree. "But that is true of many issues in most lawsuits….Section 1292(b) is 'not intended merely to provide review of difficult rulings in hard cases.'" *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 2012 WL 13209677, at *1 (N.D. Ill. Dec. 10, 2012) (quoting *Union Cty. V. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008) (quotation omitted)). That is not enough to meet the heavy burden to establish contestability.

Moreover, none of the cases Northwestern cites actually support its interpretation of *Thole*. Nor do any conflict with this Court's decision. The cases were dismissed because the allegations of financial harm were too speculative to be linked to the alleged fiduciary breaches, not because *Thole* precludes standing even when participants allege a financial loss.

Indeed, *Winsor v. Sequoia* actively refutes Northwestern's position. *See Def's Memo*. at 8-9 (citing 62 F.4th 517, 528 (9th Cir. 2023)). There, *Thole* had no bearing on the plaintiffs' theory that misconduct by Sequoia, a third-party service provider, "led to plaintiffs paying higher contributions" in the form of increased premiums charged by their employer.[2] *Winsor*, 62 F.4th at 524. Unlike Plaintiffs here, the *Winsor* plaintiffs had not properly alleged that, absent Sequoia's misconduct, the employer would have charged them less. *Winsor* doesn't even discuss *Thole* until reaching an alternate theory of standing, that plaintiffs possessed an equitable interest in the trust that held plan assets. *Id*. at 527-529.

The same goes for *Navarro v. Wells Fargo*. *See Def's Memo* at 9 (citing 2026 WL 591454, at *9-10 (D. Minn. Mar. 2, 2026)). *Navarro* expressly acknowledges that *Thole* does ***not*** foreclose

---

[2] Importantly, the employer was not a defendant in *Winsor*. *See id*.

claims of excessive fees in the healthcare context, and that distinguishing *Thole* is "contingent upon there being some specific underlying misconduct…that can be connected to the purported harm." 2026 WL 591454, at \*9. As this Court correctly identified, those allegations exist here. Accordingly, *Navarro* agrees that allegations like Plaintiffs' would confer standing.

Finally, *Gonzalez de Fuente* is a non-precedential summary order that does ***not*** stand for the fact that financial harm is not actionable. *See Def's Memo* at 8-9 (citing *Gonzalez de Fuente v. Preferred Home Care of New York LLC*, 858 F. App'x 432, 434 (2d Cir. 2021) (summary order)).[3] However, "rather than pointing to specific overpayments, the plaintiffs in *Gonzalez de Fuente* relied solely on their New York Wage Parity Law claims to distinguish their case from *Thole*, '[a]pparently conceding that they ha[d] not claimed concrete harm under ERISA.'" *Stern v. JPMorgan Chase & Co.*, 2026 WL 654714, at \*8 (S.D.N.Y. Mar. 9, 2026) (quoting and distinguishing *Gonzalez de Fuente v. Preferred Home Care of New York LLC*, 2020 WL 5994957, at \*3 (E.D.N.Y. Oct. 9, 2020)). Northwestern has not identified any court in the Second Circuit that shares its view that *Thole* and *Gonzalez De Fuente* require dismissal of all excessive fee claims involving healthcare plans. *See, e.g., E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, 2025 WL 2371537, at \*8 (S.D.N.Y. Aug. 14, 2025) (recent case distinguishing *Thole* and finding plaintiffs had standing), *cert denied sub nom.*, *Connecticut Gen. Life Ins. Co., v. E Coast Advanced Plastic Surgery, LLC*, 2025 WL 3154472 (S.D.N.Y. Nov. 12, 2025).

In sum, Northwestern has identified ***nothing*** that conflicts with this Court's holding that allegations of monetary harm are sufficient to confer standing. Accordingly, Northwestern has not met its heavy burden to demonstrate contestability by showing that "the Opinion will be overturned

---

[3] Northwestern did not identify this as a summary order.

on appeal." *Skybitz*, 2026 WL 1113695, at *2 (emphasis added) (citing *Emley v. Wal-Mart Stores, Inc.*, 2020 WL 108374, at *5 (S.D. Ind. Jan. 8, 2020)).

### B. Certification Would Delay the Resolution of This Case

An interlocutory appeal regarding injury-in-fact would only delay the ultimate resolution of this case for at least two reasons.

