**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| NATALIE BARBICH, BRUCE LINDVALL, and TIMOTHY PETERSON, individually and as the representatives of a class of similarly situated persons, and on behalf of the NORTHWESTERN UNIVERSITY EMPLOYEE WELFARE PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWESTERN UNIVERSITY, <br><br> Defendant. | Case No. 1:25-cv-06849 <br><br> Hon. Jeremy C. Daniel <br><br> Leave to file granted May 27, 2026 [Dkt. 75] |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO CERTIFY AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
<u>AND STAY DISCOVERY</u>**

**INTRODUCTION**

In its April 2, 2026 Order[1], the Court made three rulings of law that are crucial to the further course of this action, and may very well impact employers across the nation beyond Northwestern:

1. The Court held that Plaintiffs alleged a concrete injury in fact by claiming they "paid more" for health benefits than they should have (the "Concrete Injury Question");

2. The Court declined to consider whether Plaintiffs' claims were redressable where any recovery would go to the Plan and neither ERISA nor the Plan require Northwestern to distribute any recovery to Plaintiffs or reduce the cost of coverage going forward (the "Redressability Question"); and

3. The Court held that Northwestern acted as a fiduciary when implementing annual plan design decisions such as what coverage options to offer and what premiums and cost share to charge participants (the "Fiduciary Act Question").

Northwestern filed its Motion asking the Court to certify these three Questions for interlocutory appeal because they meet the four criteria under 28 U.S.C. § 1292(b). The Questions are all (1) pure questions of law that are (2) controlling and (3) contestable, and (4) their resolution will speed up the litigation. *See Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000).

Plaintiffs devote most of their Opposition (Dkt. 70) ("Opp'n") to arguing that the Questions are not "contestable" and will not "speed up" the litigation.[2] But Plaintiffs mischaracterize the facts and holdings of multiple cases presented in the Motion, which demonstrate that conflicting decisions of district and appellate courts exist with respect to each of the Questions. And, Plaintiffs' argument that interlocutory appeal will not "speed up" the litigation misses the mark. If the Seventh Circuit concluded that Plaintiffs lacked Article III standing, or that they challenged

---

[1] Unless otherwise noted, capitalized and abbreviated terms used herein are defined in the Memorandum of Law in Support of Defendant's Motion to Certify an Interlocutory Appeal Under 28 U.S.C. § 1292(b) and Stay Discovery (Dkt. 66-1) ("Motion" or "Mot.").

[2] Plaintiffs do not dispute, and thus concede, that the Concrete Injury and Redressability Questions are questions of law. *See Lacy v. Progressive Direct Ins. Co*, No. 15-cv-50110, 2016 WL 25717, at *2 (N.D. Ill. Jan. 4, 2016) (A litigant concedes an "argument[] by failing to respond to" it).

settlor rather than fiduciary activity, this case would be dismissed in whole or significant part.

Plaintiffs also urge the Court to adopt a stringent "exceptional circumstances" test not found in § 1292(b). But even if such a test did apply, it is met here. Plaintiffs bring a new legal theory: that an employer is liable as a fiduciary when an employee chooses an employer-provided health coverage option that the employee believes is too expensive. It poses new and substantial risks; not only for Northwestern, but for countless other employers that sponsor self-funded health plans. No other court has recognized this novel theory. The Seventh Circuit should have an opportunity to consider this new risk before the ERISA plaintiffs' bar unleashes it more broadly.

In addition to certifying each of the Questions, the Court should stay discovery pending interlocutory appeal to the Seventh Circuit. Plaintiffs identify no prejudice from a stay, and they do not dispute that Northwestern would disproportionately bear the cost and burdens of discovery. For all of these reasons, as discussed further below, the Court should grant the Motion, certify the Questions for interlocutory review by the Seventh Circuit, and stay discovery.