First, if Northwestern were to prevail on appeal, Plaintiffs would request the chance to amend their complaint to incorporate the contents of the Plan Document. As with most ERISA plans, the Plan Document is not publicly available and is not provided to Plan participants. ERISA provides a procedure in which a participant can formally request a copy of a plan document. *See* 29 U.S.C. § 1024(b)(4). Because Plaintiffs alleged that their claims do not hinge on the contents of the Plan Document, Plaintiffs filed their complaint without requesting a copy. In its initial motion, Northwestern argued that the Plan Document insulates it from liability, but filed only a 6-page excerpt of the 36-page document. *See* ECF No. 48-07. Northwestern then filed a complete copy of the Plan Document for the first time on reply. *See* ECF No. 54-06. Plaintiffs requested a surreply to respond, but the Court correctly found that the issue was irrelevant and that Plaintiffs' proposed surreply was unnecessary.

If the Court certified its Order and the Seventh Circuit found that Plaintiffs lacked standing, fundamental fairness would require allowing Plaintiffs to amend their complaint to incorporate the Plan Document and cure that defect. Indeed, even Northwestern acknowledges that alleging a failure to abide by a plan document confers standing. *See* ECF No. 54 at 3 (Northwestern's reply brief conceding a "narrow exception" to *Thole*); *see also* ECF No. 55-01 at 5-8 (Plaintiffs' proposed surreply addressing the failure to follow the terms of the Plan Document). Thus, the Seventh Circuit's opinion on standing would "have become academic by the end of the litigation

6

in district court, making an interlocutory appeal a gratuitous interruption and retardant of the district court proceedings.'" *Rogue v. Roofers' Unions Welfare Tr. Fund*, 2014 WL 13110704, at *1 (N.D. Ill. Sept. 29, 2014) (quoting *Sterk*, 672 F.3d at 536).

Second, Plaintiffs' § 502(a)(3) claims for equitable relief would move forward regardless because Plaintiffs allege statutory violations. Thus, "Plaintiffs need not demonstrate individualized injury to proceed with their claims for injunctive relief under § 1132(a)(3); they may allege only violation of the fiduciary duty owed to them as a participant in and beneficiary of their respective ERISA plans." *Loren v. Blue Cross and Blue Shield of Mich.*, 505 F.3d 598, 610 (6th Cir. 2007) (alleged violation of failure to disclose establishes Article III standing). Here, Plaintiffs stated a claim that Northwestern breached its fiduciary duties by failing to disclose material information regarding the Plan. *See* MTD Order at 7. This is the only part of the Court's Order that Northwestern does not challenge. "Accordingly, even without a personal financial injury, [Plaintiffs] ha[ve] standing to maintain [their] claims for surcharge…based on [their] allegations of breach of fiduciary duty*." Peters v. Aetna Inc.*, 2 F.4th 199, 220-21 (4th Cir. 2021); *see also Peters v. Aetna, Inc.*, 2023 WL 3829407 at *7 (W.D.N.C. June 5, 2023) (on remand, rejecting the argument that *Thole* should have mooted the Fourth Circuit's analysis and holding that "Plaintiff continues to have Article III standing to assert claims for disgorgement [and] surcharge [under § 502(a)(3)]…both as an individual participant and on behalf of her Plan, without proof of a financial loss").

The Seventh Circuit warns against certification because it "'too frequently cause[s] unnecessary delays in lower court proceedings and waste[s] the resources of an already overburdened judicial system.'" *Andrews,* 2026 WL 183756, at *3 (quoting *Herdich v. Pegram*,

7

154 F.3d 362, 368 (7th Cir. 1998), *rev'd on other grounds*, 530 U.S. 211 (2000)). This is exactly what would happen here. Accordingly, Northwestern's motion should be denied.

**III.** **Northwestern Waived its Redressability Argument, And Even If It Had Not, The Issue is Not Controlling, Would Not Expedite the Litigation, And is Not Contestable**

**A.** **Northwestern Waived Its Redressability Argument**

The Court correctly found that Northwestern waived any argument that Plaintiffs lacked standing because their claims are not redressable by: (1) failing to argue in its initial brief that Plaintiffs' § 502(a)(3) claims were not redressable; and (2) arguing that Plaintiffs' § 502(a)(2) claims were not redressable in only one underdeveloped footnote, which was contained in a separate section of the brief that did not address standing.

Northwestern argues that it can never waive a standing argument. *See Def's Memo* at 10. Maybe, but Northwestern cites no authority suggesting that a party can seek interlocutory appeal of an argument that it failed to raise in the district court. If redressability is truly a winning argument (which it is not), Northwestern can raise it at summary judgment.