## **ARGUMENT**

### I.     The Court Should Certify the Concrete Injury Question

#### A.     The Concrete Injury Question is Contestable

Plaintiffs sidestep whether the Concrete Injury Question is contestable by attempting to reframe the Question that Northwestern seeks to certify. The Question is ***not*** whether mere "allegations of financial harm confer standing." Opp'n at 3. Rather, the Question is whether, under *Thole v. U.S. Bank, N.A.*, 590 U.S. 538 (2020), a plaintiff has suffered a concrete injury in fact where the plaintiff claims to have overpaid for health coverage but received all benefits owed under the plan. *See* Mot. at 1. This Court distinguished *Thole* and held that Plaintiffs alleged an injury in fact by claiming they "paid more for benefits than they should have." Order at 4.

There are "a substantial number of decisions conflicting with" the Order that demonstrate

2

the Concrete Injury Question is contestable. *Feit Elec. Co., Inc. v. CFL Techs. LLC*, No. 13-cv-09339, 2019 WL 7020496, at *2 (N.D. Ill. Dec. 20, 2019). Contrary to Plaintiffs' argument, *see* Opp'n at 3-4, a "circuit split" or "intra-district split" is not required to establish contestability. *See, e.g.*, *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2026 WL 594752, at *5 (N.D. Ill. Mar. 3, 2026) (certifying appeal where the "Seventh Circuit has not spoken to the question at hand" and "courts across the country are all over the map" regarding the question); *In re Lion Air Flight JT 610 Crash*, No. 18-cv-07686, 2023 WL 3653217, at *4 (N.D. Ill. May 25, 2023) (certifying question based on three contrary decisions from courts outside the Seventh Circuit); *Feit Elec. Co.*, 2019 WL 7020496, at *2 (certifying question based on single conflicting Federal Circuit decision).

Northwestern identified three decisions in which courts applied *Thole* to hold that a health plan participant who alleges that they overpaid for coverage—but received all promised plan benefits—failed to allege an injury in fact. *See* Mot. at 8-10. Plaintiffs claim that these decisions are not applicable and do not conflict with the Court's decision. *See* Opp'n at 4. But Plaintiffs misrepresent each of the cases, which stand for the proposition that an allegation of overpayment for health benefits, standing alone, is insufficient to allege an injury in fact under Article III:

- *Winsor v. Sequoia Benefits & Insurance Services, LLC*, 62 F.4th 517, 527-29 (9th Cir. 2023), rejected the plaintiffs' "second theory of injury"[3] that they could obtain equitable relief based on a purported equitable ownership interest in plan assets. Applying *Thole*, the court held that the plaintiffs were not entitled to plan assets because they received all benefits owed under the plan, which was akin to a defined benefit pension plan. *See id.*

- *Gonzales de Fuente v. Preferred Home Care of New York LLC*, 858 F. App'x 432, 434

---

[3] The court found that the plaintiffs' first theory of injury—that eliminating or reducing the broker's commissions and fees would lower premiums—was speculative. *Winsor*, 62 F.4th at 524.

(2d Cir. 2021), held that the plaintiffs' allegation that they "might have received *better* health benefits or a cash alternative" if their employer had not violated a state wage law failed to establish an Article III injury. *Id.* The court applied *Thole* to hold that plaintiffs received all promised benefits to which they were legally entitled and there was no risk that they would not receive their promised benefits in the future. *Id.*[4]

- *Navarro v. Wells Fargo & Co.*, No. 24-cv-3043, 2026 WL 591454, at *8-11 (D. Minn. Mar. 3, 2026) ("*Navarro II*"), applied *Thole*, *Winsor* and *Gonzalez de Fuente* to hold that the plaintiffs failed to allege an injury on the basis that they overpaid for health coverage because they received all promised plan benefits.[5]

The same analysis that these courts employed is applicable here—the Seventh Circuit likely would find Plaintiffs do not have standing based on their overpayment allegations.