**B.** **Redressability is Not Dispositive and Would Not Streamline the Litigation**

Even if it were not waived, Northwestern's redressability argument would have little impact on the litigation because the argument applies only to claims for prospective relief, not retrospective payments for harm that has already occurred. Northwestern argues that the claims are not redressable because, if Plaintiffs prevailed and were awarded a judgment, Northwestern could simply raise Plan costs to recoup that judgment. Northwestern is wrong about that, but even if it were correct, it could not possibly apply to former Plan participants like Plaintiffs Barbich and Lindvall. Their injuries would be redressed through a damages award, and they would not be subject to any future cost increases that Northwestern may or may not choose to make as punishment for this lawsuit. Accordingly, this case would move forward regardless, and granting

8

certification on this issue would burden the Seventh Circuit without materially altering any burden on this Court or the parties.

### C. Redressability is Not Contestable

Northwestern has not shown a substantial difference of opinion with respect to whether Plaintiffs injuries are redressable. As with injury-in-fact, Northwestern identifies no intra-circuit conflict or circuit split on the issue. Nor does it identify *any* cases involving similar allegations in which some participants in a plan pay more for the same healthcare services than other participants in the same plan. Northwestern simply disagrees with the Court's opinion. Even if that disagreement were warranted, "[s]ection 1292(b) is 'not intended merely to provide review of difficult rulings in hard cases.'" *R.J. O'Brien*, 2012 WL 13209677, at *1 (quoting *Union Cty.*, 525 F.3d at 646). Northwestern has again failed to show a "substantial grounds for difference of opinion" that could warrant certification. *Zikis v. Pfizer, Inc.*, 2005 WL 3274701, at *2 (N.D. Ill. Aug. 8, 2005) (internal quotations omitted) citing *Ahrenholz*, 219 F.3d at 675-76; *Shepherd v. Verizon Communications, Inc.*, 2005 WL 1475323, at *2 (E.D. Wis. 2005)).

## IV. Northwestern Has Failed to Meet Its Burden on Fiduciary Status

Northwestern has failed to demonstrate that its arguments regarding fiduciary status meet any of the four factors required under § 1292(b).

### A. Fiduciary Status is Not a Pure Question of Law, Nor is the Court's Opinion Contestable

The Court correctly held that Plaintiffs sufficiently alleged that Northwestern acted as a fiduciary with respect to the challenged conduct, reasoning that (1) the terms of the Plan Document do not excuse Northwestern from its fiduciary responsibilities; and (2) "given the fact-intensive inquiry" regarding fiduciary status, the question is "better suited for resolution at summary judgment (or trial)." MTD Order at 5 (citing *Patten v. N. Tr. Co.*, 703 F. Supp. 2d 799, 808-09

9

(N.D. Ill. 2010) (citing *George v. Kraft Foods Global, Inc.*, 674 F. Supp. 2d 1031, 1049-50 (N.D. Ill. 2009); *Porterfield v. Orrecchio*, 2008 WL 130921, at *3 (N.D. Ill. Jan. 9, 2008)). Each line of reasoning defeats certification.

First, whether the terms of the Plan Document excuse Northwestern's actions, as Northwestern argues, is essentially a question of contract interpretation. *See, e.g., In re Sears Retiree Group Life Ins. Litigation*, 90 F.Supp.2d 940, 951 (N.D. Ill. 2000) (citing *Hammond v. Fidelity and Guar. Life Ins. Co.*, 965 F.2d 468, 430 (7th Cir. 1992) ("[A]ny ambiguities in ERISA plans and insurance policies should be resolved by referring to the federal common law rules of contract interpretation."). "District courts in this Circuit…have routinely denied petitions for interlocutory appeal for questions of contract interpretation." *Rogue*, 2014 WL 13110704, at *2 (citing *Padilla v. DISH Network, L.L.C.*, 2014 WL 539746, at *5-6 (N.D. Ill. Feb. 11, 2014); *Sauter v. Perfect N. Slopes, Inc.,* 993 F. Supp. 2d 926, 936 (S.D. Ind. 2014), *motion to certify appeal denied* (May 5, 2014); *United States ex rel. Chilcott v. KBR, Inc.,* 2013 WL 6797391, at *2 (C.D. Ill. Dec. 23, 2013); *Merrill v. Briggs & Stratton Corp.*, 2012 WL 663819, at *1 (E.D. Wis. Feb. 29, 2012)). Accordingly, interpreting the Plan Document to determine whether it immunizes Northwestern is not the type of pure, "abstract legal issue" that is appropriate for certification under § 1292(b). *Kurowski v. Rush Sys. For Health*, 2024 WL 3455020, at *6 (N.D. Ill. July 18, 2024) (quoting *Arenholz*, 219 F.3d at 677).