### B. Resolution of the Concrete Injury Question Would Speed Up the Litigation

Plaintiffs seek to throw up a smokescreen in arguing that their failure to allege a concrete injury somehow would not end the case. *See* Opp'n at 6-8. They claim that if the Seventh Circuit found they failed to establish an injury, they would employ a workaround by amending their complaint to incorporate the terms of the Plan. *See* Opp'n at 6. But such an amendment would be irrelevant to the issue before the Seventh Circuit—whether *Thole* requires the dismissal of

---

[4] *Stern v. JPMorgan Chase & Co.*, No. 1:25-cv-02097, 2026 WL 654714, at *7-8 (S.D.N.Y. Mar. 9, 2026) distinguished *Gonzalez de Fuente* because the plaintiffs there advanced a different theory—that they made "specific overpayments" for prescription drugs (*i.e.*, they paid more cost share than they should have under the plan due to the employer's failure to prudently manage the pharmacy benefit manager). Plaintiffs' allegations are like those in *Gonzalez de Fuente*; not *Stern*.

[5] Plaintiffs rehash their argument that *East Coast Advanced Plastic Surgery, LLC* supports their standing claim. *See* Opp'n at 5; Pls. Opp'n to Mot. to Dismiss (Dkt. 53) at 3 n.3. Even if that case were relevant—which it is not, since it did not involve allegations by participants in self-funded health plans that they paid too much for coverage—the existence of a case coming out the other way from *Winsor*, *Gonzalez de Fuente*, and *Navarro II* would only serve to establish contestability.

4

Plaintiffs' claims because they do not allege that they failed to receive any promised Plan benefits, and they otherwise fail to allege any misconduct that diminished their contractual benefits. Plaintiffs do not point to any Plan term that would cure such a standing defect. *See* Opp'n at 6.

Plaintiffs also argue their ERISA section 502(a)(3) claims would move forward regardless of the resolution of the Concrete Injury Question because they allege statutory violations, Opp'n at 7, but Plaintiffs misstate the law. As Northwestern previously explained, Plaintiffs must establish *each element* of Article III standing—including a concrete injury—for their section 502(a)(3) claims. A statutory violation, in itself, is insufficient to establish standing. *See Thole*, 590 U.S. at 544 ("Article III standing requires a concrete injury even in the context of a statutory violation.") (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)); *see also* Reply in Support of Mot. to Dismiss (Dkt. 54) at 4-5. Plaintiffs rely on the same caselaw they cited in the underlying motion to dismiss briefing, which is contrary to *Thole* and *Spokeo*. *See* Dkt. 54 at 5 n.6.

## II. The Court Should Certify the Redressability Question

### A. Redressability is Not Waivable

Northwestern did not waive its redressability argument. If Plaintiffs' alleged injury is not redressable, the Court lacks subject matter jurisdiction. Arguments regarding subject matter jurisdiction cannot be waived—even by "failing to . . . make [them] by motion under [Rule 12]." Fed. R. Civ. P. 12(h)(1). That is because a court "must" dismiss "[i]f [it] determines *at any time* that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3) (emphasis added). If Plaintiffs' claims are not redressable, and the Court lacks subject matter jurisdiction over them, the case "must" be dismissed *now*; not at summary judgment as Plaintiffs claim. Opp'n at 8.

### B. The Redressability Question is Controlling and Would Speed Up the Litigation

If the Seventh Circuit determined that Plaintiffs' claims are not redressable, this litigation would be over. As a result, the issue is controlling and its resolution would streamline the

5

litigation. *See Martin v. Goodrich Corp.*, 95 F.4th 475, 478 (7th Cir. 2024).

Plaintiffs' assertion that "Northwestern's redressability argument would have little impact on the litigation because the argument applies only to claims for prospective relief, not retrospective payments for harm that has already occurred," is not supported by *any* authority. *See* Opp'n at 8 (citing no caselaw in Section III.B). Plaintiffs' claim for money "damages" under ERISA section 502(a)(2) is not redressable because any recovery would go *to the Plan*, and no mechanism exists for the Court to mandate that such recovery be paid out to participants. *See* Mot. at 10. Plaintiffs' ERISA section 502(a)(3) claims are not redressable because they cannot (and have not) identified how much their coverage should cost, in light of Northwestern's authority to determine employee cost-share and the fact that Northwestern could not be required to lower coverage costs prospectively.[6] *See* Opp'n at 8; *Navarro II*, 2026 WL 591454, at *10.