Second, courts across the country have long agreed that the question of fiduciary status is ***not*** a pure question of law, but a "fact-intensive" analysis better-suited for resolution at a later stage. *See, e.g., Forgione v. Gaglio*, 2015 WL 718270, at *7 (S.D.N.Y. Feb. 13, 2015) (The Second Circuit "has recognized Congress' intention that ERISA's definition of fiduciary be broadly construed" so "Courts in this circuit" recognize that "the existence of a fiduciary duty is a fact-

10

intensive inquiry" and "dismissal on the pleadings is usually inappropriate") (citations and internal quotations omitted); *In re AME Church Emp. Ret. Fund. Litig.*, 2025 WL 2713767, at \*15 (W.D. Tenn. Sept. 23, 2025) (collecting cases finding it is premature to decide fiduciary status on a motion to dismiss); *In Re AEP ERISA Litig.*, 327 F.Supp.2d 812, 827 (S.D. Ohio 2004) (same); *In Re Electronic Data Systems Corp. ERISA Litig.*, 305 F.Supp.2d 658, 665 (E.D. Tex. 2004) (same); *In re Xcel Energy, Inc., Securities, Derivative & ERISA Litig.*, 312 F.Supp.2d 1165, 1180-81 (D. Minn. 2004).[4] Accordingly, Northwestern has not shown that this is a pure, abstract question of law that the Seventh Circuit can resolve on the pleadings.[5]

---

[4] In *Stern v. JPMorgan Chase & Co.*, the Court held that the decision as to whether to adopt a "traditional" PBM model rather than a "pass-through" PBM model was a settlor and not a fiduciary function. *See* 2026 WL 654714, at \*12 (S.D.N.Y Mar. 9, 2026). This is akin to Plaintiffs challenging the decision to select a PPO as a health-insurance network instead of an HMO, which are not the allegations here. Moreover, the DOL's amicus brief in *Hutchins* agreed that determining whether to fund the plan with employee forfeitures was "a quintessential fiduciary decision" because the defendant "exercised discretion and control" over that decision. ECF No. 54-8 at 15 (citing *Hughes Aircraft Co. v Jacobson*, 525 U.S. 432, 444 (1999); *Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1342 (9th Cir. 1994) (holding that implementation of a plan design decision that involves discretionary control is a fiduciary act)). In other words, the DOL agrees that regardless of whether the decisions of how to allocate plan costs are settlor decisions, those decisions still must result from a prudent and loyal process. *Id*. at 22. The DOL sided with the defendant because it disagreed that the plaintiffs plausibly alleged that the process was imprudent, not because the decision in question was a settlor decision. *Id*. at 3. Northwestern's selective, out-of-context citations cannot meet their burden.

[5] *Larson v. United Healthcare Ins. Co.* and *Alton Mem'l Hosp. v. Metro Life Ins. Co.* do not help Northwestern. *See Def's Memo* at 4 (citing 723 F.3d 905, 917 (7th Cir. 2013); 656 F.2d 245, 249050 (7th Cir. 1981)). *Alton* is not actually an ERISA case, finding that the hospital inappropriately attempted to turn its affirmative defense of contributory negligence into an ERISA counter-claim against the insurance company. *See* 723 F.3d at 248. *Larson,* which was not an interlocutory appeal, alleged a per-se violation of Wisconsin law by the insurer, not a procedural failure to evaluate plan fees by the employer. *See* 723 F.3d 905 ("The legal premise of the suit is that [a Wisconsin statute] prohibits health insurers from including any chiropractic copays in their [insurance] policies.") (emphasis in original)

11

**B.** **The Fiduciary Status Question is Not Dispositive, Nor Does It Streamline the Litigation**

Regardless of whether the Court certifies its Order with respect to fiduciary status, the case will continue on the exact same discovery track because Northwestern does not (and cannot) dispute that it acted as a fiduciary with respect to Count II, Plaintiffs' failure to inform claim. Accordingly, an interlocutory appeal on fiduciary status will not materially alter discovery or lead to a timelier resolution of this case.

**V.** **Northwestern Has Failed To Demonstrate Exceptional Circumstances**

Even if Northwestern had satisfied the four factors required for certification, it has still failed to meet its burden to show "exceptional circumstances" to warrant early appellate review. *Andrews*, 2026 WL 183756, at \*2 (citations omitted). Northwestern has not even attempted to show exceptional circumstances. It argues that, if the Court does not grant the motion, it will be subject to discovery. As will any defendant in any case. Northwestern claims that Plaintiffs have served "overly broad" discovery requests. *Def's Memo* at 14. Even if that were true, the remedy is not immediate certification of an interlocutory appeal. The parties have already met and conferred to discuss Northwestern's concerns regarding the scope of the requests and will continue to do so.