### C. The Redressability Question is Contestable

Plaintiffs claim that the Redressability Question is not contestable, but they fail to support their argument with any meaningful analysis. *See* Opp'n at 9. Plaintiffs do not address any of the conflicting decisions that Northwestern identified in its opening brief (including *Winsor*, *Glanton*, and *Navarro II*), *see* Mot. at 10-11, or explain why the Seventh Circuit could not apply those decisions to find that Plaintiffs have failed to establish that their claims are redressable.

## III. The Court Should Certify the Fiduciary Act Question

### A. The Fiduciary Act Question is a Pure Question of Law

Whether Northwestern acted as a fiduciary when "monitoring and selecting plan options," Order at 5, is a pure question of law that the Seventh Circuit can decide "quickly and cleanly

---

[6] Plaintiffs incorrectly conflate "Plan costs" (*i.e.*, amounts the Plan pays to plan service providers, such as the pharmacy benefit manager and third-party administrator, for services) and the cost of coverage (*i.e.*, the amount that is charged to employees to purchase coverage). *See* Opp'n at 8.

without having to study to record[.]" *Ahrenholz*, 219 F.3d at 676-77. While this Court held that "the actual finding of whether Northwestern is acting as a settlor or a fiduciary is a question better suited for resolution at summary judgment (or trial)," Order at 5, Plaintiffs admit that the Court did not identify any question of fact regarding whether the "select[ion] and monitoring" of health coverage options, *id.*, is a fiduciary function. *See* Opp'n at 9-11; *cf.* Mot. at 4.

Plaintiffs identify no reason why the Seventh Circuit could not determine, as a matter of law, whether such conduct is settlor or fiduciary in nature. Indeed, many of the decisions cited in Northwestern's prior filings have addressed that very issue—whether a plan design or funding decision (and the "implementation" of such a decision) is settlor or fiduciary in nature—at the pleadings stage. *See, e.g.*, *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 917 (7th Cir. 2013); *Bator v. Dist. Council 4*, 972 F.3d 924, 931-32 (7th Cir. 2020); *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367-68 (2d Cir. 2014); *Stern*, 2026 WL 654714, at *12.

Plaintiffs attempt to create a question of fact by claiming the determination of whether Northwestern acted as a fiduciary requires interpretation of the Plan. *See* Opp'n at 10. But the Court did not cite any Plan term when holding that Plaintiffs plausibly pleaded Northwestern was acting as a fiduciary as to the conduct at issue. *See* Order at 4-5. And neither Plaintiffs nor the Court have identified any Plan term the Seventh Circuit could not interpret as a matter of law. *See id.*; Opp'n at 9-11. Courts regularly interpret and apply ERISA plan terms at the pleadings stage. *See, e.g.*, *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 545 (7th Cir. 2022) (affirming dismissal of denial of benefits claim because "Plaintiffs' suggested reading [of plan terms] is wrong"); *Bator*, 972 F.3d at 930-31 (affirming dismissal of fiduciary breach claim based, in part, on interpretation of plan terms); *Smith v. Midwest Operating Engineers Pension Fund*, No. 23-cv-4552, 2025 WL 2614675, at *5-6 (N.D. Ill. Sept. 10, 2025) (dismissing fiduciary breach

7

claim based, in part, on interpretation of plan terms); *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 894-95 (C.D. Ill. June 30, 2025) (same).

Plaintiffs also try to recast the challenged conduct as Northwestern's "procedural failure to evaluate plan fees." Opp'n at 11 n.5. But in doing so, Plaintiffs (again) incorrectly conflate costs and fees paid by the Plan to plan service providers with Northwestern's settlor decision regarding the purchase price for coverage, *see* note 6 *supra*—the matter at issue in *Larson* and *Stern*.