Northwestern again cries wolf, this time claiming that the Court's Order will "result in a new wave of ERISA class action litigation regarding health plan costs." *Def's Memo* at 8.[6] There are several problems with that argument. For one, Northwestern paradoxically cites data regarding litigation that has already happened, almost all of which involves allegedly illegal tobacco

---

[6] This argument is in the eye of the beholder. For example, Plaintiffs could make the same, unsupported policy argument that granting certification in an unexceptional case like this would open the floodgates to a "wave" of baseless § 1292(b) motions any time a party is frustrated with a court's ruling. These biased arguments should serve as a red flag, indicating that a party's frustration is less about the merits of the court's decision and more about the party's ideology.

surcharges that violate the Affordable Care Act. *See id.*[7] That is a completely different type of lawsuit, and the fact that numerous tobacco surcharge cases have been filed has nothing to do with whether an interlocutory appeal is appropriate in this or any case. The same article also identifies that, "[a]t the beginning of 2024, it was forecasted that excessive fee allegations targeting the cost of prescription drugs in health plans would become the next wave of ERISA litigation" before identifying that were ***only three such cases*** filed across the country over a 2-year span, two in 2024 and one 2025.[8] Additionally, Northwestern assumes without proof that this Court is wrong, and that any similar lawsuits against employers who mismanage their healthcare plans would be unjust. This false assumption ignores the fact that Northwestern conceded that it offered a PPO option that wasted participants' money and belatedly corrected its mistake only after this lawsuit was filed. Northwestern's argument is glaring proof that Northwestern simply doesn't like the order, not that interlocutory review is warranted.

## VI.    A Stay is Not Warranted

Finally, even if the Court grants Northwestern's motion, a stay of discovery is not warranted. As discussed *supra*, Plaintiffs' failure to inform claim will proceed regardless of whether the Seventh Circuit agrees with the Court's decision.[9] There is no reason to stay discovery

---

[7] *See Def's Memo* at 8 n.3 (citing Justin Bove, *22% of ERISA Lawsuits in 2025 Involved Health Plans*, PLAN ADVISER: DATA & RESEARCH (Mar. 2, 2026).

[8] *See id.*

[9] Northwestern again steals one out-of-context line to argue that Plaintiffs' claims are "extremely dubious" and thus a stay is warranted. *Def's Memo* at 15 (quoting *In Re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010)). In that case, the Seventh Circuit accepted certification because it involved an interpretation of *Twombly*, which at that time was a new pleading standard. *See In Re Text Messaging Antitrust Litig.*, at 626-627. And the Seventh Circuit did not find the claims dubious, as Northwestern implies. Instead, it agreed with the district court that the complaint "provides a sufficiently plausible case of price fixing to warrant allowing the plaintiffs to proceed to discovery." *Id.* at 629. Northwestern has provided zero evidence that Plaintiffs claims are "extremely dubious."

on that claim, which involves much of the same discovery as the claim Northwestern seeks to review. And even if the Order is certified, the odds that the Seventh Circuit will actually accept Northwestern's petition are slim. *See Ahrenholz*, 219 F.3d at 675 (identifying that the Seventh Circuit has granted only six of 31 petitions for interlocutory appeal in the time period analyzed). Staying discovery when the Seventh Circuit would likely deny the petition is unnecessary, especially where Northwestern has failed to establish a substantial likelihood that it will prevail on appeal.

## **CONCLUSION**

For the above reasons, Defendants' motion to certify the Court's April 2, 2026 Order for interlocutory appeal under § 1292(b) should be denied.

Dated: May 15, 2026

**NICHOLS KASTER, PLLP**

s/Brock J. Specht
Brock J. Specht (admitted *pro hac vice*)
Benjamin Bauer (admitted *pro hac vice*)
80 S. 8th Street, Suite 4700
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
bspecht@nka.com
bbauer@nka.com

**THE PRINZ LAW FIRM, P.C.**

Amit Bindra, (IL 6308593)
1 East Upper Wacker Drive, Suite 2500
Chicago, IL 60601
Telephone: (312) 212-4450
Facsimile: (312) 284-4822
abindra@prinz-lawfirm.com

**DON BIVENS, PLLC**

Don Bivens
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661

**ATTORNEYS FOR PLAINTIFFS**

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/Brock J. Specht<br>
Brock J. Specht

16