Plaintiffs claim that fiduciary status is a fact-intensive issue, but they cite inapposite cases involving disputed questions regarding control and disposition of plan assets. *See In re AME Church Emp. Ret. Fund Litig.*, No. 1:22-md-3035, 2025 WL 2713767, at *15 (W.D. Tenn. Sept. 23, 2025) (factual dispute regarding knowledge that employee had "authority to direct the disposition of Plan assets"); *Forgione v. Gaglio*, No. 13-cv-9061, 2015 WL 718270, at *7 (S.D.N.Y. Feb. 13, 2015) ("barely" alleging defendant was fiduciary when receiving and investing plan assets for a fee). Those cases are irrelevant to whether plan design and funding decisions, which are not dependent on disputed questions of fact, are fiduciary in nature as a matter of law.[7]

### B.     The Fiduciary Act Question is Contestable

Plaintiffs do not meaningfully dispute that the Fiduciary Act Question is contestable. They disagree with the authority holding that plan design and funding decisions are settlor decisions. *See* Opp'n at 11 n.4-5. But Plaintiffs do not dispute that (1) multiple decisions courts have held that employers act as settlors when setting the amount employees contribute towards their health coverage and (2) these decisions conflict with the Court's Order. *See* Mot. at 11-13.

While Plaintiffs disagree with the import of the Department of Labor's *amicus* brief in

---

[7] Plaintiffs also cite three decisions at page 11 of their Opposition—*In re AEP ERISA Litigation*, *In re Electronic Data Systems Corp.*, and *In re Xcel Energy, Inc.*—that preceded *Twombly* and *Iqbal* and thus applied an outdated pleading standard. Moreover, none of those decisions addressed plan design and funding decisions analogous to those at issue here.

*Hutchins*,[8] they do not dispute that the Department took the position that plan funding decisions are settlor in nature and that plan funding ***cannot*** be dictated by a fiduciary. *See* Opp'n at n.4; *cf.* Mot. at 12. Nor do Plaintiffs even address the Department's *amicus* brief in *Winsor*,[9] where the Department stated that the setting of contribution and cost-sharing amounts for health coverage is settlor conduct. *See* Mot. at 12. Plaintiffs do not dispute that the distinction between settlor and fiduciary functions would be meaningless if the "implementation" of ***any*** settlor decision amounted to fiduciary conduct. *See* Mot. at 13. Indeed, Plaintiffs admit that the Order identifies ***no*** act of fiduciary discretion that Northwestern took in implementing the settlor's plan design. *See id*. This distinguishes the present case from the authority Plaintiffs cite. Opp'n at 11 n.4.

In sum, the Motion cites authority that plainly demonstrates the Fiduciary Act Question is contestable. *See Stein*, 2026 WL 594752, at * 5 (granting certification even though the court did not "view the substantive issue at hand as a close question" because "other courts disagree[d]").

**C.**     **The Fiduciary Act Question is Controlling and Would Speed Up the Litigation**

Plaintiffs claim that resolution of the Fiduciary Act Question is not "dispositive" because their disclosure claim (Count II) would proceed even if the Seventh Circuit finds that Northwestern acted as a settlor when it selected and monitored health coverage options. Opp'n. at 12. But a "dispositive" resolution is not required. Interlocutory appeal is appropriate even if there is a prospect that a case may proceed in a narrowed form. *See* Mot. at 6 (citing *Stern v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536-37 (7th Cir. 2012)); *see also* Mot. at 4-5.

Resolution of the Fiduciary Act Question would save substantial time and expense for the Court and the parties. Even if Count II proceeded, the remaining legal and factual issues would

---

[8] Br. of the U.S. Sec'y of Labor, *Hutchins v. HP Inc.*, No. 26-826 (9th Cir. July 9, 2025), Dkt. 24.

[9] Br. of the U.S. Sec'y of Labor, *Winsor v. Sequoia Benefits & Ins. Servs. LLC*, No. 21-16992 (9th Cir. Mar. 16, 2022), Dkt. 22.

be dramatically narrowed. *See* Mot. at 5; Section V *infra*. Further, resolution of this threshold question of law would speed up the litigation because it would confirm whether Plaintiffs' claims are legally viable and, in turn, inform the potential settlement value of the case. *See* Mot. at 6; *see also Stein*, 2026 WL 594752, at *5 ("[A]n early resolution can save resources" and "[g]etting certainty sooner rather than later can promote settlement by giving a dose of reality, too.").

### IV.     "Exceptional Circumstances" Are Not Required, But They Are Present Here

Plaintiffs assert that Northwestern must establish that "exceptional circumstances" justify interlocutory appeal. *See* Opp'n at 2. But no such requirement appears in § 1292(b). To the contrary, the Seventh Circuit has held that district courts have a "duty . . . to allow an immediate appeal to be taken when the [four] statutory criteria are met," *Ahrenholz*, 219 F.3d at 677, as multiple courts in this district have recognized when addressing certification motions.[10] *See, e.g.*, *Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1001 (N.D. Ill. 2014) ("[W]hen the statutory criteria are met, the District Court has a duty to allow the appeal."); *Armstrong v. La Salle Bank, N.A.*, No. 01-cv-2963, 2007 WL 704531, at *2 (N.D. Ill. Mar. 2, 2007) (same); *E.E.O.C. v. Dial Corp.*, No. 99-cv-3356, 2001 WL 1945088, at *5 (N.D. Ill. Dec. 27, 2001) (same).

Indeed, "district courts should not hesitate to certify an interlocutory appeal" where, as here, a "ruling involves a new legal question or is of special consequence." *Martin v. Goodrich Corp.*, No. 21-cv-1323, 2023 WL 12144298, at *2 (C.D. Ill. May 31, 2023) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009)). Plaintiffs' legal theory in this case is novel—even if its underpinnings are in direct conflict with decisions from other courts. The Seventh Circuit has not addressed the specific Questions of Article III standing and fiduciary status

---

[10] If anything, Seventh Circuit precedent provides that a movant has a burden to show "exceptional circumstances" **to the Seventh Circuit**; not the district court. *See Fisons Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir. 1972) ("In every application under § 1292(b) the appellant has the burden of persuading **the court of appeals** that exceptional circumstances . . . .") (emphasis added).

Northwestern seeks to certify, which could result in dismissal of this case in its entirety.

Although Northwestern will have later opportunities to challenge the legal viability of Plaintiffs' allegations before this Court (and on appeal, if necessary), it will incur **significant** defense costs before having an opportunity to do so. This Court can—and should—consider such asymmetric discovery costs when evaluating certification. *See Stein*, 2026 WL 594752, at *5 (certification is appropriate in putative class actions, since they "create hydraulic pressure on defendants to settle, given the amount at stake"); *see also* Daniel Aronowitz, Assistant Secretary, Dep't of Labor, Keynote Address at the 2026 Nat'l Ass'n of Plan Advisors Conf. (Apr. 19, 2026)[11] ("Plaintiff law firms have significant settlement leverage in ERISA class action litigation because it costs millions of dollars to defend these cases with asymmetrical discovery burdens and exaggerated damages models," and "[m]ost companies choose to settle these cases to make the lawyers go away.").

Moreover, this case will have significant impacts on subsequent ERISA class action cases. If Plaintiffs' theory were accepted as plausible against one employer, it could be repeated in lawsuits against **every** employer nationwide that offers multiple health coverage options and, in turn, stifle innovation in employer-sponsored health coverage. *Cf. id.* (describing how "current lawsuit abuse" is "stifling innovation in investment options for 401(k) plans").

The article from Plan Adviser that Northwestern cites in its opening brief, *see* Mot. at 8 n.3, proves this point. As Plaintiffs point out, most of the new ERISA class action complaints involving health plans have focused on premium surcharges for tobacco use. *See* Opp'n at 12-13. It is easy to see why: such cases have largely survived the pleadings stage. By contrast, only a

---

[11] The full text of the Assistant Secretary's keynote address is publicly available at https://fcwpol.files.cmp.optimizely.com/download/64c01f6c3e5f11f1b0e666070aa60a63.

handful of cases have been filed regarding the cost prescription drug coverage—including *Navarro II*—which makes sense since most of these cases ***were dismissed for lack of Article III standing***. Having failed to convince courts that they bring plausible claims, it is no wonder that the ERISA plaintiffs' bar has thus far declined to file more complaints about prescription drug costs.

At bottom, Plaintiffs' novel legal theory creates a significant new litigation risk for employers. Before subjecting employers nationwide to this new risk, the Seventh Circuit should have an opportunity to confirm whether Plaintiffs have standing and challenge fiduciary conduct.

**V.     The Court Should Stay Discovery Pending Interlocutory Appeal**

Plaintiffs articulate no cogent reason why discovery should move forward if the Court grants the Motion. They concede they will ***not*** be prejudiced by a stay, and there is no ongoing risk of harm since Northwestern no longer offers the Premier PPO option. Plaintiffs also concede that Northwestern would be prejudiced if discovery proceeded, because it will disproportionately bear the costs and burdens of discovery. Opp'n at 13-14; *cf.* Mot. at 14-15. And, Plaintiffs concede that courts regularly stay certified cases. Mot. at 15; *see also* Minute Entry, *Stein v. Edward-Elmhurst Health*, No. 1:23-cv-14515 (N.D. Ill. Apr. 20, 2026), Dkt. 77 (denying the plaintiffs' motion for the entry of a scheduling order "in light of the pending interlocutory appeal").

Plaintiffs claim that discovery should move forward because it is unlikely Northwestern will prevail. Opp'n at 14. But courts consider prejudice and efficiency—rather than likelihood of success—when deciding whether to stay discovery pending an interlocutory appeal. Mot. at 14. Plaintiffs also assert that a stay is inappropriate because their disclosure claim (Count II) will proceed regardless of whether the Seventh Circuit agrees with Northwestern's arguments. Opp'n at 13. But if the Seventh Circuit disagrees with the Court's holdings on standing, the ***entire*** case will be dismissed for lack of subject matter jurisdiction. *See* Sections I and II *supra*.

Even if Count I were dismissed and Plaintiffs' disclosure claim (Count II) proceeded, the

12

issues to be litigated would be narrowed significantly. The remaining issues would be limited to the disclosures made to Plan participants, their reliance on them, and whether the claim is appropriate for class certification.[12] The discovery Plaintiffs currently seek regarding participant claims data; the retention of plan service providers; communications with the Plan's actuaries, brokers and consultants; and many other factual issues would no longer be necessary.

### CONCLUSION

The Court should fulfill its "duty" to grant the Motion because each of the requirements for certification pursuant to § 1292(b) is satisfied here. *See Ahrenholz*, 219 F.3d at 677.

Dated: May 19, 2026

Respectfully submitted,

*/s/ Mark C. Nielsen*
Mark C. Nielsen (N.D. Ill. No. 90785769)
Lars C. Golumbic (admitted *pro hac vice*)
Kara P. Wheatley (admitted *pro hac vice*)
Kathryn E. Panish (admitted *pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue NW, Suite 1200
Washington, DC 20006
Tel: (202) 857-0620
Fax: (202) 659-4503
mnielsen@groom.com
lgolumbic@groom.com
kwheatley@groom.com
kpanish@groom.com

Eugene A. Schoon
CROKE FAIRCHILD DUARTE & BERES
180 N. La Salle Street, Suite 3400
Chicago, IL 60601
Tel: (773) 517-2740
eschoon@crokefairchild.com

*Counsel for Northwestern University*

---

[12] Courts have denied class certification of ERISA disclosure claims due to lack of commonality and typicality. *See, e.g.*, *In re Sears Retiree Grp. Life Ins. Litig.*, 198 F.R.D. 487, 490 (N.D. Ill. 2000) (finding "too much variation to permit class adjudication of the estoppel and breach of fiduciary duty claims" based on alleged failure to disclose).